John F. Kurtz, Jr., ISB No. 2396
Dane Bolinger, ISB No. 9104
HAWLEY TROXELL ENNIS & HAWLEY LLP
877 Main Street, Suite 1000
P.O. Box 1617
Boise, ID 83701-1617
Telephone:  208.344.6000
Facsimile:  208-954-5936
Email: jkurtz@hawleytroxell.com
       dbolinger@hawleytroxell.com

Attorneys for Plaintiff DICKINSON FROZEN FOODS, INC.

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DICKINSON FROZEN FOODS, INC., <br><br> Plaintiff, <br><br> vs. <br><br> FPS FOOD PROCESS SOLUTIONS CORPORATION, <br><br> Defendant. | COMPLAINT |

Plaintiff, Dickinson Frozen Foods, Inc. ("Dickinson"), by and through its attorneys, Hawley, Troxell, Ennis & Hawley, LLP, and for its Complaint against Defendant, FPS Food Process Solutions Corporation ("FPS" or "Defendant"), alleges as follows:

## PARTIES

1.  Dickinson is an Idaho corporation, with its principal place of business in Ada County, Idaho

COMPLAINT - 1

2. Defendant is a Canadian corporation with its principal place of business in British Columbia, Canada, and has conducted business with Dickinson in Idaho.

## JURISDICTION

3. This Court has personal jurisdiction over Defendant pursuant to Idaho's "Long Arm Statute," Idaho Code Section 5-514. The Defendant has purposefully availed itself of the privilege of conducting business in the state of Idaho with Dickinson, the lawsuit arises out of the Defendant's business relationship with Dickinson, and Defendant has committed acts and omissions complained of herein in the state of Idaho.

4. This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331, in that this is a civil action involving claims under the United Nations Convention on Contracts for the International Sale of Good (the "CISG"), a treaty of which the United States of America and Canada are both signatories.

5. This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2), in that this is a civil action between Dickinson, an Idaho corporation, and Defendant, a Canadian corporation, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

## VENUE

6. Venue is proper in this district under 28 U.S.C. § 1391(b)(2), in that a substantial part of the events or omissions giving rise to the claim occurred in this district.

7. Pleading in the alternative, venue is also proper in this district under 28 U.S.C. § 1391(b)(3), in that Defendant is subject to personal jurisdiction in this district with respect to this action, and there is no other district in which the action may otherwise be brought.

## FACTUAL ALLEGATIONS SUPPORTING ALL CLAIMS

8. Dickinson owns and operates a vegetable processing facility located in Sugar City, Idaho and located at the street address of 903 East 3000 N (the "Sugar City Plant"). Dickinson processes potato products at its Sugar City Plant, including frozen shredded potatoes and the like.

9. In early 2016, Dickinson began evaluating options to purchase a new individually quick frozen ("IQF") tunnel freezer machine. An IQF tunnel freezer is a food processing machine, designed and used to "flash" freeze food products quickly, safely, and efficiently.

10. FPS manufactures and sells IQF tunnel freezer machines. Indeed, on its website, FPS represents to the public that it is a global leader in food freezing and cooling equipment.

11. On or about March 11, 2016, Todd Campbell, Director of Operations for Dickinson, and Justin Lai, Vice-President of Sales & Marketing for Defendant, entered a written contract, a true and accurate copy of which is attached hereto as **Exhibit A** (hereinafter, the "Agreement").

12. In the Agreement, Dickinson promised to pay the Defendant more than $900,000.00. Dickinson paid the Defendant the full contract price.

13. In the Agreement, the Defendant promised to deliver to Dickinson one (1) FPS model MT5-6 Tunnel Freezer (hereafter, the "Freezer").

14. In the Agreement, the Defendant promised and represented that the Freezer would process diced and shredded potatoes with a throughput capacity of eight thousand (8,000) pounds per hour from an infeed temperature of plus one hundred and thirty degrees Fahrenheit (+130°F) to an equilibrated outfeed/discharge temperature of zero degrees Fahrenheit (0°F).

