Elijah M. Watkins, ISB No. 8977
E-mail: *elijah.watkins@stoel.com*
Anna E. Courtney, ISB No. 9279
Email: *anna.courtne@stoel.com*
STOEL RIVES LLP
101 S. Capitol Blvd, Ste 1900
Boise, ID 83702
Telephone:  (208) 389-9000
Fax:  (208) 389-9040

Attorneys for Defendant

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DICKINSON FROZEN FOODS, INC., <br><br>         Plaintiff/Counterdefendant, <br><br> v. <br><br> FPS FOOD PROCESS SOLUTIONS CORPORATION, <br><br>         Defendant/Counterclaimant. | Case No. 1:17-CV-00519-CWD <br><br> DEFENDANT FPS FOOD PROCESS SOLUTIONS CORPORATION'S ANSWER TO PLAINTIFF DICKINSON FROZEN FOODS, INC.'S COMPLAINT AND DEFENDANT FPS FOOD PROCESS SOLUTIONS CORPORATION'S FIRST AMENDED COUNTERCLAIM |

COMES NOW Defendant, FPS Food Process Solutions Corporation ("FPS") by and through its attorneys of record, Stoel Rives LLP, and hereby files its Answer to Plaintiff Dickinson Frozen Foods, Inc.'s ("DFF") Complaint.  Without assuming the burden of proof as to any issue in this litigation, FPS hereby responds to DFF' Complaint as follows:

FPS denies all of the allegations in the Complaint that are not expressly admitted herein.

## **PARTIES**

1.     Upon information and belief, FPS admits the allegations of Paragraph 1.

2.     FPS admits the allegations of Paragraph 2.

**DEFENDANT FPS FOOD PROCESS SOLUTIONS CORPORATION'S ANSWER TO PLAINTIFF DICKINSON FROZEN FOODS, INC.'S COMPLAINT AND DEFENDANT FPS FOOD PROCESS SOLUTIONS CORPORATION'S FIRST AMENDED COUNTERCLAIM** - 1

## JURISDICTION

3. FPS admits only that this Court may have jurisdiction in this matter, but FPS denies the remaining allegations contained in Paragraph 3.

4. FPS admits only that this Court may have jurisdiction in this matter, but FPS denies the remaining allegations contained in Paragraph 4.

5. FPS admits only that this Court may have jurisdiction in this matter, but FPS denies the remaining allegations contained in Paragraph 5.

## VENUE

6. FPS admits only that venue may be proper in this Court, but FPS denies the remaining allegations contained in Paragraph 6.

7. FPS admits only that venue may be proper in this Court, but FPS denies the remaining allegations contained in Paragraph 7.

## FACTUAL ALLEGATIONS SUPPORTING ALL CLAIMS

8. FPS is without knowledge sufficient enough to confirm the truth or falsity of the information contained in Paragraph 8 and, therefore, denies the same.

9. FPS is without knowledge sufficient enough to confirm the truth or falsity of the information contained in Paragraph 9 and, therefore, denies the same.

10. FPS admits the allegations of Paragraph 10.

11. In response to Paragraph 11, DFF refers to and characterizes a document which speaks for itself, therefore no response is required. To the extent Paragraph 11 varies from the words and meaning of the document, the same is denied.

**DEFENDANT FPS FOOD PROCESS SOLUTIONS CORPORATION'S ANSWER TO PLAINTIFF DICKINSON FROZEN FOODS, INC.'S COMPLAINT AND DEFENDANT FPS FOOD PROCESS SOLUTIONS CORPORATION'S FIRST AMENDED COUNTERCLAIM** - 2

12. In response to Paragraph 12, DFF refers to and characterizes a document which speaks for itself, therefore no response is required. To the extent Paragraph 12 varies from the words and meaning of the document, the same is denied.

13. In response to Paragraph 13, DFF refers to and characterizes a document which speaks for itself, therefore no response is required. To the extent Paragraph 13 varies from the words and meaning of the document, the same is denied.

14. In response to Paragraph 14, DFF refers to and characterizes a document which speaks for itself, therefore no response is required. To the extent Paragraph 14 varies from the words and meaning of the document, the same is denied.

