UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DICKINSON FROZEN FOODS, INC., <br><br> Plaintiff/Counterdefendant, <br><br> v. <br><br> FPS FOOD PROCESS SOLUTIONS CORPORATION, <br><br> Defendant/Counterclaimant. | Case No. 1:17-cv-00519-DCN <br><br> **MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Pending before the Court is Defendant/Counterclaimant FPS Food Process Solutions Corporation's ("FPS") Motion for Protective Order. Dkt. 22. Having reviewed the record herein, the Court finds the parties have adequately presented the facts and legal arguments in the briefs and record. Accordingly, in the interest of avoiding further delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, the Court decides the Motion without oral argument. For the reasons set forth below, the Court finds good cause to GRANT the Motion.[1]

---

[1] With some minor modifications to FPS's suggested protective order.

## II. BACKGROUND

A. Factual Background

As the Court noted in its previous decision, the underlying facts of this case are relatively simple. Dickinson purchased an Individual Quick Freeze tunnel freezer machine (the "Freezer") from FPS in 2016 for its processing plant in Sugar City, Idaho. After installation, complications arose with the Freezer. Dickinson alleges that FPS is liable for lost profits and damages because the Freezer failed to perform to contract specifications. For its part, FPS has filed a counterclaim against Dickinson alleging that it was in fact Dickinson, not FPS, who failed to perform its obligations under the contract and that the Freezer would have worked but for Dickinson's failures.

B. Procedural Background

On March 21, 2018, Dickinson served its First Set of Interrogatories and Requests for Production of Documents on FPS. Some of Dickinson's requests captured documents FPS believes are sensitive or confidential. Counsel for both parties discussed the possibility of a protective order, however, they were ultimately unable to reach a consensus. The instant motion followed.

Under Federal Rule of Procedure 26, FPS seeks a protective order from the Court to shield certain information from public disclosure. Broadly speaking, the material FPS seeks to protect includes sensitive business information and proprietary research and schematics. FPS has produced some 5,800 documents in response to Dickinson's

requests,[2] and withheld approximately 800 documents pending the Court's determination today. To be clear, FPS plans to turn over all of the documents in question, it simply seeks an order limiting the disclosure to a limited group of individuals.

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 26 states that, in general, any matter relevant to a claim or defense is discoverable. "Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b).

"[P]re-trial discovery is ordinarily 'accorded a broad and liberal treatment,'" because "wide access to relevant facts serves the integrity and fairness of the judicial process by promoting the search for the truth." *Shoen v. Shoen*, 5 F.3d 1289, 1292 (9th Cir. 1993) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)). "Under Rule 26, however, '[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.'" *In re Roman Catholic Archbishop of Portland in Oregon*, 661 F.3d 417, 424 (9th Cir. 2011) (quoting Fed. R. Civ. P. 26(c)(1)). "The party opposing disclosure has the burden of proving 'good cause,' which requires a showing 'that specific prejudice or harm will result' if the

---

[2] The parties submitted this total in the briefing for the instant motion, however, the Court is aware that discovery is ongoing, and this number could have increased substantially since that time.

protective order is not granted." *Id.* (quoting *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1130 (9th Cir. 2003)).

If the Court determines that good causes exists, it can, in its discretion, "forbid[] . . . disclosure or discovery"; "limit[] the scope of disclosure or discovery to certain matters"; and/or require that a "trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." Fed. R. Civ. P. 26(c)(1)(A),(D),(G).

## IV. ANALYSIS

Here, FPS has withheld essentially three types of documents. The first are sensitive business documents; the second are insurance contracts; and the third are customer lists. The Court will address each in turn.[3]

1. Sensitive Business Documents

FPS claims that many of the documents requested by Dickinson contain sensitive information such as proprietary research and development, trade secrets, schematics, and product designs that FPS never intended for public dissemination. Under FPS's proposal, any documents deemed sensitive will be designated as "confidential" and only shared

---

[3] To be clear, FPS asserts that insurance contracts and customer lists are business records and requests that they too—like the other business documents (schematics, designs, R&D etc)—be included in any protective order. The Court will discuss these two topics individually, however, because it appears that these documents may need to be kept from Dickinson altogether—not just the public.

among the attorneys, experts, Court and Court staff, and any three employees of Dickinson's choosing.

