John F. Kurtz, Jr., ISB No. 2396
Dane Bolinger, ISB No. 9104
HAWLEY TROXELL ENNIS & HAWLEY LLP
877 Main Street, Suite 1000
P.O. Box 1617
Boise, ID 83701-1617
Telephone: 208.344.6000
Facsimile: 208.954.5232
Email: jkurtz@hawleytroxell.com
          dbolinger@hawleytroxell.com

Attorneys for Plaintiff/Counter-Defendant

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DICKINSON FROZEN FOODS, INC., | Case No. 1:17-cv-00519-DCN |
| Plaintiff/Counter-Defendant, | |
| vs. | DICKINSON FROZEN FOODS, INC.'S MEMORANDUM REGARDING THE APPROPRIATE STANDARD OF REVIEW FOR REVIEWING A MOTION FOR RECONSIDERATION OF AN INTERLOCUTORY ORDER |
| FPS FOOD PROCESS SOLUTIONS CORPORATION, | |
| Defendant/Counter-Claimant. | ORAL ARGUMENT REQUESTED |

# TABLE OF CONTENTS

Page

I.  INTRODUCTION ........................................................................................... 1

II.  SUMMARY OF THE ARGUMENT ........................................................ 1

III.  ARGUMENT ................................................................................................ 2

A.  The Court May Review its Interlocutory Order for Any Cause Seen By it to be Sufficient and, as Such, is Free to Review Dickinson's Motion in its Entirety ................................................... 2

B.  Arguing in the Alternative, on a Motion for Reconsideration of an Interlocutory Order, The Court May Review: (1) Whether New Evidence or an Expanded Factual Record Exists; (2) to Correct Clear Error; or (3) to Prevent Manifest Injustice. ............................................. 4

1.  By way of Example, Dickinson's First Argument in Support of the Motion for Reconsideration is Based Upon Clear Error or Manifest Injustice and Is Not Dependent on New Evidence or an Expanded Record. ............................................. 5

a)  The Jury Instruction That FPS Would Have Been Able to Prove That the Freezer Was Capable of Performing At the Levels Specified by the Parties' Agreement Would Preclude the Jury from Finding that FPS Breached the Parties' Agreement. ............................ 6

b)  The Court's Discussion of the Reasons Supporting the Order Indicates the Court Did Not Intend to Enter a Case-Terminating Sanction. ........................................ 7

2.  Dickinson's Motion for Reconsideration Does, In Part, Rely On New Evidence and an Expanded Factual Record, Which is an Appropriate Basis for Reconsideration of an Interlocutory Order. ........................................................................ 10

C.  FPS Erroneously Argues That the Court is Limited in its Review by Rules 59(e) or 60(b) and That It Cannot Review New Evidence or the Expanded Factual Record. .................................................... 13

1.  Rules 59(e) and 60(b) Do Not Apply to Interlocutory Orders ................................................................................................ 14

2.  Cases that Limit Review of "New" Evidence on Motions for Reconsideration Are Distinguishable From the Present Case ............................................................................................................. 17

45670.0013.12281869.11

IV.      CONCLUSION..............................................................................................19

45670.0013.12281869.11

# TABLE OF AUTHORITIES

Page

**Cases**

*Amato v. United States*,
94 F. Supp. 2d 1077 (D. Idaho 1999) ......................................................................... 3

*Apple Inc. v. Samsung Elecs. Co.*,
881 F. Supp. 2d 1132 (N.D. Cal. 2012)) ................................................................. 7, 9

*Apple Inc. v. Samsung Elecs. Co., Ltd.*,
888 F. Supp. 2d 976 (N.D. Cal. 2012) ....................................................................... 9

*Askins v. U.S. Dep't of Homeland Sec.*,
899 F.3d 1035 (9th Cir. 2018) .................................................................................... 4

*Baugh v. Gale Lim Holdings, Inc.*,
No. CV-08-321-E-BLW, 2009 WL 2823656 (D. Idaho Aug. 28, 2009) .................... 10

*Been v. O.K. Indus., Inc.*,
495 F.3d 1217 (10th Cir. 2007) ................................................................................ 16

*Brady v. Grendene USA, Inc.*,
3:12-CV-0604-GPC-KSC, 2015 WL 3539702 (S.D. Cal. June 3, 2015) ................... 17

*Christensen v. Bannock Cnty. Sheriff's Dep't*,
No. 4:09-CV-189-BLW, 2011 WL 39004 (D. Idaho Jan. 4, 2011) ............................ 19

*City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*,
254 F.3d 882 (9th Cir. 2001) ......................................................................... 3, 14, 17

*Deimer v. Cincinnati Sub-Zero Prods., Inc.*,
990 F.2d 342 (7th Cir. 1993) .................................................................................... 14

*Dreith v. Nu Image, Inc.*,
648 F.3d 779 (9th Cir. 2011) .................................................................................... 17

*Fayetteville Inv'rs v. Com. Builders, Inc.*,
936 F.2d 1462 (4th Cir. 1991) .................................................................................. 16

*Fitzgerald v. PNC Mortg.*,
No. 1:10-CV-452-BLW, 2011 WL 3203911 (D. Idaho July 27, 2011) .................. 10, 11

*Fleming v. Escort, Inc.*,
No. CV 09-105-S-BLW, 2011 WL 2173796 (D. Idaho June 2, 2011) ................... 10, 11

*Freiermuth v. Town of Thermopolis*,
09-CV-202-B, 2010 WL 11601715 (D. Wyo. Oct. 4, 2010) ...................................... 15

45670.0013.12281869.11

*Friedman v. Dollar Thrifty Auto. Grp., Inc.*,
12-CV-02432-WYD-KMT, 2015 WL 8479746 (D. Colo. Dec. 10, 2015) .................................. 15

*Gunn v. Ignacio*,
263 F.3d 965 (9th Cir. 2001) ............................................................................................... 8

*Hartley Pen Co. v. U.S. Dist. Court*,
287 F.2d 324 (9th Cir. 1961) ............................................................................................... 2

*Hathaway v. Idaho P. Corp.*,
4:15-CV-00086-DCN, 2017 WL 6268514 (D. Idaho Dec. 8, 2017) .......................................... 11

*Helm Fin. Corp. v. Iowa N. Ry. Co.*,
214 F. Supp. 2d 934 (N.D. Iowa 2002)..................................................................................... 14

*Huntsman Advanced Materials LLC v. OneBeacon Am. Ins. Co.*,
No. 1:08-CV-00229-BLW, 2012 WL 480011 (D. Idaho Feb. 13, 2012) ......................... 5, 10, 11

*In re Airport Car Rental Antitrust Litig.*,
521 F. Sup. 568 (N.D. Cal. 1985) ............................................................................................ 16

