John F. Kurtz, Jr., ISB No. 2396
Dane Bolinger, ISB No. 9104
HAWLEY TROXELL ENNIS & HAWLEY LLP
877 Main Street, Suite 1000
P.O. Box 1617
Boise, ID 83701-1617
Telephone: 208.344.6000
Facsimile: 208.954.5232
Email: jkurtz@hawleytroxell.com
       dbolinger@hawleytroxell.com

Attorneys for Plaintiff/Counter-Defendant

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DICKINSON FROZEN FOODS, INC.,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>FPS FOOD PROCESS SOLUTIONS CORPORATION,<br><br>　　　　Defendant.<br><hr>FPS FOOD PROCESS SOLUTIONS CORPORATION,<br><br>　　　　Counter-Claimant,<br><br>vs.<br><br>DICKINSON FROZEN FOODS, INC.,<br><br>　　　　Counter-Defendant. | Case No. 1:17-cv-00519-DCN<br><br>DECLARATION OF DANE A. BOLINGER IN SUPPORT OF DICKINSON'S MEMORANDUM REGARDING THE APPROPRIATE STANDARD OF REVIEW FOR RECONSIDERATION OF AN INTERLOCUTORY ORDER |

I, Dane A. Bolinger, hereby declare pursuant to 28 U.S.C. § 1746:

DECLARATION OF DANE A. BOLINGER IN SUPPORT OF DICKINSON'S
MEMORANDUM REGARDING THE APPROPRIATE STANDARD OF
REVIEW FOR RECONSIDERATION OF AN INTERLOCUTORY ORDER - 1

1. I am an attorney admitted to practice before the Court and counsel of record for the Plaintiff, Dickinson Frozen Foods, Inc. ("Dickinson").

2. I submit this Declaration in connection with and in support of Dickinson's Memorandum Regarding the Appropriate Standard of Review for Reviewing a Motion for the Reconsideration of an Interlocutory Order.

3. On **December 21, 2017**, Dickinson filed its Complaint. (Dkt. 1.) On **February 6, 2018**, FPS's current counsel, Elijah Watkins of Stoel Rives filed his appearance on behalf of FPS. (Dkt. 6.) On **March 21, 2018**, pursuant to stipulated filings, the Court entered its initial Case Management Order. (Dkt 18.) On **August 24, 2018**, pursuant to stipulation, the Court ordered an extension to certain pre-trial deadlines. (Dkt. 28.) During the entirety of this process, the parties and their counsel were engaged in extensive written discovery, including the exchange of tens of thousands of pages of documents from Dickinson and FPS, but no depositions had yet been completed, and only minor third-party discovery had been initiated.

4. On **September 7, 2018**, Mr. Watkins on behalf of FPS made the first request to inspect Dickinson's Sugar City Facility during a phone call with me. (Dkt. 44-26, Bolinger Decl. at ¶¶ 24-26.) On **October 2, 2018**, again pursuant to stipulation, the Court ordered an extension of certain pre-trial deadlines, including an extension of the expert disclosure deadline to November 1, 2018 and a date to complete all expert discovery of January 29, 2019. (Dkt. 37.) On **October 16, 2018**, FPS and its refrigeration system expert, Eduardo Ford, conducted an inspection of the Freezer, the current Refrigeration System, and Dickinson's Sugar City Facility. (Dkt. 44-26, Bolinger Decl. at ¶ 26.)