COMPLAINT - 3

15. The Defendant further promised and represented that the Freezer would fully perform in accordance with the following technical specifications:

> ***Freezer Refrigeration Specifications:***
> Refrigeration requirement    210TR [tons of refrigeration]
> Evaporator temperature       -40°F
> Number of coils              6
> Refrigeration Feed           Ammonia 4:1 liquid recirculation feed
> Defrost Method               Sequential hot gas defrost

16. The Defendant delivered the Freezer to Dickinson at the Sugar City Plant. Consistent with its contract obligations, the Defendant's employees and agents installed the Freezer at the Sugar City Plant shortly thereafter. The Defendant's delivery and installation of the Freezer was completed on or about July 23, 2016.

17. On or about July 24, 2016, Dickinson, in conjunction with the Defendant and pursuant to Defendant's oversight of the Freezer, Dickinson began running diced or shredded potatoes through the Freezer. Almost immediately, the Freezer failed to perform per the parties' Agreement.

18. For example, the Freezer's defects and defective performance include (but are not limited to):

- Failure to meet contract specifications for 8,000 lbs per hour of diced and shredded potato product from an infeed temperature of one hundred and thirty (130) degrees Fahrenheit to an equilibrated outfeed temperature of zero (0) degrees Fahrenheit;
- The Freezer's freezer coils were rated for sea level elevation, not the elevation of the installation location in Sugar City, Idaho;
- Severe frosting of the Freezer's coils and not at specified rates;
- Jog prevents the Freezer's coils from completely defrosting;
- Using water to clean the freezer floor and defrost bottom of coil not a functional design;
- Failing to include drain pans in the Freezer;
- The Freezer is improperly segregated, leading to heat and moisture migration during defrost;
- The Freezer's available coil capacity is insufficient as per heat balance;

COMPLAINT - 4

- The Freezer's dwell time is not balanced with coil capacity; and
- The Freezer Machine's product bed is potentially too high, preventing proper air flow through product.

19. From the date the Freezer was installed to September of 2017, Dickinson made multiple written and oral requests that the Defendant remedy these and other defects and defective performance. Dickinson provided the Defendant with a reasonable number of opportunities to cure these defects and to solve the Freezer's defective performance. The Defendant failed to do so.

20. On or about July 7, 2017, Dickinson notified the Defendant and its counsel by letter that it was revoking its acceptance of the Freezer.

21. As a direct and proximate cause of the Freezer's defective performance, Dickinson has suffered financial damages, including, but not limited to: lost profits; repair and replacement expenses; freight detention or delayed payment costs; and other financial losses and damages to be proven at trial.

## COUNT ONE – BREACH OF CONTRACT UNDER THE CISG

22. Dickinson incorporates paragraphs 1 through 21 of this complaint by reference as if set forth in full herein.

23. The Agreement constitutes a valid and enforceable contract between Dickinson and the Defendant.

24. As a contract for the sale of goods between a Canadian Corporation and an Idaho corporation, the contract is subject to the United Nations Convention on Contracts for the International Sale of Goods (the "CISG").

25. Dickinson performed all of its duties and obligations under the Agreement.

26. Defendant breached the Agreement by failing to perform its duties and obligations therein, including by failing to provide a freezer that conformed with the Agreement's specifications.

27. As a direct result of Defendant's breach of the Agreement, Dickinson has suffered extensive financial damages.

28. Dickinson has suffered damages in an amount to be more fully proven at trial and in excess of $75,000, the jurisdictional limit of this court.

## COUNT TWO – BREACH OF EXPRESS WARRANTY UNDER IDAHO LAW (PLED IN THE ALTERNATIVE)

29. Dickinson incorporates paragraphs 1 through 21 of this complaint by reference as if set forth in full herein.

30. In the Agreement, Defendant warranted that the Freezer would perform at certain specifications. For instance, Defendant represented that the Freezer would process diced and shredded potatoes with a throughput capacity of eight thousand (8,000) pounds per hour from an infeed temperature of plus one hundred and thirty degrees Fahrenheit (+130°F) to an equilibrated outfeed/discharge temperature of zero degrees Fahrenheit (0°F).