15. In response to Paragraph 15, DFF refers to and characterizes a document which speaks for itself, therefore no response is required. To the extent Paragraph 15 varies from the words and meaning of the document, the same is denied. FPS responds further and affirmatively states that DFF was required to provide refrigeration equipment sufficient to meet the refrigeration specifications called for in the agreement and that DFF failed to do so.

16. FPS admits the allegations of Paragraph 16.

17. FPS denies the allegations of Paragraph 17.

18. FPS denies the allegations of Paragraph 18, including all its sub-parts.

19. FPS denies the allegations of Paragraph 19. FPS responds further and affirmatively states that it spent considerable resources in both time and money to address DFF's concerns, but DFF failed to comply with its obligations under the agreement to, among other things, provide adequate refrigeration equipment.

**DEFENDANT FPS FOOD PROCESS SOLUTIONS CORPORATION'S ANSWER TO PLAINTIFF DICKINSON FROZEN FOODS, INC.'S COMPLAINT AND DEFENDANT FPS FOOD PROCESS SOLUTIONS CORPORATION'S FIRST AMENDED COUNTERCLAIM** - 3

96019959.3 0067345-00001

20. In response to Paragraph 20, DFF refers to and characterizes a document which speaks for itself, therefore no response is required. To the extent Paragraph 20 varies from the words and meaning of the document, the same is denied.

21. FPS denies the allegations of Paragraph 21.

## COUNT ONE – BREACH OF CONTRACT UNDER THE CISG

22. FPS incorporates its previous answers in paragraphs 1 through 21 as though fully set forth herein.

23. FPS denies the allegations of Paragraph 23. FPS responds further and affirmatively states that the "Agreement" referred to in the Complaint, along with the Purchase Order X11082, constitute the contract between FPS and DFF.

24. Paragraph 24 calls for a legal conclusion, therefore no response is required. To the extent Paragraph 24 does require a response, FPS admits only that the contract was for the sale of an MT5-6 IQF Tunnel Freezer, but FPS denies the remaining allegations contained in Paragraph 24.

25. FPS denies the allegations of Paragraph 25.

26. FPS denies the allegations of Paragraph 26.

27. FPS denies the allegations of Paragraph 27.

28. FPS denies the allegations of Paragraph 28.

## COUNT TWO – BREACH OF EXPRESS WARRANTY UNDER IDAHO LAW
## (PLEAD IN THE ALTERNATIVE)

29. FPS incorporates its previous answers in paragraphs 1 through 28 as though fully set forth herein.

**DEFENDANT FPS FOOD PROCESS SOLUTIONS CORPORATION'S ANSWER TO PLAINTIFF DICKINSON FROZEN FOODS, INC.'S COMPLAINT AND DEFENDANT FPS FOOD PROCESS SOLUTIONS CORPORATION'S FIRST AMENDED COUNTERCLAIM** - 4

30. In response to Paragraph 30, DFF refers to and characterizes a document which speaks for itself, therefore no response is required. To the extent Paragraph 30 varies from the words and meaning of the document, the same is denied.

31. FPS denies the allegations of Paragraph 31.

32. FPS denies the allegations of Paragraph 32.

33. FPS denies the allegations of Paragraph 33.

## COUNT THREE – BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING UNDER IDAHO LAW (PLED IN THE ALTERNATIVE)

34. FPS incorporates its previous answers in paragraphs 1 through 33 as though fully set forth herein.

35. FPS denies the allegations of Paragraph 35.

36. FPS denies the allegations of Paragraph 36.

37. FPS denies the allegations of Paragraph 37.

## COUNT FOUR – PROMISSORY ESTOPPEL (PLEAD IN THE ALTERNATIVE)

38. FPS incorporates its previous answers in paragraphs 1 through 37 as though fully set forth herein.

39. FPS admits the allegations of Paragraph 39.

40. FPS is without knowledge sufficient enough to confirm the truth or falsity of the information contained in Paragraph 40 and, therefore, denies the same.