Dickinson does not seem to take issue with FPS's designation of these items as sensitive or confidential, but rather asserts that FPS waived any "privilege" because it has already shared this information with others outside of its proposed list. Some background information is necessary to understand this argument.

As noted, this lawsuit focuses on the installation of a commercial freezer. Both sides allege that the other is at fault for the freezer's inadequate performance. After FPS delivered the freezer to Dickinson—and Dickinson encountered problems—FPS sent emails to various individuals (within Dickinson and to other third-parties) with schematics, and other proprietary material, to help Dickinson with the install and issues they were having. Dickinson alleges that sending these emails—which included some of the documents (or at least the type of documents)—that FPS now seeks to protect, it has essentially waived any argument that the materials are protected.

For its part, FPS argues that showing those documents to a customer is different from full-blown public disclosure and points out that many of the documents had a "confidentiality" label affixed, stating that the information was the property of FPS, confidential, and not to be shared with the public.

In this case, the Court agrees with FPS. There is a difference between showing technical information to a customer—even confidential or sensitive information—and publishing it for the public at large. Here, there is no reason to believe that FPS intended

for the materials to be widely disseminated. Business information is frequently the subject of protective orders[4] for obvious reasons. Were the material—trade secrets, designs, proprietary information, or internal research and development—to become publicly available, it could have a damaging effect on a company.

While this Court—like most other Courts—is a public forum, and, generally speaking, the information and material at issue is a matter of public record, it is likewise well settled that some types of information should be withheld from the public record. *See e.g. San Jose Mercury News, Inc. v. U.S. Dist. Court--N. Dist. (San Jose)*, 187 F.3d 1096, 1103 (9th Cir. 1999) (noting that it is "well-established that the fruits of pretrial discovery are, in the absence of a court order to the contrary, presumptively public. Rule 26(c) authorizes a district court to override this presumption where "good cause" is shown"). These two notions—public access, but also protection—are not incongruent. Rule 26 specifically contemplates this balance. *See* Fed. R. Civ. P 26(c).

Here, while the Court has not reviewed—nor will it review—the 800 documents in question, it need not. As noted, this is not a question of prejudice because one party is refusing to turn over necessary discovery documents to the other party, but rather a question of whether the public is entitled to view the documents as well. Dickinson has

---

[4] Unfortunately, as many of these protective orders are either stipulated to, or resolved through informal means, they are simply filed with the Court through the Court's electronic case filing system and although public record, not published in WestLaw of LexusNexus for the Court to cite herein.

not stated that it will suffer any prejudice as the result of a protective order, but simply believes that one is unnecessary. The Court finds that FPS's arguments are well taken. There is a very real possibility that were this information to become public, it could damage FPS—financially or otherwise. Accordingly, in its discretion, the Court finds that good cause exists to GRANT FPS's Motion for a protective order as it relates to business records.

That being said, limiting the disclosure of this material to only three Dickinson employees—as FPS suggests—seems arbitrarily small. It is not entirely clear to the Court how many individuals saw any one of the given items FPS seeks to protect, but presumably there are more than three people *in total* at Dickinson who may need to review the materials at issue.[5] Accordingly, the Court will not limit the group of employees who can see this material to three. The Court is concerned that were it to do so, inevitably during a deposition—or some other event during litigation—either party will realize that a critical witness or person needs to review the material, but because three people have already been designated, they will need to return to the Court to modify the protective order or seek other relief. The Court would rather be proactive now.

---

[5] The Court is also not sure whether FPS meant that three people could be designated per item or three people total.

The best way to accomplish this is to expand the group of people who can review the sensitive material—beyond the Court/Court staff, Counsel, and Experts—to include anyone at Dickinson (or other third-party contractors or subcontracts) who was *directly involved* with the facts giving rise to this suit, *and* require that anyone who reviews materials covered by the protective order sign a non-disclosure agreement.[6] This serves the dual purpose of keeping FPS's sensitive business materials protected from the public, but does not unnecessarily limit discovery or prejudice Dickinson.