*In Re Bunting Bearings Corp.*,
321 B.R. 420 (N.D. Ohio 2004)................................................................................................ 8

*Laird v. Stilwill*,
982 F. Supp. 1345 (N.D. Iowa 1997)....................................................................................... 14

*Louen v. Twedt*,
2007 WL 915226 (E.D. Cal. Mar. 26, 2007) ............................................................................ 5

*Matter of Fremont*,
748 Fed. Appx. 137 (9th Cir. 2019).......................................................................................... 3

*Medina v. Multaler, Inc.*,
547 F. Supp. 2d 1099, 1122 (C.D. Cal. 2007) ......................................................................... 13

*Melancon v. Texaco, Inc.*,
659 F.2d 551 (5th Cir.1981) ..................................................................................................... 3

*Mendez v. Cmty. Health Clinics, Inc.*,
No. 1:16-CV-00425-DCN, 2017 WL 4678193 (D. Idaho Oct. 16, 2017) .............................. 3, 14

*Oneida Indian Nation of New York v. Cnty. of Oneida*,
214 F.R.D. 83 (N.D.N.Y. 2003)................................................................................................ 8

*Portfolio FB-Idaho, LLC v. Fed. Deposit Ins. Corp.*,
No. 1:10-CV-377-BLW, 2011 WL 901176 (D. Idaho Mar. 14, 2011).................................. 5, 10

45670.0013.12281869.11

*Quintero v. Palmer*,
No. 313CV00008MMDVPC, 2016 WL 11184239 (D. Nev. Aug. 16, 2016) .............................. 8

*Reinsdorf v. Skechers U.S.A., Inc.*,
296 F.R.D. 604 (C.D. Cal. 2013) ................................................... 9

*Rui Chen v. Premier Fin. All., Inc.*,
18-CV-3771 YGR, 2019 WL 280944 (N.D. Cal. Jan. 22, 2019) ................................ 13

*S.O.S., Inc. v. Payday, Inc.*,
886 F.2d 1081, 1085 (9th Cir. 1989) ........................................... 11

*Santamarina v. Sears, Roebuck & Co.*,
466 F.3d 570 (7th Cir. 2006) ................................................... 16

*SFF-TIR, LLC v. Stephenson*,
264 F. Supp. 3d 1148 (N.D. Okla. 2017) ........................................ 15

*Trujillo v. Bd. of Educ. of Albuquerque Pub. Schs.*,
212 Fed. Appx. 760 (10th Cir. 2007) ........................................... 15

*United States v. Houser*,
804 F.2d 565 (9th Cir. 1986) ................................................... 4

*United States v. Westinghouse Elec. Corp.*,
648 F.2d 642 (9th Cir. 1981), *overruled on other grounds by FTC v. Actavis*,
570 U.S. 136, 158, 133 S. Ct. 2223, 186 L. Ed. 2d 343 (2013) ..................... 3

*Van Tran v. Lindsey*,
212 F.3d 1143 (9th Cir. 2000), *disagreed with on other grounds by Lockyer v. Anchrode*,
538 U.S. 63, 75 (2003) ......................................................... 8

*Vanzant v. Wilcox*,
No. 115CV00118ELJCWD, 2016 WL 6986133 (D. Idaho Nov. 28, 2016) .......................... 10, 11

*Vonbrethorst v. Washington Cnty., Idaho*,
No. CV06-0351-EJL, 2008 WL 3465262 (D. Idaho Aug. 12, 2008) ...................... 5, 10

*Wang v. Chertoff*,
676 F. Supp. 2d 1086 (D. Idaho 2009) .......................................... 5, 10

**Statutes**

Fed. Rule Civ. Proc. 54(b) ..................................................... 3

45670.0013.12281869.11

## I.   <u>INTRODUCTION</u>

On September 6, 2019, Dickinson filed its Motion for Reconsideration of this Court's May 21, 2019 Memorandum Decision and Order. (See Dkt. 81, et seq., hereafter, "Dickinson's Motion for Reconsideration.") On October 10, 2019, counsel for the parties attended an informal telephonic status conference with the Court. (Bolinger Decl. at ¶ 22.) The Court then instructed the parties that it would order preliminary briefing on the appropriate standard of review to be applied to Dickinson's Motion for Reconsideration. (*Id*. at ¶ 24.) However, it was unclear to Dickinson if the Court was ordering the parties to generally brief the appropriate standard of review for a motion for reconsideration of an interlocutory order or if the Court was also asking for input and argument as to how those standards are relevant to the specific points and arguments raised in Dickinson's Motion for Reconsideration. (*Id*.) Given the uncertainty, Dickinson respectfully submits this brief which addresses both the general standards of review applicable to a motion for reconsideration of an interlocutory order and also generally explains how those standards should be applied to its Motion for Reconsideration.

## II.   <u>SUMMARY OF THE ARGUMENT</u>

As set out below, Dickinson believes that the Court has wide discretion in considering Dickinson's Motion for Reconsideration and, under applicable precedent, may do so for any cause and on any basis the Court concludes is sufficient. However, when reviewing motions for reconsideration, many courts, including the U.S. District Court for the District of Idaho, have frequently been guided by the principles and the standard related to the law of the case doctrine. Under the law of the case doctrine, as articulated by the U.S. District Court for the District of Idaho, a court may reconsider an interlocutory order, such as the Court's spoliation Memorandum Decision and Order (Dkt. 69) (hereinafter "Order), on the basis of clear error, manifest injustice, new evidence, or an expanded factual record. While Dickinson's position is that the Court may revise its Order for any cause seen by it to be sufficient, Dickinson's Motion for Reconsideration is also based on the need to correct clear error, to prevent manifest injustice, and to consider new evidence and an expanded factual record.

DICKINSON'S MEMO. RE: APPROPRIATE STANDARD OF REVIEW FOR MOTION FOR RECONSIDERATION - 1

In reviewing this memorandum, it is important to note that FPS brought its spoliation motion early in the case. Indeed, only one deposition had been taken by the time briefing closed, discovery was (and still is) open, and multiple written discovery requests and subpoenas were still outstanding.  After briefing on the motion closed, Dickinson diligently pursued discovery, including extensive additional document production, third-party subpoenas, and depositions. The Court then entered its Order imposing a sanction which, as explained in more detail below, is a case-terminating sanction for Dickinson. Based on the Court's reasoning in its Order, Dickinson did not (and does not) believe that the Court intended to terminate Dickinson's case. Thus, Dickinson indicated to the Court that it intended to file a motion for reconsideration and would need additional evidence to support the same. After conferring with the Court, the Court indicated that Dickinson could proceed and then file its motion for reconsideration. Dickinson gathered additional evidence, including collecting documents from third-parties and deposing fact and expert witnesses.  As a result, the factual record in the case has expanded since the Court entered its Order.