DECLARATION OF DANE A. BOLINGER IN SUPPORT OF DICKINSON'S
MEMORANDUM REGARDING THE APPROPRIATE STANDARD OF
REVIEW FOR RECONSIDERATION OF AN INTERLOCUTORY ORDER - 2

5. On **October 29, 2018**, two days before the due date for initial expert disclosures, Mr. Watkins called me and disclosed for the first time that FPS would file a motion for spoliation sanctions based on the disassembly of the FPS Freezer. (Dkt. 44-26, Bolinger Decl. at ¶ 28.) Mr. Watkins told me, again for the first time, that FPS was unilaterally refusing to comply with the Court's standing expert disclosure deadline suggesting Ford could not sufficiently analyze the FPS Freezer or the Refrigeration System. (*Id.*)

6. On **October 30, 2018**, FPS filed its Motion for Sanctions for Spoliation of Evidence. (Dkt. 39.) On **November 1, 2018**, Dickinson disclosed its expert reports in accordance with the Court's schedule. (Dkt. 44-26, Bolinger Decl. at ¶ 29.) On **November 2, 2018**, Mr. Watkins sent an email to me stating that he had a report from Ford in his possession but that he was unilaterally withholding it from production depending on the outcome of the Court's ruling on FPS's Motion. (*Id.* at Exh. 17). On **November 16, 2018**, the Parties' counsel attended a phone conference with the Court's law clerk regarding a number of discovery disputes, including Mr. Watkins' request to extend expert rebuttal reports until after the Court had ruled on the Motion. (*Id.* at ¶31.) Later that evening, the Court's law clerk emailed the parties' counsel and instructed FPS to produce Ford's initial expert report. (*Id.* at Exh. 19.)

7. On **November 13, 2018**, Dickinson completed the deposition of third-party witness, James Peterson of Cold Solutions, which was the first fact witness deposition to be completed in the case. On **November 30, 2018**, Dickinson filed its Memorandum in Opposition to FPS's Motion for Sanctions and related materials (*See* Dkt. 44, *et seq.*) Since discovery was still open and in the comparatively early stages, all discovery and information gathered by

DECLARATION OF DANE A. BOLINGER IN SUPPORT OF DICKINSON'S
MEMORANDUM REGARDING THE APPROPRIATE STANDARD OF
REVIEW FOR RECONSIDERATION OF AN INTERLOCUTORY ORDER - 3

45670.0013.12290217.1

Dickinson after this date were not a part of the record for Dickinson's opposition to FPS's Motion.

8. On **December 17, 2018**, Dickinson disclosed its expert Charles Taylor's rebuttal report to Ford's initial expert report, and FPS disclosed Ford's expert rebuttal report to Taylor's initial report.  On **December 21, 2018**, FPS filed its reply in further support of its Motion (and an "Errata" to the Motion was later filed on December 26, 2018).  (Dkt. 49, 50.)  On the same day, December 21, 2018, pursuant to stipulation, the Court ordered an extension of certain pre-trial deadlines, including a deadline to compete expert depositions, all fact discovery, and for filing of motions for summary judgment.  (Dkt. 48.)

9. On **January 3, 2019**, third-party Colmac Coil Manufacturing, Inc. ("Colmac") produced over 2,000 pages of documents in response to Dickinson's Subpoena Duces Tecum. Included in Colmac's document production were a large number of excel sheets and other data regarding testing that Colmac performed (assisted by FPS) on the Freezer and the Refrigeration System when it was still installed at Dickinson's facility.  (*See* Dkt. 81-1, Dickinson's Memo. at pp. 19, 21; Dkt. 82, Taylor Decl. at ¶¶ 43-57 (discussing importance of Colmac data)).

10. On **January 8th and 9th, 2019**, Dickinson took and completed the deposition of FPS's manager of the modification department, Jason Kwok.  On **January 9th and 10th, 2019**, Dickinson took and completed the deposition of FPS's highest-ranked employee and president, Jeffrey Chang.  Both Kwok and Chang provided testimony relevant to the Court's Order and Dickinson's Motion for Reconsideration.

11. On **February 22, 2019**, third-party Kemper Northwest, Inc. ("Kemper"), the refrigeration contractor that designed and installed the Refrigeration System produced additional

DECLARATION OF DANE A. BOLINGER IN SUPPORT OF DICKINSON'S
MEMORANDUM REGARDING THE APPROPRIATE STANDARD OF
REVIEW FOR RECONSIDERATION OF AN INTERLOCUTORY ORDER - 4

documents in response to FPS's Subpoena Duces Tecum.  On **April 26, 2019**, third-party Nestle, Inc. produced over 11,000 pages of documents in response to FPS's Subpoena Duces Tecum. Many of these documents contain information relevant to Dickinson's Motion for Reconsideration that were not available to Dickinson as of the due date of its response to FPS's Motion.