31. Defendant breached its written warranties by providing a Freezer that failed to conform with the written specifications in the Agreement.

32. As a direct result of Defendant's breach of express warranty, Dickinson has suffered extensive financial damages.

33. Dickinson has suffered damages in an amount to be more fully proven at trial and in excess of $75,000, the jurisdictional limit of this court.

## COUNT THREE – BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING UNDER IDAHO LAW (PLED IN THE ALTERNATIVE)

34. Dickinson incorporates paragraphs 1 through 21 of this complaint by reference as if set forth in full herein.

35. Defendant failed to exercise good faith or deal fairly with Dickinson in repeatedly failing to remedy the defective performance and non-conformities in the Freezer.

36. As a direct result of Defendant's failure to exercise good faith or deal fairly, Dickinson has suffered extensive financial damages.

37. Dickinson has suffered damages in an amount to be more fully proven at trial and in excess of $75,000, the jurisdictional limit of this court.

## COUNT FOUR – PROMISSORY ESTOPPEL (PLED IN THE ALTERNATIVE)

38. Dickinson incorporates paragraphs 1 through 21 of this complaint by reference as if set forth in full herein.

39. Defendant promised to Dickinson that the Freezer would be capable of processing diced and shredded potatoes with a throughput capacity of eight thousand (8,000) pounds per hour from an infeed temperature of plus one hundred and thirty degrees Fahrenheit (+130°F) to an equilibrated outfeed/discharge temperature of zero degrees Fahrenheit (0°F).

40. Dickinson reasonably relied on that promise in paying Defendant for the Freezer and making business plans to sell its products in accordance with Defendants' promise.

41. Defendant knew or should have known that if it failed to perform consistent with its promise, Dickinson would suffer substantial economic losses.

42. As a result of Defendants' failure to comply with its promise, Dickinson did in fact suffer extensive financial damages.

43. Dickinson has suffered damages in an amount to be more fully proven at trial and in excess of $75,000, the jurisdictional limit of this court.

## ATTORNEYS' FEES

44. As a result of Defendant's conduct, Dickinson has been required to retain the services of Hawley Troxell Ennis & Hawley LLP, Boise, Idaho, to prosecute this action on its behalf. Dickinson is entitled to recover its costs and reasonable attorneys' fees incurred for prosecution of this action. Based upon the experience of Hawley Troxell Ennis & Hawley LLP in litigating such claims, reasonable attorneys' fees and costs in the event that Judgment is entered by default are $5,000.

## DEMAND FOR A JURY TRIAL

45. Dickinson demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

46. WHEREFORE, Dickinson prays that Judgment be entered in its favor and against the Defendant, as follows:

47. That Dickinson have a Judgment entered against the Defendant in an amount to be further proven, plus, to the degree allowed by law, pre-judgment interest, until Judgment is entered herein;

48. For Dickinson's costs and expenses, including reasonable attorneys' fees in the amount of $5,000 in the event that Judgment is entered by default, and in such greater sum as the Court may award if this action is contested;

49. For Dickinson's costs and expenses, including reasonable attorneys' fees, incurred to pursue collection on the judgment;

50. For post-judgment interest at the statutory rate from the date judgment is entered until Dickinson is paid in full; and

51. For such other and further relief as the Court deems just, equitable and proper under the circumstances.

DATED THIS 21st day of December, 2017.

HAWLEY TROXELL ENNIS & HAWLEY LLP

By /s/ Dane Bolinger
John F. Kurtz, Jr., ISB No. 2396
Dane Bolinger, ISB No. 9104
Attorneys for Plaintiff DICKINSON FROZEN FOODS, INC.