41. Paragraph 41 calls for a hypothetical conclusion, therefore no response is required. To the extent Paragraph 41 does require a response, FPS denies the allegations of Paragraph 41.

42. FPS admits the allegations of Paragraph 42.

**DEFENDANT FPS FOOD PROCESS SOLUTIONS CORPORATION'S ANSWER TO PLAINTIFF DICKINSON FROZEN FOODS, INC.'S COMPLAINT AND DEFENDANT FPS FOOD PROCESS SOLUTIONS CORPORATION'S FIRST AMENDED COUNTERCLAIM** - 5

43. FPS admits the allegations of Paragraph 43.

## CLAIM FOR ATTORNEYS' FEES

44. Paragraph 44 calls for a legal conclusion, therefore no response is required. To the extent Paragraph 44 does require a response, FPS denies the allegations of Paragraph 44.

## AFFIRMATIVE DEFENSES

45. FPS incorporates its previous answers in paragraphs 1 through 44 as though fully set forth in full herein.

46. The Complaint fails to state a claim against FPS upon which relief can be granted.

47. FPS alleges, without admitting liability whatsoever, that the Complaint and each cause of action contained therein are, or may be, barred by the doctrine of laches.

48. FPS alleges, without admitting liability whatsoever, that the Complaint and each cause of action contained therein are, or may be, barred by failure of consideration, as supervening events rendered the contract unenforceable.

49. FPS alleges, without admitting liability whatsoever, that the Complaint and each cause of action contained therein are, or may be, barred by DFF's failure to mitigation damages, if there are any.

50. FPS alleges, without admitting liability whatsoever, that the Complaint and each cause of action contained therein are or may be barred by DFF's failure to reject the goods within a reasonable amount of time pursuant to Idaho Code 28-2-607.

51. FPS alleges, without admitting liability whatsoever, that the Complaint and each cause of action contained therein are or may be barred by DFF's failure to revoke its acceptance of the goods within a reasonable amount of time pursuant to Idaho Code 28-2-607.

**DEFENDANT FPS FOOD PROCESS SOLUTIONS CORPORATION'S ANSWER TO PLAINTIFF DICKINSON FROZEN FOODS, INC.'S COMPLAINT AND DEFENDANT FPS FOOD PROCESS SOLUTIONS CORPORATION'S FIRST AMENDED COUNTERCLAIM** - 6

96019959.3 0067345-00001

52. FPS alleges, without admitting liability whatsoever, that the Complaint and each cause of action contained therein are, or may be, barred by the failure of a condition(s) precedent, which condition(s) was/were the sole responsibility of DFF to complete.

53. FPS alleges, without admitting liability whatsoever, that the Complaint and each cause of action contained therein are, or may be, barred by DFF's alteration of the product.

54. FPS alleges, without admitting liability whatsoever, that the Complaint and each cause of action contained therein are, or may be, barred by DFF's misuse of the product.

55. FPS alleges, without admitting liability whatsoever, that the Complaint and each cause of action contained therein are, or may be, barred because DFF's prior breach excused FPS's need to perform.

56. FPS reserves the right to assert new and additional affirmative defenses as the facts allow, as they are discovered, including up to and through the trial in this matter.

## DEFENDANT'S PRAYER FOR RELIEF

WHEREFORE, having answered the Complaint, FPS prays that this Court enter judgment in its favor as follows:

A. That the Complaint be dismissed with prejudice and that DFF takes nothing against FPS.

B. That FPS be awarded its reasonable attorney fees and costs incurred herein.

C. That the Court enter such additional and further relief as it deems just and proper.

**DEFENDANT FPS FOOD PROCESS SOLUTIONS CORPORATION'S ANSWER TO PLAINTIFF DICKINSON FROZEN FOODS, INC.'S COMPLAINT AND DEFENDANT FPS FOOD PROCESS SOLUTIONS CORPORATION'S FIRST AMENDED COUNTERCLAIM** - 7

96019959.3 0067345-00001

# COUNTERCLAIM

COMES NOW Defendant-Counterclaimant, FPS Food Process Solutions Corporation ("FPS"), by and through its attorneys of record, Stoel Rives LLP, and hereby files its First Amended Counterclaim against Plaintiff-Counterdefendant Dickinson Frozen Foods, Inc. ("DFF"), and states and alleges as follows:

## PARTIES

1. FPS is a Canadian corporation with its principal place of business in Richmond, British Columbia, Canada.

2. Upon information and belief, DFF is an Idaho corporation, with its principal place of business in Ada County, Idaho.

## JURISDICTION

3. This Court has jurisdiction pursuant to 28 U.S.C. § 1332 in that the parties are citizens of different states, including citizens or subjects of a foreign state, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

## VENUE

4. Venue is proper within the judicial district of Idaho pursuant to 28 U.S.C. § 1391(b) because DFF is an Idaho resident and a substantial part of the events or omissions giving rise to the claims occurred within this district.

## FACTUAL ALLEGATIONS

*FPS and Its Position in the Marketplace*

5. FPS designs, manufactures, and distributes equipment for commercial cooling and freezing applications.

**DEFENDANT FPS FOOD PROCESS SOLUTIONS CORPORATION'S ANSWER TO PLAINTIFF DICKINSON FROZEN FOODS, INC.'S COMPLAINT AND DEFENDANT FPS FOOD PROCESS SOLUTIONS CORPORATION'S FIRST AMENDED COUNTERCLAIM - 8**

6. One of the products FPS offers to its commercial customers is an Individual Quick Freeze ("IQF") tunnel freezer.

7. The IQF tunnel freezer is a large, stainless-steel piece of computer-controlled equipment used to rapidly cool or freeze perishable items prior to packaging.

8. Perishable items travel down a conveyor belt into the hygienic interior of the IQF tunnel freezer where they are cooled or frozen in a safe and efficient manner.

9. IQF tunnel freezers are designed and modified on a custom-build basis to meet each commercial customer's unique needs.

10. FPS's customers the world over have praised the IQF tunnel freezer product, and FPS enjoys a reputation as a global industry leader for its commercial cooling and freezing applications.

11. FPS derives economic value from its reputation as an industry leader.

*The Parties Enter Into an Agreement*

12. In or around the first quarter of 2016, DFF reached out to FPS to inquire about cooling and/or freezing applications for its potato processing facility in Sugar City, Idaho.

13. On or about March 11, 2016, DFF, through Purchase Order X11082 (the "Purchase Order"), offered to purchase an MT5-6 IQF Tunnel Freezer (the "Freezer"), plus shipping, for $926,000.00 from FPS.

14. On or about March 11, 2016, FPS accepted DFF's offer and agreed to sell the Freezer at the stated price pursuant to the Order Confirmation 81100 for Dickinson Frozen Foods IQF Tunnel Freezer for 8,000 lb/hr Diced & Shredded Potato (the "Order Confirmation") ("Purchase Order" and "Order Confirmation" are, collectively, the "Agreement"). The Agreement is attached hereto as **Exhibit A**.

**DEFENDANT FPS FOOD PROCESS SOLUTIONS CORPORATION'S ANSWER TO PLAINTIFF DICKINSON FROZEN FOODS, INC.'S COMPLAINT AND DEFENDANT FPS FOOD PROCESS SOLUTIONS CORPORATION'S FIRST AMENDED COUNTERCLAIM** - 9

*The Parties' Contractual Obligations*

15.     Pursuant to the Agreement, FPS was to deliver the Freezer—measuring 49'-3" L x 13'-0" W x 13'-0" H with a 60" wide belt for freezing 8,000 pounds per hour of diced and shredded potatoes with an infeed temperature of 130°F to an equilibrated outfeed temperature of 0°F—no later than mid-July, 2016.

16.     Under the Agreement, DFF was required to provide all "[r]efrigeration equipment, piping, valves and refrigerant charge."

17.     Under the Agreement, DFF was obligated to plumb and provide a refrigeration infrastructure capable of meeting the "[r]efrigeration requirement" of "210TR", or 210 Tons of Refrigeration with an "[e]vaporator temperature" of "-40°F" for the Freezer to perform at its anticipated level.