2. Insurance Polices

FPS alleges that Dickinson requested "all documents and correspondence with all other insurance companies (whether related to this case or not)." Dkt. 22-1, at 2. The Court has reviewed Dickinson's requests—specifically Requests for Production Nos. 16-21 (Dkt. 22-3, at 36-39)—regarding insurance companies and contracts.

It appears that Dickinson has correctly requested only insurance documents from carriers that "may be liable to satisfy all or part of a possible judgement . . . or to indemnify or reimburse for payments made to satisfy the judgment." Dkt. 22-3, at 36. In fact, this is the exact wording of Federal Rule of Civil Procedure 26(a)(1)(A)(iv). Thus, it

---

[6] The acknowledgement proposed by FPS attached as Exhibit A to Exhibit C (Dkt. 22-5) will suffice. In this manner, the materials can be discussed, reviewed, and considered during discovery and depositions, but the contents of the material cannot be used, distributed, or accessed, by the public.

is not entirely clear to the Court what FPS is referring to.[7] In the event that Dickinson has requested information about insurance companies who do not fit the requirements of Rule 26, FPS can withhold that information altogether. As to any other relevant information under Rule 26 regarding insurance contracts and companies, the same will be included within the scope of the Courts protective order. i.e., FPS will have to turn any relevant information over, but it will be shielded from public disclosure.

3. Customer lists[8]

Again, the Court is not trying to broaden the discussion beyond the intent of the parties,[9] but wants to be efficient. Although FPS calls some of the documents "related to FPS's business relationship with [Dickinson]," (Dkt. 22-1, at 2), it later references these as "customer lists." This Court has previously cautioned parties to tread lightly when it comes to third-party customers of a party to a lawsuit. *See e.g., Nelson-Ricks Cheese Co., Inc. v. Lakeview Cheese Co., LLC*, No. 4:16-CV-00427-DCN, 2017 WL 4839375, at *1

---

[7] The Court does not mean to cast doubt on FPS's assertion. Clearly FPS is in the best position to know which insurance contracts apply. The Court simply doesn't know which are "related to the case or not."

[8] This topic may be all but moot considering the Court has—since the filing of *this* motion—granted Dickinson's Motion to Dismiss Court Four related to defamation, however, the Court will touch briefly on it so as to eliminate any confusion.

[9] FPS does not claim that these documents should be precluded altogether, but only included in the protective order. The Court, however, wants to make clear its position on these *types* of documents as they are frequently an area of concern and confusion in litigation. Should any documents fall into the specific categories identified, they may not need to be turned over at all—even under a protective order.

(D. Idaho Oct. 26, 2017) (quashing third party subpoenas directed at defendant's customers and finding that certain customer information, including sales data, was confidential and need not be disclosed).

Because the Court does not know the extent of the information referred to as the "business relationship" between the parties, the Court will simply indicate that these documents are also included in the protective order.

Finally, both sides request that the Court order the other side to pay their reasonable costs and attorney fees in bringing—or alternatively opposing—the instant Motion. Although the Court is granting FPS's motion for a protective order, Dickinson's objections were not wholly without merit[10] and, importantly, the Court modified FPS's proposed order. In other words, FPS was not fully the "winner" nor was Dickinson fully the "loser" to the extent the Court *must* award fees. *See* Fed. R. Civ. P. 37(a)(5)(A).

## V. ORDER

The Court HEREBY ORDERS:

1. Defendant/Counterclaimant FPS's Motion for Protective Order (Dkt. 22) is **GRANTED.** The parties shall submit a signed protective order[11] conforming with

---

[10] While the Court disagreed with Dickinson that the prior disclosure of certain materials waived confidentiality, this argument was not baseless or frivolous.

[11] FPS's proposed Protective Order (Dkt. 22-5) is acceptable with the caveat that the three-person designation (Section F(2)(b)) be changed—and/or any other sections that the substance of this decision would alter—to reflect the Court's analysis herein.

the Court's decision within 7 days of the date of this order which shall govern the case moving forward.

DATED: September 5, 2018

_____
David C. Nye
U.S. District Court Judge