As explained below, review of this new evidence and expanded record is appropriate under the Court's inherent authority to reconsider its interlocutory orders. That being said, even if the Court follows the law of the case standard that the U.S. District Court for the District of Idaho has used in the past, Dickinson believes that the Court should still review its Motion for Reconsideration in its entirety, as the law of the case standard explicitly includes new evidence or an expanded record as bases for reconsideration. Additionally, Dickinson submits that reconsideration of the Order is appropriate and warranted to correct clear error and to prevent manifest injustice.

### III.   ARGUMENT

**A.   The Court May Review its Interlocutory Order for Any Cause Seen By it to be Sufficient and, as Such, is Free to Review Dickinson's Motion in its Entirety.**

The Court's Order is an interlocutory order. *See Hartley Pen Co. v. U.S. Dist. Court*, 287 F.2d 324, 329 (9th Cir. 1961) (noting that certain sanctions "are clearly interlocutory and not

final or appealable, such as a particular fact may be taken as established, or refusing to allow a party to support or oppose designated claims or defenses, or to prohibit from introducing certain evidence . . . ."); *United States v. Westinghouse Elec. Corp.*, 648 F.2d 642, 651 (9th Cir. 1981) ("[O]rders imposing sanctions under Rule 37 are interlocutory."), *overruled on other grounds by FTC v. Actavis*, 570 U.S. 136, 158, 133 S.Ct. 2223, 186 L.Ed.2d 343 (2013). As this Court has noted, the Federal Rules of Civil Procedure do not expressly provide a procedural mechanism for reconsidering interlocutory orders. *Mendez v. Cmty. Health Clinics, Inc.*, No. 1:16-CV-00425-DCN, 2017 WL 4678193, at *1 (D. Idaho Oct. 16, 2017) (Nye, J.) (noting the same and that the plaintiff's motion for reconsideration was not governed by Rules 59 or 60 because "Rules 59 and 60 only apply to final, appealable orders"). Rather, interlocutory orders, such as the Court's Order, are reviewable under the court's inherent power to revisit its orders at any time. *Amato v. United States*, 94 F. Supp. 2d 1077, 1078 (D. Idaho 1999) (Winmill, J.) ("Although the Federal Rules of Civil Procedure do not formally recognize a litigant's right to file a motion for reconsideration, the Court has the inherent power to reconsider its earlier decisions at any time prior to the entry of final judgment.").

Indeed, in setting out the standard for a district court to review its interlocutory orders, the Ninth Circuit has explicitly relied on the court's inherent power, and held:

> The general rule regarding the power of a district court to rescind an interlocutory order is as follows: "As long as a district court has jurisdiction over the case, then it possesses the inherent procedural power to **reconsider**, rescind, or modify an interlocutory order **for cause seen by it to be sufficient**."

*City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 885 (9th Cir. 2001) (emphasis added) (quoting *Melancon v. Texaco, Inc.*, 659 F.2d 551, 553 (5th Cir.1981)); *see also Matter of Fremont*, 748 Fed. Appx. 137, 138 (9th Cir. 2019) (unpublished memorandum decision from panel including Smith, N. Randy. J, Ikuta, J, and Steeh, Dist. J.) (noting that the court "had the power to reconsider its previous [interlocutory order] at any time."); Fed. Rule Civ. Proc. 54(b) ("[A]ny order or other decision, however designated, that adjudicates fewer than all the

claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and **may be revised at any time before the entry of a judgment**." (emphasis added)). Accordingly, this Court is free to review its interlocutory Order under its inherent power for "cause seen by it to be sufficient" without restraint and is free to review Dickinson's Motion for Reconsideration in its entirety, including the new evidence and expanded factual record.

**B.    Arguing in the Alternative, on a Motion for Reconsideration of an Interlocutory Order, The Court May Review: (1) Whether New Evidence or an Expanded Factual Record Exists; (2) to Correct Clear Error; or (3) to Prevent Manifest Injustice.**

Although the only limit imposed by the controlling law on the Court's review of Dickinson's Motion for Reconsideration is one of sufficient cause, many courts, including the U.S. District Court for the District of Idaho, have relied upon the "law of the case doctrine" in considering the merits of a motion for reconsideration of an interlocutory order. *See, e.g.*, *Mangeac v. Armstrong*, No. CV 08-239-S-BLW, 2010 WL 2697301, at *1 (D. Idaho July 6, 2010).[1] Under those principles, various courts, including the U.S. District Court for the District of Idaho, have held that reconsideration is appropriate under three major grounds: "(1) an intervening change in controlling law; (2) the availability of new evidence or an expanded factual record; and (3) need to correct a clear error or to prevent manifest injustice."[2] *E.g.*,

---

[1] Notably, however, reliance on the law of case doctrine is not mandatory and although perhaps a useful metric or guide in determining whether reconsideration is warranted, it in no way limits this Court's power to review its interlocutory orders.  *City of Los Angeles, Harbor Div.*, 254 F.3d at 888 (noting that the doctrine is "'discretionary, not mandatory' and is no way 'a limit on a court's power'. . . [and] does not impinge upon a district court's power to reconsider its own interlocutory order[.]" (citing *United States v. Houser*, 804 F.2d 565, 567 (9th Cir. 1986))); *Askins v. U.S. Dep't of Homeland Sec.*, 899 F.3d 1035, 1042–43 (9th Cir. 2018) (Citing Rule 54(b) and holding that "[t]he law of the case doctrine does not, however, bar a court from reconsidering its own orders before judgment is entered or the court is otherwise divested of jurisdiction over the order").

[2] Dickinson does not contend that there has been an intervening change in controlling law in this case.

DICKINSON'S MEMO. RE: APPROPRIATE STANDARD OF REVIEW FOR MOTION FOR RECONSIDERATION - 4

*Portfolio FB-Idaho, LLC v. Fed. Deposit Ins. Corp.*, No. 1:10-CV-377-BLW, 2011 WL 901176, at *1 (D. Idaho Mar. 14, 2011) (Winmill, J.) (quoting *Louen v. Twedt*, 2007 WL 915226 (E.D. Cal. Mar. 26, 2007)); *Wang v. Chertoff*, 676 F. Supp. 2d 1086, 1103-04 (D. Idaho 2009) (Dale, Mag. J.); *Vonbrethorst v. Washington Cnty., Idaho*, No. CV06-0351-EJL, 2008 WL 3465262, at *1 (D. Idaho Aug. 12, 2008) (Lodge, J.); *Huntsman Advanced Materials LLC v. OneBeacon Am. Ins. Co.*, No. 1:08-CV-00229-BLW, 2012 WL 480011, at *2 (D. Idaho Feb. 13, 2012) (Winmill, J.).