12. On **May 9, 2019**, pursuant to stipulation, the Court ordered an extension of certain pre-trial deadlines, including an extension of the deadline to complete expert depositions, all fact discovery, and for filing of motions for summary judgment. (Dkt. 68.)  On the same date, FPS took and completed the deposition of Taylor.  On **May 21, 2019**, the Court issued the Order. (Dkt. 69.)  Dickinson's counsel and FPS's counsel repeatedly conferred regarding how the parties would proceed given the Order, and how they would approach the Court regarding further proceedings, including that Dickinson would likely be obligated to bring a Motion for Reconsideration of the Order and would need to pursue additional discovery to establish a full factual record relevant to FPS's spoliation theory.  (*See generally* Dkt. 74-2, Bolinger Decl. at ¶¶ 8-10.)  On **May 31, 2019**, I emailed Mr. Watkins noting that Dickinson would need to take additional discovery, including the deposition of Ford.  (*Id*. at ¶ 11.)

13. On **June 5, 2019**, my partner John Kurtz and I attended a phone conference with Mr. Watkins and members of his law firm regarding future proceedings and discovery.  (*Id*. at ¶ 12.)  Mr. Kurtz and l discussed that Dickinson intended to file a Motion to Reconsider the Order but that we believed additional discovery would likely be necessary to fully develop an adequate record for that Motion.  (*Id*.)  On **June 10, 2019**, the Parties' counsel attended a phone conference with the Court's law clerk regarding future proceedings in the case.  (*Id*. at ¶ 13.)

DECLARATION OF DANE A. BOLINGER IN SUPPORT OF DICKINSON'S
MEMORANDUM REGARDING THE APPROPRIATE STANDARD OF
REVIEW FOR RECONSIDERATION OF AN INTERLOCUTORY ORDER - 5

45670.0013.12290217.1

Dickinson's counsel stated on that phone call that Dickinson would likely need to depose witnesses from Kemper, Colmac Coil, GEA, and Nestle, as well as FPS's expert, Ed Ford. (*Id*. at ¶ 15.) On that call, the Court's law clerk requested that the parties submit an email regarding the appropriate standard of review the Court should apply to the Motion for Reconsideration. (*Id*. at ¶ 19.). On **June 13, 2019**, Dickinson complied with that request, and I submitted an e-mail to the Court's law clerk regarding the appropriate standard of review for the Court to apply in addressing Dickinson's eventual Motion for Reconsideration. (*Id*. at ¶ 19, Exh. H.) On **June 14, 2019**, the Court's law clerk emailed counsel stating:

> I have discussed Dickinson's position paper with the Judge. Elijah [FPS's counsel], FPS is free to respond, but we don't want to turn this is into substantive briefing on the Motion for Reconsideration itself. My request for a summary from Dickinson was simply to aid the Judge and me in understanding their position. We don't want you to waste your time addressing the substance now when you can do that in your response to the Motion for Reconsideration. Ultimately, Dickinson can litigate this case how it chooses--the Court won't make a decision on reconsideration until the Motion has been fully briefed. Having said that, if you feel a response from FPS in necessary before the Judge makes a decision on the dates, I am happy to review one and share it with him. Please let me know whether you would still like to respond and we can go from there.

(*Id*. at ¶ 20, Exh. K.)

      14.     Later that same day, Mr. Watkins emailed the Court's law clerk with its position regarding the appropriate standard of review that the Court should apply in assessing Dickinson's eventual Motion for Reconsideration. (*Id*. at ¶ 21, Exh. L.) Subsequently, the Court's law clerk emailed counsel in response stating:

> Thank you for your summaries regarding the appropriate standard for Dickinson's Motion for Reconsideration. They were both helpful and the Court appreciates you taking the time to outline your respective positions.