18.     DFF employed the services of Kemper Northwest ("Kemper"), a refrigeration contractor headquartered in Caldwell, Idaho, to assist DFF in meeting its contractual refrigeration obligations.

19.     Under the Agreement, DFF was also required to supply, among other things:

- Water supply, piping, valves and connections;
- Hot gas defrost valves and piping;
- Main power supply to control panel;
- Electrical wiring between control panel and components; and
- Water supply piping, fitting and valves.

**DEFENDANT FPS FOOD PROCESS SOLUTIONS CORPORATION'S ANSWER TO PLAINTIFF DICKINSON FROZEN FOODS, INC.'S COMPLAINT AND DEFENDANT FPS FOOD PROCESS SOLUTIONS CORPORATION'S FIRST AMENDED COUNTERCLAIM** - 10

*The Parties' Performance Under the Agreement*

20. On or before mid-July 2016, FPS delivered and installed the Freezer in conformance with the Agreement.

21. As delivered, the Freezer was capable of processing 8,000 pounds per hour of diced and shredded potatoes with an infeed temperature of 130°F to an equilibrated outfeed temperature of 0°F.

22. DFF failed to provide a proper refrigeration infrastructure.

23. Specifically, DFF, through Kemper, failed to install a 210 TR refrigeration system with an evaporator temperature of -40°F, which was necessary for the Freezer's full performance and was required under the Agreement.

24. DFF's refrigeration system employed several compressors, none of which produced an output of 210 TR.

25. DFF did not routinely run the refrigeration compressors at the same time to achieve 210 TR or more.

26. At least one of DFF's compressors was approximately 20 years old, had already been rebuilt once, and was in need of further repair.

27. In addition, various pipes, valves, hoses, and other accoutrements supplied and installed by Kemper, were out of specification.

28. For example, the specifications called for 3" suction risers to be installed by Kemper to connect the Freezer to DFF's refrigeration infrastructure.

29. Instead, Kemper installed 5" suction risers, which had the effect of impeding the ammonia flow and negatively impacted the Freezer's performance.

**DEFENDANT FPS FOOD PROCESS SOLUTIONS CORPORATION'S ANSWER TO PLAINTIFF DICKINSON FROZEN FOODS, INC.'S COMPLAINT AND DEFENDANT FPS FOOD PROCESS SOLUTIONS CORPORATION'S FIRST AMENDED COUNTERCLAIM** - 11

30. DFF's operation and maintenance of the Freezer also negatively impacted the Freezer's performance.

31. For example, rather than relying on the gauges and computer to check on the Freezer, DFF operators would regularly open the door to peer inside the Freezer, resulting in warm air infiltration and condensation, which negatively impacted the Freezer's efficiency.

32. DFF operators regularly would spray warm water at the Freezer while in operation, resulting in water infiltration into the Freezer, causing greater condensation and a drain on Freezer efficiency.

33. DFF and/or Kemper used the wrong compressor oil in the refrigeration infrastructure, causing the system to clog, which negatively impacted the Freezer's performance.

34. Because DFF failed to provide the proper refrigeration infrastructure and/or operations for the Freezer to achieve its anticipated performance levels, wet potatoes entering the Freezer would release moisture rather than "flash" freeze, and the moisture would condensate throughout the Freezer's internal components, resulting in a further drain on performance.

*FPS Tries to Satisfy DFF, but DFF Attempts to Revoke the Agreement and Disparages FPS*

35. From mid-July 2016 through mid-July 2017, FPS sent multiple customer service representatives, engineers, and contractors to DFF's Sugar City facility to inspect and work on the Freezer.

36. Wages, engineering time, travel costs, and parts and service expended on the Freezer were all at FPS's expense.

37. Additionally, FPS employees and engineers were unable to sell and service products for other current and potential customers during the times they were occupied with DFF's Freezer.

**DEFENDANT FPS FOOD PROCESS SOLUTIONS CORPORATION'S ANSWER TO PLAINTIFF DICKINSON FROZEN FOODS, INC.'S COMPLAINT AND DEFENDANT FPS FOOD PROCESS SOLUTIONS CORPORATION'S FIRST AMENDED COUNTERCLAIM** - 12

38.     While adjustments were made to the Freezer during these visits so that the Freezer would better fit into DFF's workflow—as is typical with any large custom-build piece of commercial machinery—the root issue identified was DFF's refrigeration infrastructure and DFF's operations.