To date, FPS has not disputed that reconsideration would be appropriate to correct clear error or to prevent manifest injustice. Rather, FPS's sole argument has been centered on whether "new evidence or an expanded factual record" is a proper basis for reconsideration and, if so, what the parameters are. However, as the case law cited above notes, even if the Court applies the law of the case doctrine, that doctrine includes clear error, manifest injustice, new evidence, or "an expanded factual record" as grounds for granting reconsideration of an interlocutory order. As such, Dickinson respectfully submits that even applying the stricter law of the case principles, review of the entirety of Dickinson's Motion for Reconsideration, including Dickinson's arguments related to new evidence and an expanded factual record, is appropriate. That being said, Dickinson's Motion for Reconsideration also makes arguments that go to correcting clear error and preventing manifest injustice (irrespective of additional evidence), and thus, this Court should still consider Dickinson's Motion for Reconsideration on those grounds.

1. **By way of Example, Dickinson's First Argument in Support of the Motion for Reconsideration is Based Upon Clear Error or Manifest Injustice and Is Not Dependent on New Evidence or an Expanded Record.**

FPS has never suggested, nor is there any legal precedent supporting, that the Order cannot be reconsidered under the standards of clear error or manifest injustice. However, Dickinson's first argument in support of its Motion for Reconsideration is that the jury instruction sanction ordered by the Court is tantamount to a dismissal with prejudice. Based on the findings made and rationale discussed by the Court in the Order, this does not appear to be

DICKINSON'S MEMO. RE: APPROPRIATE STANDARD OF REVIEW FOR MOTION FOR RECONSIDERATION - 5

the result intended by the Court. Reconsideration of the appropriateness of that jury instruction sanction does not depend upon any new evidence or an expanded record, and can be reviewed solely under the standards of clear error or manifest injustice.

    a)  ***The Jury Instruction That FPS Would Have Been Able to Prove That the Freezer Was Capable of Performing At the Levels Specified by the Parties' Agreement Would Preclude the Jury from Finding that FPS Breached the Parties' Agreement.***

  The Court found that Dickinson did not act in bad faith and expressly stated in its Order that "the Court is not persuaded that dismissal is appropriate here." (Dkt. 69 at pp. 36-37.) Similarly, the Court stated it would be inappropriate to bar Dickinson from presenting evidence about the Freezer and the Refrigeration System because that would "negat[e] the need for a trial" and, "[e]xcluding any evidence regarding the destroyed evidence would thus be tantamount to dismissal, which the Court has already determined is not warranted." (Dkt. 69 at pp. 37-38.)

  However, conversely, the jury instruction sanction *is* tantamount to a dismissal of Dickinson's claims. The Court ordered it will instruct the jury with a *non-rebuttable* inference, in relevant part:

> As a result of this spoliation, you are to presume that had Dickinson not destroyed the FPS Freezer and Refrigeration System, FPS would have been able to prove that the FPS Freezer was capable of performing at the levels specified by the Parties' Agreement.

(Dkt. 69 at p. 39.)

  Dickinson's claim in this case is that FPS breached the Parties' Agreement because the Freezer was never capable of freezing product at eight thousand (8,000) pounds per hour from an infeed temperature of plus one hundred and thirty degrees Fahrenheit (+130°F) to an equilibrated outfeed/discharge temperature of zero degrees Fahrenheit (0°F) because it was improperly designed in the first place. Thus, if the jury is required to presume (and Dickinson cannot rebut that presumption) that "FPS would have been able to prove that the Freezer was capable of performing at levels specified by the Parties' Agreement," the jury must find against Dickinson.

DICKINSON'S MEMO. RE: APPROPRIATE STANDARD OF REVIEW FOR MOTION FOR RECONSIDERATION - 6

b)   **_The Court's Discussion of the Reasons Supporting the Order Indicates the Court Did Not Intend to Enter a Case-Terminating Sanction._**

The Court's decision strongly indicates that it did *not* intend to enter a case-terminating sanction against Dickinson. The Court found that FPS never objected to removal of the Freezer after Dickinson served the Complaint and advised FPS of the precise date of removal and never explained its failure to take any steps to prevent removal and disassembly when it had notice of Dickinson's intent to do so. The Court then concluded that because FPS "had already been served with Dickinson's Complaint and had notice of the precise date the unit would be removed, FPS's failure to request that Dickinson refrain from removal until FPS's expert could conduct an inspection weighs against the harsh sanction of dismissal." (Dkt. 69 at pp. 33-34.)

The Order also provides that the jury should be allowed to hear the evidence and decide the case. (*See* Dkt. 69 at pp. 30-31 ("there is also a great deal of data regarding the FPS Freezer and Refrigeration System obtained by both parties before the unit was disassembled. . . . Such evidence will undoubtedly be supplemented at trial. Thus, although FPS has been prejudiced by Dickinson's conduct, it is not without evidence to support its claims.")). The Court also acknowledged Dickinson's position that it acted from a desire to mitigate damages. (Dkt. 69 at 32 ("The Court certainly understands Dickinson's need to remove the FPS Freezer to make room for the new GEA freezer, and to alter the Refrigeration System to support the GEA freezer in order to resume desired levels of production and mitigate damages.")). The Court also found and repeatedly noted that Dickinson did not act in bad faith, and found that Dickinson did not "mount[] a knowing and concerted effort to destroy the FPS Freezer." (Dkt. 69 at 35-37, 40.) The Court also stated that a "drastic" sanction would be inappropriate under the circumstances. (*Id.* at 40, quoting *Apple Inc. v. Samsung Elecs. Co.*, 881 F. Supp. 2d 1132, 1150 (N.D. Cal. 2012)).

The language of the jury instruction quoted above is identical to the language proposed by FPS in its Memorandum. (Dkt. 39-1 at p. 20.) FPS described that language as: "This least severe of the available spoliation sanctions does not fully cure the prejudice, but it at least puts FPS on a slightly more level playing field and prevents Dickinson from entirely profiting from

its discovery abuses." (*Id.*) However, this jury instruction sanction adopted and ordered by the Court does not merely result in a "slightly more level playing field" to FPS—it effectively ends Dickinson's case.

Although the meaning of "clear error" is somewhat elusive, the Ninth Circuit has held that it generally allows for reversal when the reviewing court "is left with a 'definite and firm conviction' that an error has been committed." *See Van Tran v. Lindsey*, 212 F.3d 1143, 1153 (9th Cir. 2000), *disagreed with on other grounds by Lockyer v. Anchrode*, 538 U.S. 63, 75 (2003) (holding that "objectively reasonable" and "clear error" are not the same); *see also Gunn v. Ignacio*, 263 F.3d 965, 969 (9th Cir. 2001) (noting that the "definite and firm conviction" standard is used to allow "departure from law of the case."). The error can be one of fact or law. *See Van Tran*, 212 F.3d 1153 at n.14 ("While the clear error doctrine has most often been applied to factual determinations, it is applicable to legal determinations as well."). Again, the above-identified findings set forth in the Court's Order are contrary to the issuance of a terminating sanction.  This strongly suggests that the Court did *not* intend to issue a sanction that will completely bar Dickinson from presenting evidence in support of its claims or to rebut a presumption of spoliation in a jury instruction. Thus, Dickinson believes that the imposition of a case ending sanction was in error. That determination does not require the Court to review any new evidence or an expanded record.