DECLARATION OF DANE A. BOLINGER IN SUPPORT OF DICKINSON'S MEMORANDUM REGARDING THE APPROPRIATE STANDARD OF REVIEW FOR RECONSIDERATION OF AN INTERLOCUTORY ORDER - 6

45670.0013.12290217.1

> Dickinson's Motion for Reconsideration will be due on or before August 30, with the standard schedule for FPS's response and Dickinson's reply. All other case deadlines, including for discovery and dispositive motions, will be stayed until the Court issues it's decision on the Motion for Reconsideration. We can have a call to reschedule deadlines (unless the parties can stipulate to new deadlines) once the Court's decision is issued.

(*Id.* at ¶ 23; Exh. M.)

15. Thus, I reasonably believed from this email that the Court was aware that the parties had differing legal views as to the appropriate standard of review on a motion for reconsideration, that Dickinson intended to take substantial additional discovery (including a substantial number of depositions) to more fully develop the factual record for its eventual Motion for Reconsideration, and that the Court had agreed Dickinson should do so and then filed its motion.[1]

16. On **June 26, 2019**, Dickinson took and completed the deposition of Ford. This testimony was not available to Dickinson as of the due date of its response to FPS's Motion or prior to the Court issuing the Order.

17. In preparing for the depositions of Kemper representatives, I realized that Kemper's response to FPS's two Subpoenas Duces Tecum appeared to be incomplete and that there appeared to be some critical documents from a site inspection and joint testing of the Freezer and the Refrigeration System in September of 2017 that Kemper had not produced. I requested that Kemper's counsel, Erik Bolinder, review whether such documents had inadvertently been overlooked or if the scope of the subpoena had been misunderstood, and if the

---

[1] Pursuant to stipulation with counsel and communication with the Court's law clerk, the due date for the Motion was eventually extended briefly to September 6, 2019.

DECLARATION OF DANE A. BOLINGER IN SUPPORT OF DICKINSON'S
MEMORANDUM REGARDING THE APPROPRIATE STANDARD OF
REVIEW FOR RECONSIDERATION OF AN INTERLOCUTORY ORDER - 7

documents existed, if they could be supplementally produced prior to the depositions. On **July 23, 2019**, Kemper through counsel produced over 200 pages of additional documents almost all of which related to the joint site and inspection and testing conducted by Colmac, FPS, Kemper, Nestle, and James Peterson in September of 2017. This documentary evidence was not available to Dickinson as of the due date of its response to FPS's Motion or prior to the Court issuing the Order.

18. On **August 1, 2019**, GEA North America produced over 1,000 pages of documents in response to FPS's Subpoena Duces Tecum. Related to these documents, on **August 13, 2019**, Dickinson took and completed the deposition of GEA's Systems Diagnostic Engineer, Jan Clarke. This evidence was not available to Dickinson as of the due date of its response to FPS's Motion or prior to the Court issuing the Order.

19. On **August 7, 2019** and **August 8, 2019**, Dickinson took and completed the depositions of Nestle refrigeration engineers, Bent Wiencke and Kris Hinds, respectively. This testimony was not available to Dickinson as of the due date of its response to FPS's Motion or prior to the Court issuing the Order.

20. On **August 9, 2019**, Colmac Coil's counsel supplemented Colmac's response to Dickinson's Subpoena Duces Tecum and produced over 300 pages of additional documents. On **August 12, 2019**, Dickinson took and completed the depositions of Colmac's president Bruce Nelson, engineer Trever Pope, and senior vice-president Joe Fazzari. This evidence was not available to Dickinson as of the due date of its response to FPS's Motion or prior to the Court issuing the Order.