39.     DFF failed to provide a sufficiently robust refrigeration infrastructure as required under the Agreement, and subsequently failed to upgrade its refrigeration infrastructure to levels required under the Agreement.

40.     Upon information and belief, DFF failed to address and/or remedy operational issues that were negatively impacting the performance of the Freezer.

41.     On or about July 13, 2017, one year after FPS delivered and installed the Freezer, and had already spent considerable resources on the DFF relationship, DFF purported to reject and/or revoke its acceptance of the Freezer pursuant to the Uniform Commercial Code.

42.     On or about July 24, 2017, FPS informed DFF that it did not accept its attempted repudiation of the Agreement and that it would hold DFF to its contractual obligations.

43.     Upon information and belief, throughout the parties' relationship, DFF has made comments to the market that FPS provides sub-par products and/or sub-par customer service.

44.     For example, in or around 2017, a representative from a large Idaho potato processing company communicated to FPS that he knew the DFF Freezer was not working, implying that the Freezer was somehow defective or improperly designed.

45.     This statement was false, as the Freezer was working, not defective, and designed appropriately.  DFF simply failed to install a sufficiently robust refrigeration infrastructure and/or implement proper operational measures.

**DEFENDANT FPS FOOD PROCESS SOLUTIONS CORPORATION'S ANSWER TO PLAINTIFF DICKINSON FROZEN FOODS, INC.'S COMPLAINT AND DEFENDANT FPS FOOD PROCESS SOLUTIONS CORPORATION'S FIRST AMENDED COUNTERCLAIM** - 13

46. Other customers and/or potential customers have made similar comments and inquiries.

*DFF Rejects FPS's Offer, Sues, and Causes Damage*

47. On or about October 17, 2017, without any admission of liability, and in an attempt to curtail negative comments to the market from a dissatisfied customer that could not be satisfied, FPS offered to refund DFF's entire purchase price in exchange for return of the Freezer.

48. DFF refused FPS's offer.

49. On or about December 22, 2017, counsel for DFF filed the Complaint and sent a letter to counsel for FPS alerting them that the Freezer was to be removed by crane from DFF's Sugar City facility on January 13, 2018, and would be temporarily housed on-site.

50. On January 12, 2018, FPS requested to "have people on-site to monitor and record the dismantling of the [Freezer]" and arrange for transportation of the $900,000.00 piece of equipment "after moved to [DFF's] yard."

51. DFF refused FPS's request.

52. On January 17, 2018, FPS followed up, asking to "get some photos and assess pick up and storage of the unit," adding that they "want only to help."

53. DFF refused FPS's request, explaining that "you or anyone associated with FPS are not allowed on site.  No photos or access."

54. Upon information and belief, the $900,000.00 Freezer has been stored and/or is currently being stored by DFF in a manner that will result in damage to it.

**DEFENDANT FPS FOOD PROCESS SOLUTIONS CORPORATION'S ANSWER TO PLAINTIFF DICKINSON FROZEN FOODS, INC.'S COMPLAINT AND DEFENDANT FPS FOOD PROCESS SOLUTIONS CORPORATION'S FIRST AMENDED COUNTERCLAIM** - 14

55. As a direct and proximate result of DFF's conduct, including its breaches under the Agreement and its comments to the marketplace, FPS has suffered financial damages in an amount to be more fully proven at trial.

## COUNT ONE – BREACH OF CONTRACT

56. FPS incorporates the foregoing paragraphs as if fully set forth herein.

57. The Agreement constitutes a valid and enforceable contract between the parties.

58. The Agreement, as a contract for the sale of goods between parties whose places of business are in different countries who are contracting states under United Nations: Conference on Contracts for the International Sale of Goods ("CISG"), is governed by the CISG.