Similar to the meaning of "clear error," the term "manifest injustice" is difficult to define. Indeed, as noted by one court, "[c]ourts ordinarily have not defined precisely what constitutes . . . manifest injustice[.]" *Oneida Indian Nation of New York v. Cnty. of Oneida*, 214 F.R.D. 83, 99 (N.D.N.Y. 2003). However, at least one court has held that manifest injustice "would seem to require 'that there exist a fundamental flaw in the court's decision that without correction would lead to a result that is both inequitable and not in line with applicable policy,'" *Quintero v. Palmer*, No. 313CV00008MMDVPC, 2016 WL 11184239, at *5 (D. Nev. Aug. 16, 2016) (quoting *In Re Bunting Bearings Corp.*, 321 B.R. 420, 423 (N.D. Ohio 2004)). As noted by the

Court in its Order, the applicable policy guideline in issuing spoliation sanctions is to choose the "***least onerous sanction corresponding to the willfulness of the destructive act and the prejudice suffered by the victim***." (Dkt. 69 at 31 (quoting *Reinsdorf v. Skechers U.S.A., Inc.*, 296 F.R.D. 604, 626 (C.D. Cal. 2013)) (emphasis added). Here, as noted above, the current sanction is tantamount to a dismissal of Dickinson's claims. This is the harshest sanction available, and, as found by the Court, is not warranted in this case. (Dkt. 69 at 37–38.) Notably, other courts within the Ninth Circuit have reconsidered and changed spoliation sanctions where the ordered sanction ultimately turned out to be too harsh and inequitable. Indeed, *Apple Inc. v. Samsung Elecs. Co.*, 881 F. Supp. 2d 1132, 1150 (N.D. Cal. 2012), which the Court cites to in its Order, *see, e.g.*, Dkt. 39, was revisited in *Apple Inc. v. Samsung Elecs. Co., Ltd.*, 888 F. Supp. 2d 976, 995 (N.D. Cal. 2012) because under further analysis of the available evidence, the jury instruction originally given was too harsh. The instant case presents a similar situation and warrants the same careful analysis and reconsideration of the case-terminating sanction, which if left in place would constitute a manifest injustice. Again, this determination does not require the Court to review any new evidence or an expanded record.

Similarly, Dickinson makes other arguments in its Motion for Reconsideration that fall within the parameters of reviewing the Order for clear error or manifest injustice. By way of example only, the Court also appears to have reached certain mistaken or erroneous conclusions based on an *absence* of evidence, including the nature and motivations behind Taylor's November 2017 site inspection (*see* Dkt. 81-1, pp. 8, 25), and Dickinson's decision to not allow FPS's agents to monitor the disassembly of the Freezer and to retain possession of the Freezer (*see id*. at pp. 30-32). Additionally, Dickinson's Motion for Reconsideration explains that both Eduardo Ford's and Jason Kwok's testimony, which this Court heavily relied on in the Order, is incomplete and disingenuous. (*Id*. at pp. 9-17 (discussing Ford's testimony), 25-27 (discussing Kwok's testimony)). These points, as well as many others in Dickinson's Motion for Reconsideration, can and should be reviewed for clear error and for manifest injustice.

DICKINSON'S MEMO. RE: APPROPRIATE STANDARD OF REVIEW FOR MOTION FOR RECONSIDERATION - 9

**2.      Dickinson's Motion for Reconsideration Does, In Part, Rely On New Evidence and an Expanded Factual Record, Which is an Appropriate Basis for Reconsideration of an Interlocutory Order.**

The U.S. District Court for the District of Idaho has repeatedly recognized "new evidence or an expanded factual record" as a valid basis for reviewing a motion for reconsideration. *See, e.g.*, *Portfolio FB-Idaho, LLC*, 2011 WL 901176, at *1 (Winmill, J.); *Wang*, 676 F. Supp. 2d at 1103-04 (Dale, Mag. J.); *Vonbrethorst*, 2008 WL 3465262, at *1 (Lodge, J.); *Huntsman*, 2012 WL 480011, at *2 (Winmill, J.). Indeed, in *Baugh v. Gale Lim Holdings, Inc.*, this Court entered an interlocutory order denying the defendant's motion for summary judgment. No. CV-08-321-E-BLW, 2009 WL 2823656, at *1 (D. Idaho Aug. 28, 2009) (Winmill, J.). After the court entered its order, the plaintiff's deposition was taken. *Id.* at *3. The defendant then moved for reconsideration based on the plaintiff's deposition testimony. *Id.* The Court considered the arguments based on the plaintiff's deposition testimony but concluded that the new evidence was insufficient to alter its prior decision. *Id.* Here, like in *Baugh*, depositions have been taken after the Court entered its Order. Also like in *Baugh*, the Court can and should consider the new evidence and expanded factual record provided by Dickinson with its Motion for Reconsideration.

Notably, *Baugh* is not the only time this Court has reviewed new evidence or an expanded factual record when considering a motion for reconsideration. The Court did the same in *Mangeac v. Armstrong*, No. CV 08-239-S-BLW, 2010 WL 2697301, at *1 (D. Idaho July 6, 2010) (Winmill, J.); *Fitzgerald v. PNC Mortg.*, No. 1:10-CV-452-BLW, 2011 WL 3203911, at *1 (D. Idaho July 27, 2011) (Winmill, J.); *Fleming v. Escort, Inc.*, No. CV 09-105-S-BLW, 2011 WL 2173796, at *3 (D. Idaho June 2, 2011) (Winmill, J.); *Vanzant v. Wilcox*, No. 115CV 00118ELJCWD, 2016 WL 6986133, at *1 (D. Idaho Nov. 28, 2016) (Dale, Mag. J.); and *Huntsman*, 2012 WL 480011, at *2 (Winmill, J.). In each of these cases, the movant obtained additional evidence after the court's original interlocutory order was entered. In each of these cases, the new evidence and expanded factual record was submitted with the movant's motion

for reconsideration. In each case, the Court considered the additional evidence submitted in determining whether to reconsider a prior order. *See Mangeac*, 2010 WL 2697301, at *1 (considering a declaration setting out new evidence that was submitted with the motion for reconsideration and ordering an evidentiary hearing based on the new declaration); *Fitzgerald*, 2011 WL 3203911, at *1 (noting that the movant presented the Court with "new evidence" and then considering the same in ruling on the motion); *Fleming*, 2011 WL 2173796, at *3 (noting a new declaration was filed and then considering the same in ruling on the motion for reconsideration); *Vanzant*, 2016 WL 6986133, at *1(reviewing new evidence offered with the motion for reconsideration); *Huntsman Advanced Materials LLC*, 2012 WL 480011, at *2 (considering new evidence in the form of an expert's report in ruling on the defendant's motion for reconsideration); *see also cf. Hathaway v. Idaho P. Corp.*, 4:15-CV-00086-DCN, 2017 WL 6268514, at *2 (D. Idaho Dec. 8, 2017) (Nye, J.) ("[Movant's] motion for reconsideration most likely falls within the realm of Rule 59(e) as [movant] makes arguments regarding *an expanded factual record* and also argues that reconsideration is necessary to correct clear error and prevent manifest injustice." (emphasis added)).