DECLARATION OF DANE A. BOLINGER IN SUPPORT OF DICKINSON'S MEMORANDUM REGARDING THE APPROPRIATE STANDARD OF REVIEW FOR RECONSIDERATION OF AN INTERLOCUTORY ORDER - 8

45670.0013.12290217.1

21. On **August 14, 2019**, Dickinson took and completed the Rule 30(b)(6) deposition of Kemper, with Kemper's engineering supervisor Drew Provard and salesman Eric York testifying on behalf of Kemper. This testimony was not available to Dickinson as of the due date of its response to FPS's Motion or prior to the Court issuing the Order.

22. On **October 10, 2019**, counsel for the parties attended an informal telephonic status conference with the Court. Specifically, myself and attorney William K. Smith attended on behalf of Dickinson. Attorneys Elijah Watkins and Rollo Scott attended on behalf of FPS. District Judge Nye and the Court's law clerk, Nicole Trotta, attended on behalf of the Court.

23. At the informal hearing, there was a discussion between the Court and counsel regarding what the appropriate standard of review the Court should apply regarding Dickinson's Motion for Reconsideration. There was some discussion of Dickinson's June 13, 2019 email to Ms. Trotta and the case law cited therein regarding the appropriate standard of review of an interlocutory order. Specifically, the Court questioned whether the law of the case doctrine applied as the appropriate standard of review for a motion for reconsideration of an interlocutory decision, and whether the Court could or must consider such a motion solely in light of that standard. Mr. Watkins argued that "new evidence or an expanded factual record" did not apply under these circumstances. I argued on behalf of Dickinson that it did apply, and that Dickinson's Motion for Reconsideration was not solely limited by the "law of the case" standard. The Court expressed some concern that it was unsure whether new evidence or an expanded factual record was a valid basis of reviewing a motion for reconsideration, but also pointed out that there may be other bases of review that might apply, such as the clear error or manifest injustice principles.

24. The Court then instructed the parties that it would order preliminary briefing on the appropriate standard of review. The Court did not specify if it was ordering that the parties generally brief the appropriate standard of review for a motion for reconsideration of an interlocutory order or if it was also asking for input and argument as to how those standards are relate to the specific points and arguments raised in Dickinson's Motion for Reconsideration. The Court's subsequent order also did not specify the level of detail the Court was requesting on the briefing. (*See* Dkt. 88, ordering "that the parties brief the appropriate standard for Plaintiff's Motion for Reconsideration.").

25. On the same call, Mr. Watkins stated that Dickinson had filed over 7,000 pages of material in conjunction with its Motion for Reconsideration and implied that if the Court were to allow the expanded factual record, it would need to review every page of those materials.

I declare under penalty of perjury that the foregoing is true and correct.

DATED THIS 10th day of October, 2019.

By /s/ Dane A. Bolinger
Dane A. Bolinger

DECLARATION OF DANE A. BOLINGER IN SUPPORT OF DICKINSON'S MEMORANDUM REGARDING THE APPROPRIATE STANDARD OF REVIEW FOR RECONSIDERATION OF AN INTERLOCUTORY ORDER - 10

45670.0013.12290217.1

CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that on this 10th day of October, 2019, I electronically filed the foregoing DECLARATION OF DANE A. BOLINGER IN SUPPORT OF DICKINSON'S MEMORANDUM REGARDING THE APPROPRIATE STANDARD OF REVIEW FOR RECONSIDERATION OF AN INTERLOCUTORY ORDER with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic Filing to the following persons:

Elijah M. Watkins
Elijah.watkins@stoel.com

Megan A. Olmstead
megan.olmstead@stoel.com

                /s/ John F. Kurtz, Jr.
                John F. Kurtz, Jr.
                Dane Bolinger

DECLARATION OF DANE A. BOLINGER IN SUPPORT OF DICKINSON'S MEMORANDUM REGARDING THE APPROPRIATE STANDARD OF REVIEW FOR RECONSIDERATION OF AN INTERLOCUTORY ORDER - 11