59. FPS performed all of its duties and obligations under the Agreement.

60. Under the Agreement, DFF was required to, among other things, supply proper "[r]efrigeration equipment, piping, valves and refrigerant charge" at the levels and in the manner set forth in the Agreement.

61. DFF failed to do all the acts expected in order to enable FPS to deliver and install the Freezer and in taking over the Freezer.

62. Specifically, DFF breached its contractual obligations when it, either directly or through its contractor, failed to provide "[r]efrigeration requirement" of "210TR" with an "[e]vaporator temperature" of "-40°F."

63. As a direct result of DFF's breach of the Agreement, FPS has suffered extensive financial damages, including, but not limited to, unnecessary repair, engineering, and travel expenses, as well as product costs and lost opportunities.

64. FPS has suffered damages in an amount to be more fully proven at trial and in excess of $75,000, the jurisdictional limit of this Court.

**DEFENDANT FPS FOOD PROCESS SOLUTIONS CORPORATION'S ANSWER TO PLAINTIFF DICKINSON FROZEN FOODS, INC.'S COMPLAINT AND DEFENDANT FPS FOOD PROCESS SOLUTIONS CORPORATION'S FIRST AMENDED COUNTERCLAIM** - 15

**COUNT TWO – BREACH OF CISG ARTICLE 86, FAILURE TO PRESERVE GOODS**

65. FPS incorporates the foregoing paragraphs as if fully set forth herein.

66. DFF received the Freezer on or about July 23, 2016.

67. DFF asserted the right to revoke acceptance of the Freezer on or about July 7, 2017.

68. Even assuming rejection was proper, pursuant to CISG Article 86, DFF has an obligation to take reasonable steps to preserve the Freezer.

69. On or about January 13, 2018, DFF removed the Freezer from DFF's Sugar City facility.

70. DFF refused FPS's requests to be present to monitor and record the dismantling of the Freezer and to arrange for removal and collection of the Freezer.

71. DFF prevented and continues to prevent FPS from retrieving the purportedly rejected Freezer.

72. On information and belief, the Freezer is currently being stored in an unreasonable manner that has caused damage to the Freezer.

73. As a direct result of DFF's failure to comply with CISG Article 86, FPS has suffered extensive financial damages, including, but not limited to, diminution in the value of the purportedly rejected Freezer.

74. FPS has suffered damages in an amount to be more fully proven at trial and in excess of $75,000, the jurisdictional limit of this Court.

**COUNT THREE – BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

75. FPS incorporates the foregoing paragraphs as if fully set forth herein.

**DEFENDANT FPS FOOD PROCESS SOLUTIONS CORPORATION'S ANSWER TO PLAINTIFF DICKINSON FROZEN FOODS, INC.'S COMPLAINT AND DEFENDANT FPS FOOD PROCESS SOLUTIONS CORPORATION'S FIRST AMENDED COUNTERCLAIM** - 16

96019959.3 0067345-00001

76. Implied in every contract in Idaho is a covenant of good faith and fair dealing. This covenant is applicable to the Agreement pursuant to CISG Article 7.

77. The covenant requires that parties perform, in good faith, the obligations imposed by their agreement.

78. DFF failed to exercise good faith or deal fairly with FPS in repeatedly failing to remedy its refrigeration infrastructure and operational issues, which negatively impacted the performance of the Freezer, while continually seeking and taking advantage of valuable accommodations from FPS.

79. As a direct result of DFF's failure to exercise good faith or deal fairly, FPS has suffered extensive financial damages, including, but not limited to, unnecessary repair, engineering, and travel expenses, as well as product costs and lost opportunities.

80. FPS has suffered damages in an amount to be more fully proven at trial and in excess of $75,000, the jurisdictional limit of this Court.

## COUNT FOUR – DEFAMATION PER SE

81. FPS incorporates the foregoing paragraphs as if fully set forth herein.

82. During the parties' relationship, DFF made statements about FPS's products and/or customer service to the market.

83. Such statements include comments to potential and/or current customers that the Freezer is not working because it is defective or has been improperly designed by FPS. These statements related to FPS's business, its ability to do business, and its methods of doing business.