Finally, the Ninth Circuit has also recognized that the inclusion of new evidence or an expanded factual record with a motion for reconsideration is appropriate. In *S.O.S., Inc. v. Payday, Inc.*, a plaintiff moved for reconsideration of an order of summary judgment entered against it. 886 F.2d 1081, 1085 (9th Cir. 1989). At the hearing on the motion for reconsideration, new evidence was presented to the district court. *Id.* (noting that "evidence [was] presented for the first time at the hearing on that motion [for reconsideration]"). The motion for reconsideration was denied and the plaintiff appealed. *Id.* The Ninth Circuit considered whether the denial of the motion for reconsideration was properly included in the appeal. In doing so, the Court noted that the "principal effect of including the motion for reconsideration within the notice of appeal is to **expand the factual record on appeal**," and then held that the "appeal properly included the denial of the plaintiff's motion for reconsideration." *Id.* (emphasis added).

DICKINSON'S MEMO. RE: APPROPRIATE STANDARD OF REVIEW FOR MOTION FOR RECONSIDERATION - 11

Given the above cases, consideration of new evidence _or_ an expanded factual record is an appropriate basis for considering a motion for reconsideration of an interlocutory order. This is especially true here, where discovery is still open and Dickinson has provided new evidence and an expanded factual record showing that FPS was not prejudiced by the removal of the Freezer because the data that FPS's expert stated was needed actually was collected and preserved by reliable experts in the field, and the tests that FPS's expert stated were needed were actually run by reliable experts in the field, and those results were preserved. (_See e.g._, Dkt. 81-1 at 9–24.) Dickinson has placed this evidence before the Court, and it is all available for FPS to use in this case.

On the October 10, 2019, informal telephonic status conference between the Court and the parties' counsel, FPS's counsel stated that Dickinson had filed over 7,000 pages of material in conjunction with its Motion for Reconsideration and implied that the Court would be required to review every page. (Bolinger Decl. at ¶ 25.) That is not true. The greater part of the documents that Dickinson submitted as exhibits with its Motion for Reconsideration fall into one of two categories: either 1) complete deposition transcripts or 2) testing and performance data from the Freezer and the Refrigeration System from 2017 when the Freezer was installed and operational. As to the deposition transcripts, out of a desire to provide any necessary context and to avoid any appearance that Dickinson was "cherry-picking" only the favorable portions of a deponent's testimony, Dickinson submitted the entirety of the non-confidential portions of the deposition transcripts and then highlighted the cited testimony. Based on Dickinson's internal calculation, Dickinson only cited to 514 pages of deposition testimony in its Motion for Reconsideration (out of the 2,304 pages of deposition exhibits from the thirteen deposition transcripts submitted).

As to the extensive testing and performance data, Dickinson submitted that data to the Court for a number of appropriate and permissible reasons. Dickinson's Motion for Reconsideration contends, in part, that an overwhelming amount of accurate and reliable test data exists that was gathered by qualified engineers and professionals from May 2017 through

September 2017 (thus demonstrating that FPS suffered no prejudice from the disassembly of the Freezer). (See Dkt. 81-1 at pp. 18-21.) To explain the importance of this data, and also to lay the required evidentiary foundation, Dickinson relies on deposition testimony as well as declaration testimony from its refrigeration engineering and freezer design expert, Charles Taylor, to discuss and to summarize the content of the data, the amount of the data, the nature of the data, and its importance. (*Id.*)

Moreover, as to this evidence of the existing data which rebuts FPS's assertion of spoliation and prejudice, Dickinson was *obligated* to submit the actual documents under Federal Rules of Evidence 1002 (the so-called "best evidence" rule) and 1006 (requiring that a party disclose the underlying content of documents when it seeks to propound evidence summarizing those documents). *See also Rui Chen v. Premier Fin. All., Inc*., 18-CV-3771 YGR, 2019 WL 280944, at *1 n. 2 (N.D. Cal. Jan. 22, 2019) (sustaining objection to declaration testimony regarding a document but failing to provide a copy of the document under the best evidence rule); *Medina v. Multaler, Inc*., 547 F. Supp. 2d 1099, 1122 (C.D. Cal. 2007) (rejecting declaration testimony about purported content of an email where declarant failed to attach the email as violating the best evidence rule).

Contrary to FPS's implications, Dickinson did not submit *all* of the testing and performance data that has been produced in discovery in the case (which would amount to far more than 7,000 pages). Instead, Dickinson submitted only selected test data from critical time periods as representative examples of the type and extent of performance and test data that exists in the record and that is available to FPS. Dickinson selectively chose the most important examples of the extensive test data in the discovery record to meet its evidentiary obligations, not to burden the Court as FPS implies.

C.    **FPS Erroneously Argues That the Court is Limited in its Review by Rules 59(e) or 60(b) and That It Cannot Review New Evidence or the Expanded Factual Record.**

Based on statements from FPS's counsel at the October 10, 2019 informal status conference with the Court, FPS apparently intends to argue that it would be improper for the

DICKINSON'S MEMO. RE: APPROPRIATE STANDARD OF REVIEW FOR MOTION FOR RECONSIDERATION - 13

Court to consider new evidence or an expanded factual record based on principles of Rules 59(e) or 60(b). These arguments fail.

### 1.      Rules 59(e) and 60(b) Do Not Apply to Interlocutory Orders.

As explained above, this Court is free to review its interlocutory Order for "cause seen by it to be sufficient" and is not bound by the same limiting constraints as when reviewing a final order or judgment under Rule 59(e) or 60(b). *City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 885 (9th Cir. 2001); *Helm Fin. Corp. v. Iowa N. Ry. Co.*, 214 F. Supp. 2d 934, 999 (N.D. Iowa 2002) ("[T]his court actually has more, rather than less, discretion to alter or amend such an interlocutory order than is provided by either Rule 59(e) or Rule 60(b) of the Federal Rules of Civil Procedure."); *Laird v. Stilwill*, 982 F. Supp. 1345, 1354–55 (N.D. Iowa 1997) ("Thus, the court's discretion to alter or amend [an interlocutory ruling] is actually broader than would be its power to alter or amend a final judgment pursuant to either Rule 59(e) or Rule 60(b), because the court retains *the discretion* to alter or amend such a non-final, non-appealable interlocutory order.") (emphasis added) (citing *Deimer v. Cincinnati Sub-Zero Prods., Inc.*, 990 F.2d 342, 346 (7th Cir. 1993)).