84. These statements impugned the reputation of FPS, as well as its goods and services; have had the effect of exposing FPS to ridicule within the market; and concern matters

**DEFENDANT FPS FOOD PROCESS SOLUTIONS CORPORATION'S ANSWER TO PLAINTIFF DICKINSON FROZEN FOODS, INC.'S COMPLAINT AND DEFENDANT FPS FOOD PROCESS SOLUTIONS CORPORATION'S FIRST AMENDED COUNTERCLAIM** - 17

incompatible with FPS's trade, business, profession, or office, and are therefore per se defamatory.

85. These statements were and are false.

86. DFF knew or should have known that the statements were false because the root cause of the Freezer's performance (refrigeration infrastructure and DFF's operations) has been repeatedly explained to DFF.

87. As a direct and proximate result of DFF's defamatory statements, FPS has suffered general and actual injury to its reputation in the market.

88. FPS has suffered general and actual damages in an amount to be more fully proven at trial and in excess of $75,000, the jurisdictional limit of this Court.

## ATTORNEYS' FEES

As a result of DFF's conduct, FPS has been required to retain counsel to prosecute and defend itself in this action and FPS is entitled to recover its costs and reasonable attorneys' fees incurred throughout the pendency of this litigation.

## DEMAND FOR JURY TRIAL

FPS demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

Wherefore, FPS prays that Judgment be entered in its favor and against DFF, as follows:

1. An award of general, compensatory, consequential, statutory, and punitive damages to FPS in an amount to be determined at trial;

2. An award of interest, costs, and attorneys' fees incurred by FPS in prosecuting and defending this action; and

**DEFENDANT FPS FOOD PROCESS SOLUTIONS CORPORATION'S ANSWER TO PLAINTIFF DICKINSON FROZEN FOODS, INC.'S COMPLAINT AND DEFENDANT FPS FOOD PROCESS SOLUTIONS CORPORATION'S FIRST AMENDED COUNTERCLAIM** - 18

3. All other relief that the Court deems just, equitable and proper under the circumstances.

DATED: February 28, 2018.

        STOEL RIVES LLP

        */s/ Elijah M. Watkins*
        Elijah M. Watkins
        Anna E. Courtney
        Attorneys for Defendant FPS Food Process
          Solutions Corporation

**DEFENDANT FPS FOOD PROCESS SOLUTIONS CORPORATION'S ANSWER TO PLAINTIFF DICKINSON FROZEN FOODS, INC.'S COMPLAINT AND DEFENDANT FPS FOOD PROCESS SOLUTIONS CORPORATION'S FIRST AMENDED COUNTERCLAIM** - 19

96019959.3 0067345-00001

## CERTIFICATE OF SERVICE

I hereby certify that on February 28, 2018, I served a copy of the foregoing **FPS FOOD PROCESS SOLUTIONS CORPORATION'S ANSWER TO DICKINSON FROZEN FOODS, INC.'S COMPLAINT AND DEFENDANT FPS FOOD PROCESS SOLUTIONS CORPORATION'S FIRST AMENDED COUNTERCLAIM** on CM/ECF Registered

Participants as reflected on the Notice of Electronic Filing as follows:

| | |
|---|---|
| John F. Kurtz, Jr., ISB No. 2396<br>Dane Bolinger, ISB No. 9104<br>HAWLEY TROXELL ENNIS & HAWLEY LLP<br>877 Main Street, Suite 1000<br>P.O. B ox 83701-1617<br>Boise, ID 83701-1617<br>Telephone:  208-344-6000<br>Facsimile:  208-954-5936<br>Email:  jkurtz@hawleytroxell.com<br>          dbolinger@hawleytroxell.com | Via:  CM/ECF Notification |

*/s/ Elijah M. Watkins*
Elijah M. Watkins

**DEFENDANT FPS FOOD PROCESS SOLUTIONS CORPORATION'S ANSWER TO PLAINTIFF DICKINSON FROZEN FOODS, INC.'S COMPLAINT AND DEFENDANT FPS FOOD PROCESS SOLUTIONS CORPORATION'S FIRST AMENDED COUNTERCLAIM** - 20