This Court recognized as much in *Mendez v. Cmty. Health Clinics, Inc.*, No. 1:16-CV-00425-DCN, 2017 WL 4678193, at *1 (D. Idaho Oct. 16, 2017) (Nye, J.) In that case, the *pro se* plaintiff Raul Mendez brought a civil lawsuit against his former employer related to the termination of his employment. *See id.* at *1. Mendez filed a motion requesting this Court appoint him *pro bono* counsel, and this Court denied that motion in a written order (i.e., an interlocutory and non-appealable decision). *Id.* Mendez then filed a motion for reconsideration of the Court's decision relying upon Rule 60(b) and asking the Court to reconsider its prior interlocutory decision. *Id*. In reviewing Mendez's motion for reconsideration, this Court held:

> As a threshold matter, the Court notes that a "Motion for Reconsideration" is not a procedural mechanism available in Federal Court except in limited circumstances, none of which are present here. While Mendez correctly cites Federal Rule of Civil Procedure 60 as the rule regarding motions for relief from a

DICKINSON'S MEMO. RE: APPROPRIATE STANDARD OF REVIEW FOR MOTION FOR RECONSIDERATION - 14

> judgment or order, his interpretation is incorrect. *Rules 59 and 60*
> *only apply to final, appealable orders.*

*Id*. at *1 (emphasis added).

Extensive additional federal authority exists supporting the principle that Rules 59(e) and 60(b) apply only to final judgments and should not be applied to motions for reconsideration of interlocutory decisions. For example, the Advisory Committee Notes to Rule 60 expressly state that Rule 60(b) is not intended to apply to interlocutory orders: "The addition of the qualifying word 'final' emphasizes the character of the judgments, orders or proceedings from which Rule 60(b) affords relief; and *hence interlocutory judgments are not brought within the restrictions of the rule, but rather they are left subject to the complete power of the court rendering them to afford such relief from them <u>as justice requires</u>*." (emphasis added). While the Ninth Circuit appears not to have directly addressed the issue, numerous federal courts have expressly held that Rules 59(e) and 60(b) simply do not apply to motions for reconsideration of interlocutory orders. *See, e.g., Friedman v. Dollar Thrifty Auto. Grp., Inc.*, 12-CV-02432-WYD-KMT, 2015 WL 8479746, at *2 (D. Colo. Dec. 10, 2015) ("In deciding a motion to reconsider an interlocutory order, the court is not bound by the stricter standards for considering a Rule 59(e) or 60(b) motion . . . . Instead, a court has plenary power to revisit and amend interlocutory orders as justice requires.") (citing *Trujillo v. Bd. of Educ. of Albuquerque Pub. Schs.*, 212 Fed. Appx. 760, 765 (10th Cir. 2007) (unpublished)); *Freiermuth v. Town of Thermopolis*, 09-CV-202-B, 2010 WL 11601715, at *1 (D. Wyo. Oct. 4, 2010) ("However, when the movant is seeking reconsideration of an interlocutory order rather than a final judgment, the Court may reconsider its ruling under its general discretionary authority to review and revise interlocutory rulings prior to entry of final judgment, and the Court is not bound by the stricter standards for considering a Rule 59(e) or Rule 60(b) motion.") (citing *Trujillo*).

Courts have also wisely reasoned that a district court *should not* apply the stricter standards of Rule 59(e) and 60(b) to interlocutory orders. *See, e.g.*, *SFF-TIR, LLC v. Stephenson*, 264 F. Supp. 3d 1148, 1216 (N.D. Okla. 2017) (declining to apply strict standards of Rules 59(e)

and 60(b) to motion to reconsider interlocutory order and instead holding that "District courts generally remain free to reconsider their earlier interlocutory orders," and *may*, but are not required to, use standards governing the law of the case doctrine if they so choose in assessing the merits of the motion) (quoting *Been v. O.K. Indus., Inc.*, 495 F.3d 1217, 1225 (10th Cir. 2007)). In that regard, it is important to consider the public policy and principles that support granting the district court the plenary authority to review prior interlocutory decisions without the restrictive constraints governing review of *final* judgments or orders. In *Santamarina v. Sears, Roebuck & Co.*, 466 F.3d 570, 571 (7th Cir. 2006), the U.S. Court of Appeals for the Seventh Circuit wisely reasoned that the restrictions of Rule 60(b) should not be applied to constrain a district court from reviewing prior interlocutory decisions and that the broad powers of review given to district courts to revisit interim decisions are strongly supported by sound public policy:

> Not to reconsider in such circumstances would condemn the parties to the unedifying prospect of continued litigation when they knew that a possibly critical ruling was in error and, unless it became moot in the course of the proceedings, would compel a reversal of the final judgment at the end of the case.

*Id.* at 572; *accord Pauls v. Green*, 4:08-CV-00337-BLW, 2011 WL 5520645, at *1 (D. Idaho Nov. 14, 2011) (Winmill, J.) ("The only sensible thing for a trial court to do is to set itself right as soon as possible when convinced that the law of the case is erroneous. There is no need to await reversal.") (quoting *In re Airport Car Rental Antitrust Litig.*, 521 F. Supp. 568, 572 (N.D. Cal. 1985)). Indeed, in *Fayetteville Inv'rs v. Com. Builders, Inc.*, 936 F.2d 1462, 1472 (4th Cir. 1991), the U.S. Court of Appeals for the Fourth Circuit reversed the trial court for applying the stricter Rule 60(b) standard to a motion for reconsideration of an interlocutory order.

In sum, as this Court has correctly held before, and as supported by ample federal authority, Rules 59(e) and 60(b) apply only to final and appealable orders and should not apply to motions for reconsideration of interlocutory decisions. Moreover, sound policy supports a district court's plenary power to review interlocutory orders and on not placing unduly restrictive

standards on a court's authority to revisit prior interim decisions. Thus, as held by the Ninth Circuit, and many other courts, the only *limit* to the Court's authority to reconsider its interlocutory Order is found in its inherent authority to review the decision for any "cause seen by it to be sufficient." *City of Los Angeles, Harbor Div.*, 254 F.3d at 885; *see also Dreith v. Nu Image, Inc.*, 648 F.3d 779, 787–88 (9th Cir. 2011) ("[A] district court has the inherent power to revisit its non-final orders . . . [and such orders] . . . are subject to reconsideration and revision either by the same judge, a successor judge or a different judge to whom the case might be assigned.").

> **2.   Cases that Limit Review of "New" Evidence on Motions for Reconsideration Are Distinguishable From the Present Case.**

The cases that *have* made a distinction regarding whether "new" or "supplemental" evidence should be considered on a motion for reconsideration appear primarily to be either (a) based on principles of Rule 60(b) (which, as discussed above, does not apply here); or (b) involve inapplicable express local district court rules governing motions for reconsideration.

As to those cases involving a local district court rule governing motions for reconsideration, the U.S. District Court for the District of Idaho Local District Civil Rules contain no rule governing or applicable to motions for reconsideration. Thus, cases involving local rules of some other district court simply do not apply. Moreover, even in those cases where the district court has an applicable local rule, it is common for those courts to consider additional evidence or an expanded factual record where the moving party shows good cause as to why the new or supplemental evidence was not before the court prior to the time the court issued its ruling. *See e.g. Brady v. Grendene USA, Inc.*, 3:12-CV-0604-GPC-KSC, 2015 WL 3539702, at *3 (S.D. Cal. June 3, 2015) (reconsidering prior decision and finding that the movant satisfied good cause requirement "because the factual record has expanded since the Court's initial ruling, including the deposition of several witnesses.").

Here, as in *Brady*, even assuming for the sake of argument that the Court would impose an obligation that Dickinson make a good-cause showing why the factual record has changed,

Dickinson can make that showing. When FPS filed its Motion for Sanctions, discovery in the case was still in its early stages, with no expert disclosures having been made, no depositions having been taken, and little third-party discovery having been completed. (*See* Bolinger Decl. at ¶¶ 3-12.) Shortly after the motion was filed, Dickinson completed the deposition of James Peterson. (*Id*. at ¶ 7.) Dickinson believed that Peterson's testimony indicated several critical admissions, including that Peterson admitted that at a site visit he attended in September of 2017, he agreed that the Refrigeration System was capable of performing at the contract specifications. (*See* Dkt. 44, Dickinson's Memo. at pp. 6-8, 16-18 (discussing Peterson testimony)). Dickinson submitted these materials with its opposition, but Dickinson had not obtained any other depositions before the time Dickinson's response to FPS's Motion was due. (*See id*.) FPS then submitted its Reply, and the Court took the matter under advisement.

While the matter was under advisement, Dickinson diligently pursued additional discovery including the depositions of various witnesses and additional document production from third parties. (*Id*. at ¶¶ 8-21.) On May 21, 2019, this Court issued the Order. (Dkt. 69.) Shortly after the entry of the Order, Dickinson engaged FPS about the likelihood of a motion for reconsideration and the need to pursue additional discovery to establish a full factual record relevant to FPS's spoliation theory. (*See generally* Dkt. 74-2, Bolinger Decl. at ¶¶ 8-10.) On June 10, 2019, counsel attended a phone conference with this Court's law clerk regarding future proceedings in the case. (*Id*. at ¶ 13.) Dickinson's counsel stated on that phone call that Dickinson would likely need to depose witnesses from Kemper, Colmac Coil, GEA, and Nestle, as well as FPS's expert, Ed Ford. (*Id*. at ¶ 15.) On that call, the Court's law clerk requested that the parties submit an email regarding the appropriate standard of review for Dickinson's Motion for Reconsideration. (*Id*. at ¶ 19.). After receiving the parties' different positions on the standard of review, the Court's law clerk emailed counsel and stated that Dickinson could proceed and then file its Motion for Reconsideration. (*See id*. at ¶ 23; Exh. M.)

DICKINSON'S MEMO. RE: APPROPRIATE STANDARD OF REVIEW FOR MOTION FOR RECONSIDERATION - 18

Thus, Dickinson and its counsel reasonably believed that the Court was aware that the parties had differing legal views as to the appropriate standard of review on a motion for reconsideration, that Dickinson intended to take additional discovery (including a number of depositions) to more fully develop and "expand" the factual record for its eventual Motion for Reconsideration, and that the Court had agreed Dickinson would be allowed to do so. (*See id*; Bolinger Decl. at ¶¶ 12-15.) Dickinson then proceeded to gather the additional evidence necessary for a full and complete record for its Motion for Reconsideration. (*Id*. at ¶¶16-21.) This evidence and testimony is highly relevant to the findings and the holdings in the Order and was not available to Dickinson as of the due date of its response to FPS's Motion or prior to this Court issuing the Order. (*Id*.) Thus, even assuming this Court is inclined to require Dickinson to demonstrate good cause as to why there is new evidence and an expanded factual record on its Motion for Reconsideration, Dickinson has shown that discovery was open during the entirety of that process (with the Court extending and allowing ongoing discovery repeatedly), and that the discovery process has elicited highly relevant additional facts pertaining to the Order.

## IV.   <u>CONCLUSION</u>

The Ninth Circuit and other federal law make clear that the Court has wide discretion to review a motion for reconsideration of an interlocutory order. As noted numerous times by this Court, the overriding concerns in reviewing motions to reconsider interlocutory orders are that "(1) Error must be corrected; and (2) Judicial efficiency demands forward progress." *E.g.*, *Christensen v. Bannock Cnty. Sheriff's Dep't*, No. 4:09-CV-189-BLW, 2011 WL 39004, at *1 (D. Idaho Jan. 4, 2011). Here, the case is still in an early stage and discovery is still open. However, the Order sets the backdrop against which this case will move forward (indeed, it determines whether this case will move forward at all). Thus, the need to ensure that it is correct is critical to the progression of the case.  The Court should consider Dickinson's arguments that go to correcting clear error and preventing manifest injustice.  Furthermore, in the Court's pursuit for truth and determination of the merits of the original motion, it should not accept any

request by FPS to limit itself as to what evidence it should review.  Accordingly, Dickinson

respectfully submits that the Court should rely on its inherent powers to reconsider its

interlocutory order and review the entirety of the Motion for Reconsideration.

DATED THIS 10th day of October, 2019.

HAWLEY TROXELL ENNIS & HAWLEY LLP


By /s/ John F. Kurtz, Jr.
    John F. Kurtz, Jr.
    Attorneys for Plaintiff/Counter-Defendant

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 10th day of October, 2019, I electronically filed the foregoing DICKINSON FROZEN FOODS, INC.'S MEMORANDUM REGARDING THE APPROPRIATE STANDARD OF REVIEW FOR REVIEWING A MOTION FOR RECONSIDERATION OF AN INTERLOCUTORY ORDER with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic Filing to the following persons:

| | |
|---|---|
| Elijah M. Watkins | Megan A. Olmstead |
| Elijah.watkins@stoel.com | megan.olmstead@stoel.com |


/s/ John F. Kurtz, Jr.
John F. Kurtz, Jr.
Dane Bolinger