Elijah M. Watkins, ISB No. 8977
Email: *elijah.watkins@stoel.com*
Megan A. Olmstead, ISB No. 10897
Email: *megan.olmstead@stoel.com*
STOEL RIVES LLP
101 S. Capitol Blvd., Ste. 1900
Boise, ID 83702
Telephone: (208) 389-9000
Fax: (208) 389-9040

Attorneys for Defendant

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DICKINSON FROZEN FOODS, INC., | Case No. 1:17-CV-00519-DCN |
| Plaintiff/Counterdefendant, | |
| v. | **OPPOSITION TO PLAINTIFF DICKINSON FROZEN FOODS, INC.'S MEMORANDUM REGARDING THE APPROPRIATE STANDARD OF REVIEW FOR REVIEWING A MOTION FOR RECONSIDERATION OF AN INTERLOCUTORY ORDER** |
| FPS FOOD PROCESS SOLUTIONS CORPORATION, | |
| Defendant/Counterclaimant. | |

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .................................................................................... ii

I.   INTRODUCTION ..................................................................................... 1

II.  BACKGROUND ....................................................................................... 2

III. ARGUMENT ............................................................................................ 4

    A.   Dickinson Has Not Met the Standard for Reconsideration.................... 7

        1.   There Is No "Newly Discovered Evidence" That Justifies
            Reconsideration........................................................................ 8

            a.   Dickinson's "New Evidence" Has Always Existed...................... 9

            b.   An "Expanded Factual Record" Is the Wrong Standard.............. 11

        2.   The Court Has Not Committed "Clear Error" ......................................... 15

IV.  CONCLUSION........................................................................................ 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*389 Orange St. Partners v. Arnold,*
  179 F.3d 656 (9th Cir. 1999) ................................................7

*Akiona v. United States,*
  938 F.2d 158 (9th Cir. 1991) ................................................18

*Aland v. Kempthorne,*
  No. CV08-24-S-EJL, 2008 WL 11350111 (D. Idaho Aug. 8, 2008) ...................7, 8

*Am. Rivers v. NOAA Fisheries,*
  No. CV-04-00061-RE, 2006 WL 1983178 (D. Or. July 14, 2006) ..........................9

*Apple Inc. v. Samsung Electronics Co.,*
  888 F. Supp. 2d 976 (N.D. Cal. 2012) ................................................1

*Ashby v. Mortimer,*
  No. 4:18-CV-00143-DCN, 2019 WL 1548571 (D. Idaho Apr. 9, 2019) .................9

*Balla v. Idaho State Bd. of Corr.,*
  No. 1:81-CV-1165-BLW, 2014 WL 12614478 (D. Idaho June 5, 2014)...........................7, 17

*Baugh v. Gale Lim Holdings, Inc.,*
  No. CV-08-321-E-BLW, 2009 WL 2823656 (D. Idaho Aug. 28, 2009)................................16

*Bennion v. Astrue,*
  No. 4:10-CV-00139-REB, 2012 WL 3959413 (D. Idaho Sept. 10, 2012) ...............8

*Bright Harvest Sweet Potato Co. v. H. J. Heinz Co., L.P.,*
  No. 1:13-CV-00296-BLW, 2015 WL 12838136 (D. Idaho Sept. 25, 2015) .......................7, 8

*Carroll v. Nakatani,*
  342 F.3d 934 (9th Cir. 2003) ............................................7, 15

*Chace v. Wells Fargo Home Mortg.,*
  No. CV 09-203-S-BLW, 2010 WL 4683849 (D. Idaho Nov. 10, 2010) ...............15

*Christianson v. Colt Indus. Operating Corp.,*
  486 U.S. 800 (1988)................................................6

*City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper,*
  254 F.3d 882 (9th Cir. 2001) ................................................8

# TABLE OF AUTHORITIES
## (continued)

Page(s)

*Creech v. Ramirez,*
No. 1:99-cv-00224-BLW, 2017 WL 1129938 (D. Idaho Mar. 24, 2017) ........................15, 17

*Ellis v. Little,*
No. 1:15-CV-00515-BLW, 2018 WL 1001018 (D. Idaho Feb. 21, 2018) ..............................6

*Engelhard Indus., Inc. v. Research Instrumental Corp.,*
324 F.2d 347 (9th Cir. 1963) .................................................................................................11

*Exxon Shipping Co. v. Baker,*
554 U.S. 471 (2008)...............................................................................................................10

*Frederick S. Wyle Prof'l Corp. v. Texaco, Inc.,*
764 F.2d 604 (9th Cir. 1985) .................................................................................................11

*Greenwood v. F.A.A.,*
28 F.3d 971 (9th Cir. 1994) ...................................................................................................19

*Hathaway v. Idaho Pac. Corp.,*
No. 4:15-CV-00086-DCN, 2017 WL 6268514 (D. Idaho Dec. 8, 2017) ...........................15, 1

*Hoffman v. Tonnemacher,*
593 F.3d 908 (9th Cir. 2010) .................................................................................................16

*Huntsman Advanced Materials LLC v. OneBeacon Am. Ins. Co.,*
No. 1:08-CV-00229-BLW, 2012 WL 480011 (D. Idaho Feb. 13, 2012) ..............................13

*Hurst v. IHC Health Servs., Inc.,*
No. 4:10-CV-00387-BLW, 2012 WL 3113214 (D. Idaho July 31, 2012).....................8, 9, 10

*Idaho Golf Partners, Inc. v. TimberStone Mgmt., LLC.,*
No. 1:14-CV-00233-BLW, 2018 WL 1526004 (D. Idaho Mar. 27, 2018)...............................8

*Inclusion, Inc. v. Armstrong,*
No. 1:09-CV-00634-BLW, 2012 WL 1231855 (D. Idaho Apr. 12, 2012) .............................17

*Indep. Towers of Wash. v. Washington,*
350 F.3d 925 (9th Cir. 2003) .................................................................................................19

*Kern-Tulare Water District v. City of Bakersfield,*
634 F. Supp. 656 (E.D. Cal. 1986), *aff'd in part, rev'd in part,* 828 F.2d 514
(9th Cir. 1987)...................................................................................................................14, 15

OPPOSITION TO PLAINTIFF'S MEMORANDUM RE APPROPRIATE STANDARD OF
REVIEW FOR MOTION FOR RECONSIDERATION OF INTERLOCUTORY ORDER - iii

103612059.3 0067345-00001

# TABLE OF AUTHORITIES
## (continued)

Page(s)

*Kona Enters., Inc. v. Estate of Bishop,*
   229 F.3d 877 (9th Cir. 2000) ...................................................................8, 10, 15

*Lindstrom v. Bingham Cty., Idaho,*
   No. 1:17-CV-00019-DCN, 2018 WL 3186925 (D. Idaho June 28, 2018) ...........8, 9

*Louen v. Twedt,*
   No. CV-F-04-6556OWW/SMS, 2007 WL 915226 (E.D. Cal. Mar. 26, 2007).....13, 14, 15, 16

*Magnus Pac. Corp. v. Advanced Explosives Demolition, Inc.,*
   No. 2:13-CV-0060-EJL-CWD, 2014 WL 3533622 (D. Idaho July 15, 2014) ........7

*Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.,*
   571 F.3d 873 (9th Cir. 2009) ...................................................10

*Navajo Nation v. Confederated Tribes & Bands of the Yakama Indian Nation,*
   331 F.3d 1041 (9th Cir. 2003) ...................................................9

*Oya v. Wells Fargo Bank, N.A.,*
   No. 3:18-CV-01999-H-BGS, 2019 WL 4573704 (S.D. Cal. Sept. 19, 2019) ........13

*Portfolio FB-Idaho, LLC v. Fed. Deposit Ins. Corp.,*
   No. 1:10-CV-377-BLW, 2011 WL 901176 (D. Idaho Mar. 14, 2011)...................13

*S.O.S., Inc. v. Payday, Inc.,*
   886 F.2d 1081 (9th Cir. 1989) ...................................................14

*Sch. Dist. No. 1J, Multnomah Cty., Or. v. ACandS, Inc.,*
   5 F.3d 1255 (9th Cir. 1993) ...................................................8, 10

*Shea Homes, Inc. & Subsidiaries v. Comm'r of Internal Revenue,*
   834 F.3d 1061 (9th Cir. 2016) ...................................................18

*Thomason v. Moeller,*
   No. 4:16-CV-141-BLW, 2017 WL 3723638 (D. Idaho Aug. 29, 2017),
   *aff'd*, 741 F. App'x 420 (9th Cir. 2018).................................................6, 8

*Trumble v. Reinke,*
   No. 1:14-CV-00256-BLW, 2016 WL 2992056 (D. Idaho May 23, 2016)..............8

*Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.,*
   982 F.2d 363 (9th Cir. 1992) ...................................................1

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*United States v. MacDonald,*
   339 F.3d 1080 (9th Cir. 2003) ...................................................................18

*Vasquez v. City of Idaho Falls,*
   No. 4:16-CV-184-DCN, 2018 WL 1123865 (D. Idaho Mar. 1, 2018) ........................7, 11, 17

*Vonbrethorst v. Wash. Cty., Idaho,*
   No. CV06-0351-EJL, 2008 WL 3465262 (D. Idaho Aug. 12, 2008) ......................................13

*Wang v. Chertoff,*
   676 F. Supp. 2d 1086 (D. Idaho 2009) .......................................................13

*Waters v. Kohl's Dep't Stores, Inc.,*
   No. 14-cv-00043-KAW, 2015 WL 1519657 (N.D. Cal. Apr. 2, 2015)......................18, 19, 1

*Weeks v. Bayer,*
   246 F.3d 1231 (9th Cir. 2001) ....................................................................8

*Zimmerman v. City of Oakland,*
   255 F.3d 734 (9th Cir. 2001) ...................................................................10

**Rules**

Fed. R. Civ. P. 26(d)(1)...................................................................................11

Fed. R. Civ. P. 26(f).........................................................................................11

Fed. R. Civ. P. 54(b) ...................................................................................7, 9

Fed. R. Civ. P. 59(e) ...............................................................................7, 9, 10

Fed. R. Civ. P. 60(b) .....................................................................................10

**Other Authorities**

*Black's Law Dictionary* (11th ed. 2019)....................................................18

18B Chas. A. Wright & Arthur R. Miller, *Federal Practice & Procedure*, § 4478,
   Westlaw (2d ed. updated Aug. 2019)........................................................16

12 James Wm. Moore et al., *Moore's Federal Practice* § 59.30[4] (3d ed. 2000)........................7

Defendant/Counterclaimant FPS Food Process Solutions Corporation ("FPS"), by and through its counsel of record, Stoel Rives LLP, submits its Opposition to Dickinson Frozen Foods, Inc.'s ("Dickinson") Memorandum Regarding the Appropriate Standard of Review for Reviewing a Motion for Reconsideration of an Interlocutory Order ("Motion") (Dkt. 89). Dickinson wants the Court to reconsider and reverse its May 21, 2019 Memorandum Decision and Order ("Decision") (Dkt. 69). The Court should not do so.

## I. INTRODUCTION

Dickinson cut the Freezer—the foundation of its $18,000,000 lawsuit—in half. They hauled it out of their plant to the gravel parking lot, covered it with a tarp, and have let it sit there for the past two years in the heat, rain, snow, dust, and mud. They also altered their Refrigeration System to accommodate a replacement freezer. This was all done nearly a month *after* Dickinson filed its Complaint, *after* the case was already assigned to Magistrate Judge Candy Wagahoff Dale (and without her permission), *after* Dickinson's retained expert witness was allowed carte blanche to inspect and run tests on the Freezer prior to its destruction, *after* FPS asked to come and observe the Freezer's removal so it could preserve it, and *after* Dickinson's counsel chided that "FPS will remain obligated to preserve [the Freezer] as evidence during the pendency of Dickinson's dispute with FPS. Failure to adequately preserve the Freezer Machine … may constitute spoliation of evidence or subject FPS to sanctions." Dickinson did not follow its own advice.

These are the salient facts that the Court relied on in issuing its Decision. They have not changed. The Motion reveals no new facts. The relevant facts have existed since the beginning and have been available to Dickinson all along. Dickinson admits that the law has not changed.

Attempting to escape the reality of no new facts and no new law, Dickinson begs this Court to reconsider its Decision under its "inherent authority" based on the novel theory that the Court can examine an "expanded factual record" on reconsideration. No, it cannot. The Ninth Circuit has

OPPOSITION TO PLAINTIFF'S MEMORANDUM RE APPROPRIATE STANDARD OF REVIEW FOR MOTION FOR RECONSIDERATION OF INTERLOCUTORY ORDER  - 1

never published an opinion where it relied on an "expanded factual record" as a basis for reconsidering a non-summary judgment order. While some district courts may have used that term in error, in the Ninth Circuit an "expanded factual record" applies to successive summary judgment motions, not all reconsideration motions generally.

As the Court applied the right law to the right facts, it did not clearly err. While Dickinson may be upset because it thinks its case is now more difficult than it was before it destroyed the key evidence in the case, Dickinson has no one to blame but itself. The Court's proper application of law to fact is not overly "harsh." It is the natural consequence of Dickinson's actions. The Court has no obligation to rescue Dickinson from its poor choices. The Motion should be denied.

## II.  BACKGROUND

FPS and Dickinson disagreed on the performance of the Freezer that FPS sold to Dickinson. (Dkt. 69 at 3.) Dickinson attempted to rescind the parties' contract, demanded a full refund, and said that "Dickinson will make arrangements for FPS to take back possession of the defective Freezer Machine." (*Id.* at 5). FPS rejected the attempted rescission, and instead committed to use its knowledge and resources to "provide the highest level of freezer functionality" to its dissatisfied customer. (*Id.*) Nevertheless, Dickinson ultimately refused and threatened litigation. (*Id.* at 7.) Without admitting fault, FPS offered a full refund in exchange for FPS being allowed to come and reclaim the Freezer at its own expense and requested that Dickinson "exercise reasonable care to avoid injury or damage to the unit prior to removal." (*Id.*) Dickinson rejected the offer. (*Id.* at 8.)

Instead, Dickinson had its retained expert witness inspect and test the Freezer without FPS present. (*Id.*) Dickinson then filed, but did not serve, its Complaint on December 21, 2017. (*Id.*) The next day Dickinson's counsel sent a letter to FPS warning that FPS had a duty to preserve the Freezer for litigation and that failure to do so may "constitute spoliation of evidence or subject

FPS to sanctions." (*Id.*) FPS asked to be present at the removal to record the process and to "arrange transportation to pick up" and safely store the Freezer. (*Id.* at 9.) Dickinson refused. (*Id.*)

On January 13, 2018, Dickson "destroyed" the FPS Freezer and Refrigeration System. (*Id.* at 9, 14.) "Due to such changes, testing of the FPS Freezer and Refrigeration System…is impossible at this point." (*Id.* at 15.) Four days after this destruction, on January 17, 2018, an independent contractor hired by FPS asked to get some photos "and assess pick up and storage of the unit." (*Id.* at 9.) Dickinson once again refused. "Dickinson's subsequent storage of the FPS Freezer has caused additional damage to the FPS Freezer." (*Id.* at 16.) Six days after it destroyed the key evidence in the case, Dickinson served FPS with a copy of the Complaint. (Dkt. 5 at 2.)

FPS moved for spoliation. (Dkt. 39.) "The Court … spent significant time investigating and resolving the spoliation issue," prior to issuing its well-reasoned 40-page Decision. (Dkt. 69 at 27.) It found that "[b]ecause Dickinson willfully destroyed relevant evidence it had a duty to preserve, and because FPS has been prejudiced thereby, significant sanctions are warranted." (*Id.* at 40.) As such, the Court ordered a non-rebuttable inference by way of jury instruction that, had Dickinson not spoliated evidence, FPS would have been able to prove that the Freezer performed at the levels specified by the "Parties' Agreement." (*Id.* at 39.) Dickinson moved for reconsideration. (*See* Dkt. 81.) Following its submission of more than 7,000 pages, the Court ordered Dickinson to brief the standard for reconsideration. Dickson's Motion followed. (Dkt. 89.)

In its Motion, Dickinson concedes that the substantive law has not changed. (*Id.* at 4 n.2.) "Dickinson [also] does not present evidence to rebut FPS' evidence showing both the FPS Freezer and Refrigeration System have been significantly altered." (Dkt. 69 at 16.) Instead, Dickinson tacitly concedes that it did destroy the key evidence but argues that there is data available such that there is no need for FPS to inspect the Freezer and Refrigeration System currently. (Dkt. 89 at 10.)

These are not "new facts." The Court already recognized that "there is also a great deal of data regarding the FPS Freezer and Refrigeration System obtained by both parties before the unit was disassembled." (Dkt. 69 at 30.)

Instead, Dickinson prays the Court should eschew the familiar "new facts," "new law," "clear error" standard for reconsideration, and look instead to an "expanded factual record." (Dkt. 89 at 4.) Dickinson also claims that a jury instruction that directly goes to only one of Dickinson's four claims is too "harsh" a sanction for Dickinson's willful destruction of evidence. (*Id.* at 15.)

Because Dickinson does not satisfy the required legal standard for reconsideration, the Motion should be denied. A single adverse jury instruction is not so "harsh" that the Court must reverse itself on clear error grounds. The Court did not clearly err. There are no new facts and no new law. The Court should affirm its Decision.

## III. ARGUMENT

"Although courts have authority to reconsider prior orders, they 'should be loath to do so in the absence of extraordinary circumstances….'" *Ellis v. Little*, No. 1:15-CV-00515-BLW, 2018 WL 1001018, at *1 (D. Idaho Feb. 21, 2018) (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988)). After all, "reconsideration is 'an extraordinary remedy, to be used sparingly.'" *Thomason v. Moeller*, No. 4:16-CV-141-BLW, 2017 WL 3723638, at *1 (D. Idaho Aug. 29, 2017), *aff'd*, 741 F. App'x 420 (9th Cir. 2018); *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003) (reconsideration is an "'extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources'" (citation omitted)); 12 James Wm. Moore et al., *Moore's Federal Practice* § 59.30[4] (3d ed. 2000). That is why "a motion for reconsideration should not be granted, absent highly unusual circumstances." *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999).

"Motions for reconsideration…are generally disfavored…." *Aland v. Kempthorne*, No. CV08-24-S-EJL, 2008 WL 11350111, at *1 (D. Idaho Aug. 8, 2008). Typically, "most motions for reconsideration are nothing more than a request that the Court change its mind." *Bright Harvest Sweet Potato Co. v. H. J. Heinz Co., L.P.*, No. 1:13-CV-00296-BLW, 2015 WL 12838136, at *1 (D. Idaho Sept. 25, 2015); *Aland*, 2008 WL 11350111, at *1 ("The motion to reconsider should not be used to ask the court to rethink matters already decided.").

"[N]either the Federal Rules of Civil Procedure nor the Local Rules provide for a motion to reconsider." *Magnus Pac. Corp. v. Advanced Explosives Demolition, Inc.*, No. 2:13-CV-0060-EJL-CWD, 2014 WL 3533622, at *1 (D. Idaho July 15, 2014). "Nevertheless, the Ninth Circuit has instructed that courts should treat motions to reconsider 'as motions to alter or amend under Federal Rule of Civil Procedure 59(e).'" *Vasquez v. City of Idaho Falls*, No. 4:16-CV-184-DCN, 2018 WL 1123865, at *1 (D. Idaho Mar. 1, 2018) (quoting *Magnus*, 2014 WL 3533622, at *1).

But regardless of whether a motion to reconsider is analyzed under Federal Rule of Civil Procedure 59(e), Rule 54(b), or some other basis, a district court should only grant a motion for reconsideration if (1) it "is presented with newly discovered evidence," (2) it "committed clear error," or (3) "there is an intervening change in the controlling law." *Id.* (quotations omitted); *compare with Balla v. Idaho State Bd. of Corr.*, No. 1:81-CV-1165-BLW, 2014 WL 12614478, at *2 (D. Idaho June 5, 2014) ("In general, a court will grant a motion for reconsideration of an interlocutory order only when the movant demonstrates: '(1) an intervening change in the law; (2) the discovery of new evidence not previously available; or (3) a clear error in the first order.'" (citation omitted)); *see also Sch. Dist. No. 1J, Multnomah Cty., Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993) (same); *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) (same); *Aland*, 2008 WL 11350111, at *1 (same); *Thomason*, 2017 WL 3723638, at *1

(same); *Hurst v. IHC Health Servs., Inc.*, No. 4:10-CV-00387-BLW, 2012 WL 3113214, at *1 (D. Idaho July 31, 2012) (same); *Bennion v. Astrue*, No. 4:10-CV-00139-REB, 2012 WL 3959413, at *1 (D. Idaho Sept. 10, 2012) (same); *Bright Harvest Sweet Potato Co.,* 2015 WL 12838136, at *1 (same); *Idaho Golf Partners, Inc. v. TimberStone Mgmt., LLC.*, No. 1:14-CV-00233-BLW, 2018 WL 1526004, at *2 (D. Idaho Mar. 27, 2018) (same).

"If the motion to reconsider does not fall within one of these three categories, it ***must*** be denied." *Hurst*, 2012 WL 3113214, at *1 (emphasis added); *Bennion*, 2012 WL 3959413, at *1. Thus, while federal courts do possess the "inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient," *City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 885 (9th Cir. 2001) (internal quotation marks and citation omitted), courts in the Ninth Circuit confine their analysis to the three categories of (1) new facts, (2) new law, or (3) clear error in determining what is actually "sufficient" for purposes of reconsideration. *See, e.g., Lindstrom v. Bingham Cty., Idaho*, No. 1:17-CV-00019-DCN, 2018 WL 3186925, at *2 (D. Idaho June 28, 2018). Motions to reconsider that do not meet this tripartite standard are routinely denied. *Trumble v. Reinke*, No. 1:14-CV-00256-BLW, 2016 WL 2992056, at *1 (D. Idaho May 23, 2016)) (Motions to reconsider are "not intended to provide litigants with a 'second bite at the apple.'") (quoting *Weeks v. Bayer*, 246 F.3d 1231, 1236 (9th Cir. 2001)).

Ultimately, the "need to be right…must co-exist with the need for forward progress. A court's opinions 'are not intended as mere first drafts, subject to revision and reconsideration at a litigant's pleasure.'" *Hurst*, 2012 WL 3113214, at *1 (citation omitted). Thus, "[w]hether or not to grant reconsideration is committed to the sound discretion of the court." *Navajo Nation v. Confederated Tribes & Bands of the Yakama Indian Nation*, 331 F.3d 1041, 1046 (9th Cir. 2003).

**A.      Dickinson Has Not Met the Standard for Reconsideration**

As an initial matter, Dickinson does not even recognize the appropriate standard for reconsideration. Rather, it leans heavily on the true, but unremarkable fact that district courts have inherent power to reconsider an earlier order at any time "for a cause seen by it to be sufficient." (Dkt. 89 at 9.) But this truism goes to the uncontested issue of *when* a district court may reconsider an order, not *why* an order may be reconsidered, *viz.*, new facts, new law, clear error.

Dickinson gives little analysis to what courts consider to be "sufficient" under their inherent authority, apparently arguing that so long as a district court invokes that talismanic word "sufficient," reconsideration is always proper. Surely Dickinson is not claiming that a district court, so long as it writes the word "sufficient" in its order, can reconsider and reverse a prior ruling merely because the court's favorite television program was cancelled or because the court misplaced its car keys. Reconsideration on those grounds would surely be reversed precisely because TV shows and lost car keys are not "sufficient" grounds—even with a court's inherent power—because they are not "new facts," "new law," or "clear error." *See, e.g.*, *Lindstrom*, 2018 WL 3186925, at *2 (citing Ninth Circuit law applying Rule 59(e) when using a court's inherent power to reconsider interlocutory orders); *Ashby v. Mortimer*, No. 4:18-CV-00143-DCN, 2019 WL 1548571, at *1 (D. Idaho Apr. 9, 2019) (same); *Am. Rivers v. NOAA Fisheries*, No. CV-04-00061-RE, 2006 WL 1983178, at *2 (D. Or. July 14, 2006) ("Rule 54(b) does not address the standards a district court should apply when reconsidering an interlocutory order, but several district courts in the Ninth Circuit have applied standards of review substantially similar to those used under Rule 59(e) and 60(b)," *i.e.*, new facts, new law, clear error). Obviously, there are limits to what is "sufficient" for reconsideration: new facts, new law, clear error. Dickinson cannot satisfy the required reconsideration standard when it does not even recognize what that standard is.

But even if Dickinson had argued the appropriate standard, it still has not satisfied any one of the three categories. It concedes that there has been no "intervening change in controlling law in this case," and it has not established any new facts or clear error on the Court's part. (Dkt. 89 at 4 n.2.) As such, the Motion "*must*" be denied. *Hurst*, 2012 WL 3113214, at *1 (emphasis added).

### 1.     There Is No "Newly Discovered Evidence" That Justifies Reconsideration

A motion for reconsideration "'may *not* be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation.'" *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009) (quoting *Kona Enters.*, 229 F.3d at 890); *accord Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008) (A motion to reconsider "'may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment.'" (citation omitted)). This prohibits a movant from placing new facts in front of a court on reconsideration unless those facts were previously unavailable. *Sch. Dist. No. 1J*, 5 F.3d at 1263 ("The overwhelming weight of authority is that the failure to file documents in an original motion or opposition does not turn the late filed documents into 'newly discovered evidence.'"); *accord Zimmerman v. City of Oakland*, 255 F.3d 734, 740 (9th Cir. 2001) ("[A] party that fails to introduce facts in a motion or opposition cannot introduce them later in a motion to amend by claiming that they constitute 'newly discovered evidence' unless they were previously unavailable." (citation omitted)).

When asking a court to reconsider a prior ruling based on newly discovered evidence "the movant is '*obliged* to show not only that this evidence was newly discovered or unknown to it until after the hearing, but also that it could not with reasonable diligence have discovered and produced such evidence at the hearing.'" *Frederick S. Wyle Prof'l Corp. v. Texaco, Inc.*, 764 F.2d 604, 609 (9th Cir. 1985) (emphasis in original) (quoting *Engelhard Indus., Inc. v. Research Instrumental Corp.*, 324 F.2d 347, 352 (9th Cir. 1963)). "Evidence is only newly discovery if it

was in fact previously unavailable—i.e. the party asserting the evidence, acting with reasonable diligence, could not have previously discovered the evidence." *Vasquez*, 2018 WL 1123865, at *3.

### a.    Dickinson's "New Evidence" Has Always Existed

Dickinson argues that the Court should consider its new evidence because "[w]hen FPS filed its Motion for Sanctions, discovery in the case was still in its early stages." (Dkt. 89 at 18.) Dickinson's argument is unavailing for at least three reasons.

<u>First</u>, Dickinson had plenty of time to conduct discovery before the Court entered its Decision. Dickinson filed its Complaint on December 21, 2017, and the parties held their Rule 26(f) conference on March 2, 2018. (Dkt. 1); Declaration of Elijah M. Watkins ("Watkins Decl.") at **Ex. A**. Dickinson could have begun taking depositions and propounded written discovery any time after that. Fed. R. Civ. P. 26(d)(1). Dickinson had almost a full year's worth of discovery before FPS moved for spoliation on October 30, 2018 (Dkt. 39), and a total of 445 days' worth of discovery until the Court's May 21, 2019 Decision. (Dkt. 69.)

All the deponents admit that nothing about which they testified occurred after the date of the Court's Decision, and virtually all of them testified that had Dickinson asked, they would have provided the same information earlier. Watkins Decl., **Ex. B** (D. Provard 249:6-250:11-17, 250:8; B. Wienke 227:8:8-228:13, 228:19-229:17; K. Hinds 223:7-225:14; T. Pope 89:24-91:4; J. Clark 76:19-22, 77:17-22; J. Fazzari 10:11-19; E. York 51:13-25.) Dickinson's claim that "discovery in the case was still in its early stages" is just not credible. (Dkt. 89 at 24.) Dickinson had plenty of time to get this information, it just chose not to until after it was sanctioned for spoliation.

<u>Second</u>, Dickinson admits that it knew of the existence of the data it now seeks to place before the Court well prior to the Court's Decision. Dickinson's in-house counsel and Vice President, Steven Schossberger, admits that "by late June of 2017, as in-house counsel for Dickinson, I had become personally aware from correspondence and conversations with various

witnesses that: 1) extensive performance data had been gathered by Colmac Coil ('Colmac'), Nestle USA ('Nestle'), Kemper Northwest ('Kemper'), and FPS, including the June 2-22, 2017 site visit…."  Schossberger Decl. (Dkt. 81-2). Furthermore, Dickinson designated Nestle USA employees Weincke and Hinds, and Kemper employees Provard, York, and Medeiros, as non-retained experts in their Initial Disclosures and in their answers to FPS' First Set of Discovery Requests. Watkins Decl., **Exs. C & D**. Against this backdrop, the data and deposition testimony Dickinson now asks the Court to review cannot possibly be considered "newly discovered evidence." Dickinson not only knew of the existence of this data, it also knew where to get it and whom to speak with about what it contained.

Third, Dickinson could have easily obtained this data at any time. Mr. Bollinger, counsel for Dickinson, admits that while preparing for the deposition of Kemper representatives he realized that Kemper's discovery productions appeared to him to be incomplete. (Dkt. 89-1 at ¶ 17.) Rather than undertake any cumbersome or lengthy discovery process, Mr. Bolinger simply picked up the phone and called Kemper's council, who promptly sent him over 200 pages of additional documents. (*Id.*) As this exchange shows, Dickinson has a long, collaborative business relationship with Kemper. Watkins Decl., **Exs. E** (R. Rebmann 257:1-23 ("Q. Okay. Okay. So at least from your perspective as the maintenance manager, did you see Kemper as being kind of the go-to refrigeration company that you are pretty much bound to use? A. Yes.")), **F** ("We need to consider the expected future business with Kemper that we are going to require, (due to lack of other options) …"). Similarly, Dickinson has a cooperative relationship with Nestle, to the point of "neutral" Nestle engineers collaborating with Mr. Schossberger in private meetings about FPS on

multiple occasions. *Id.* at Ex. B (B. Wiencke 207:22-208:10; K. Hinds 199:7-14.)[1] Dickinson could have easily obtained the "new evidence" at any point prior to the Decision from its cohorts, likely by merely asking and without the need for formal, written discovery, but it did not.

Dickinson had ample time to get its "new evidence." Dickinson knew about it, knew who had it, and knew how to get it. Yet Dickinson chose not to pursue this evidence in earnest until after the Court's Decision. (Dkt. 89-1 at ¶ 13 (discussing for the first time after the Decision the need to take additional discovery "to fully develop an adequate record for the Motion").)

The only new development prompting Dickinson's motion for reconsideration was the Court's Decision imposing sanctions. That is not an appropriate ground for reconsideration. *Oya v. Wells Fargo Bank, N.A.*, No. 3:18-CV-01999-H-BGS, 2019 WL 4573704, at *3 (S.D. Cal. Sept. 19, 2019) ("'[M]ere dissatisfaction with the court's order or belief that the court is wrong in its decision are not adequate grounds for relief'" (brackets in original; citation omitted)).

> **b.    An "Expanded Factual Record" Is the Wrong Standard**

Contrary to the familiar and widely used reconsideration standard outlined above of "new facts," "new law," or "clear error," Dickinson asks instead that this Court grant reconsideration based on Dickinson's newly introduced—but always existent—evidence, even though Dickinson could have obtained and presented this evidence sooner through reasonable diligence. Dickinson's unique argument turns on the phrase "expanded factual record." (Dkt. 89 at 4.)

The language referencing an expanded factual record entered the case law through *Kern-Tulare Water District v. City of Bakersfield*, 634 F. Supp. 656, 665-66 (E.D. Cal. 1986), *aff'd in part, rev'd in part,* 828 F.2d 514 (9th Cir. 1987). Almost all the cases that use the "expanded factual record" language either cite *Louen v. Twedt*, No. CV-F-04-6556OWW/SMS, 2007 WL

---

[1] It is the data from these same "neutral" parties that Dickinson wants FPS (and the Court) to rely on now that Dickinson has destroyed the Freezer and Refrigeration System.

915226, at *4 (E.D. Cal. Mar. 26, 2007), which quotes *Kern-Tulare*, or cite *Kern-Tulare* directly. The cases Dickinson relies on cite *Louen*. (Dkt. 89 at 4-5.)

In *Kern-Tulare*, the Eastern District of California adopted language from the Seventh Circuit concerning when it is appropriate to revisit a denial of summary judgment and, while citing non-Ninth Circuit law, integrated this language into its general rule regarding a federal court's inherent power to reconsider a prior ruling. 634 F. Supp. at 665. In the context of successive motions for summary judgment, the "expanded factual record" language makes sense. Judicial policy favors giving parties multiple attempts to have a case dismissed via summary judgment.

However, if "expanded factual record" is applied such that reconsideration of *any* interlocutory ruling is appropriate whenever a party can show an expanded factual record, then the prohibition of "new facts" that could have been discovered through reasonable diligence would be rendered meaningless. Parties seeking reconsideration of settled matters could file already existing documents that they neglected to submit previously (or could have obtained previously) and force a court to have to repeatedly decide regurgitated arguments and issues. That would be improper.

Courts in this district have not gone down that path. While courts in this district have sometimes cited to *Kern-Tulare*, often through *Louen*, and have used language referencing an expanded factual record, District of Idaho courts have remained true to the underlying principle that "[a] motion [for reconsideration] may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." *Carroll*, 342 F.3d at 945 (citing *Kona Enters.*, 229 F.3d at 890); *Hathaway v. Idaho Pac. Corp.*, No. 4:15-CV-00086-DCN, 2017 WL 6268514, at *1, *2 (D. Idaho Dec. 8, 2017) (mentioning "expanded factual record," but agreeing that "nothing new" had been brought forward in the motion to reconsider, and affirming the prior discovery sanction); *Creech v. Ramirez*, No. 1:99-cv-00224-BLW, 2017

WL 1129938, at *2 (D. Idaho Mar. 24, 2017) (internal quotation marks and citations omitted) ("expanded factual record can, in some circumstances, be a basis to reconsider an interlocutory order, [but] a motion for reconsideration should not be used as a vehicle to identify facts or raise legal arguments which could have been, but were not, raised or adduced during the pendency of the motion of which reconsideration was sought"); *Chace v. Wells Fargo Home Mortg.*, No. CV 09-203-S-BLW, 2010 WL 4683849, at *1 (D. Idaho Nov. 10, 2010) (citing *Louen* for "'expanded factual record,'" but finding no "'new facts'" and denying motion (citations omitted)).[2]

More to this point, the Ninth Circuit has *never* used the "expanded factual record" language in a published opinion as the basis for a motion to reconsider anything other than a renewed motion for summary judgment. *Hoffman v. Tonnemacher*, 593 F.3d 908, 911-12 (9th Cir. 2010) ("We adopt the sound view, expressed by several [other] circuits, that a successive motion for summary judgment is particularly appropriate on an expanded factual record."). As explained in *Hoffman*, it makes sense that a court would consider an expanded factual record in the context of successive motions for summary judgment because the goals of judicial expediency and efficiency are furthered whenever a party can show that a court may dispose of a case on summary judgment. *Id.* at 911 ("[T]he denial of summary judgment does not preclude a contrary later grant of summary

---

[2] The string cite of District of Idaho cases relied on by Dickinson do not support its argument that courts in Idaho grant general motions to reconsider based on an "expanded factual record." (*See* Dkt. 89 at 11 (*Portfolio FB-Idaho, LLC v. Fed. Deposit Ins. Corp.*, No. 1:10-CV-377-BLW, 2011 WL 901176, at *1 (D. Idaho Mar. 14, 2011) (Winmill, J.) (citing *Louen*, but denying motion to reconsider under "clearly erroneous standard"); *Wang v. Chertoff*, 676 F. Supp. 2d 1086, 1103-04 (D. Idaho 2009) (Dale, Mag. J.) (same); *Vonbrethorst v. Wash. Cty., Idaho*, No. CV06-0351-EJL, 2008 WL 3465262, at *1 (D. Idaho Aug. 12, 2008) (Lodge, J.) (citing *Louen* and reviewing additional affidavits *after denial of a motion for summary judgment*, and denying reconsideration); *Huntsman Advanced Materials LLC v. OneBeacon Am. Ins. Co.*, No. 1:08-CV-00229-BLW, 2012 WL 480011, at *2 (D. Idaho Feb. 13, 2012) (Winmill, J.) (citing *Louen* and reconsidering order of visiting judge on clear error grounds).)

OPPOSITION TO PLAINTIFF'S MEMORANDUM RE APPROPRIATE STANDARD OF REVIEW FOR MOTION FOR RECONSIDERATION OF INTERLOCUTORY ORDER  - 13

judgment. Consequently, allowing a party to file a second motion for summary judgment is logical, and it fosters the 'just, speedy, and inexpensive' resolution of suits."); *Baugh v. Gale Lim Holdings, Inc.*, No. CV-08-321-E-BLW, 2009 WL 2823656, at *1 (D. Idaho Aug. 28, 2009) (reviewing expanded factual record when reconsidering previous denial of motion for summary judgment, but ultimately not being swayed by the expanded factual record).[3]

While an expanded factual record may be grounds for revisiting denial of a motion for summary judgment as seen in *Hoffman*, those policy arguments do not apply outside of that context. Where, as here, the interlocutory decree is the imposition of discovery sanctions, judicial expediency and efficiency are not favored by giving the sanctioned party multiple opportunities to raise arguments and adduce evidence that has been available the entire time. 18B Chas. A. Wright & Arthur R. Miller, *Federal Practice & Procedure*, § 4478, Westlaw (2d ed. updated Aug. 2019) ("Evidence that could have been presented earlier commonly is not considered, in keeping with the general rules that discourage slovenly or ill-considered approaches to the first trial."). The "law of the case" doctrine does not change this analysis. *Inclusion, Inc. v. Armstrong*, No. 1:09-CV-00634-BLW, 2012 WL 1231855, at *2 (D. Idaho Apr. 12, 2012) (reviewing summary judgment findings under the "law of the case" doctrine, but declining to consider evidence that was "not new" where "[d]efendants have not shown, nor do they argue, that the evidence was unavailable or could not have been discovered at the time the parties submitted stipulated facts to the Court").

---

[3] *S.O.S., Inc. v. Payday, Inc.*, cited by Dickinson (Dkt. 89 at 11), is inapposite. 886 F.2d 1081, 1085 (9th Cir. 1989) (Allowing a timely filed amended notice of appeal to include the lower court's denial of summary judgment under an entirely different legal standard not applicable here: "The amendment generally will be allowed where the intent to appeal a specific judgment can fairly be inferred and the appellee is not prejudiced by the mistake.").

Simply put, a party's decision in its underlying motion or opposition to not put all the available evidence before the court "is not an extraordinary circumstance warranting reconsideration." *Creech*, 2017 WL 1129938, at *12. Because that is what Dickinson is attempting to do here, the Court should decline to consider Dickinson's additional submissions.

### 2.    The Court Has Not Committed "Clear Error"

As shown, there are no "new facts." Case law does not support Dickinson's attempt to expand the "expanded factual record" exception from successive summary judgment motions, to any and all interlocutory orders. Indeed, Dickinson fails to cite a single case from the Ninth Circuit or the District of Idaho where "expanded factual record" has been applied to a spoliation order.

Quietly recognizing this hole in its legal theory, Dickinson switches gears and argues that "the appropriateness of [the] jury instruction sanction does not depend upon any new evidence or an expanded record, and can be reviewed solely under the standards of clear error or manifest injustice." (Dkt. 89 at 6.) As set forth previously, courts may reconsider their orders when clear error is present. *See Vasquez*, 2018 WL 1123865, at *1; *Balla*, 2014 WL 12614478, at *2. But there is no clear error here.

"Clear error" is defined as

> Clear Error. (18c) A trial judge's decision or action that appears to a reviewing court to have been unquestionably erroneous. • Even though a clear error occurred, it may not warrant reversal. – Also termed *clear and unmistakable error.*

*Clear Error, Black's Law Dictionary* (11th ed. 2019); *accord United States v. MacDonald*, 339 F.3d 1080, 1083 (9th Cir. 2003) (under clear error, appellate courts defer to district courts "unless we are 'left with the definite and firm conviction that a mistake has been committed'" (citation omitted)). To have a "definite and firm conviction" that a previous order was wrong, courts typically look to see if the previous order was "'(1) illogical, (2) implausible, or (3) without support

OPPOSITION TO PLAINTIFF'S MEMORANDUM RE APPROPRIATE STANDARD OF
REVIEW FOR MOTION FOR RECONSIDERATION OF INTERLOCUTORY ORDER  - 15

in inferences that may be drawn from the facts in the record.'" *Shea Homes, Inc. & Subsidiaries v. Comm'r of Internal Revenue*, 834 F.3d 1061, 1067 (9th Cir. 2016) (citation omitted).

Here, the Court's Decision has none of the three clear error hallmarks announced in *Shea Homes.* A jury instruction and non-rebuttable presumption are perfectly logical (and common) when a party fails to preserve evidence. *Akiona v. United States*, 938 F.2d 158, 161 (9th Cir. 1991) ("Generally, a trier of fact may draw an adverse inference from the destruction of evidence relevant to a case."); *Waters v. Kohl's Dep't Stores, Inc.*, No. 14-cv-00043-KAW, 2015 WL 1519657, at *2, *6 (N.D. Cal. Apr. 2, 2015) (adverse inference jury instruction based on a finding that the party destroyed evidence it should have reasonably known was potentially relevant to future litigation).

Nor is an adverse jury instruction implausible or unreasonable. The Court already concluded that "[b]ecause Dickinson willfully destroyed relevant evidence it had a duty to preserve, and because FPS has been prejudiced thereby, significant sanctions are warranted." (Dkt. 69 at 40.) Thus, the "significant sanction" of an adverse jury instruction is an entirely plausible outcome based on Dickinson's conduct.

Finally, the Court found that "FPS has presented substantial evidence to establish the FPS Freezer and Refrigeration System were not simply 'disassembled,' but were at least significantly altered, if not destroyed." (*Id.* at 14.) The Court then spent "significant time investigating and resolving the spoliation issue." (*Id.* at 27.) In its 40-page Decision, the Court set forth ample support for the inferences it drew from the record. (*See generally id.*) There is no clear error.

But Dickinson persists that, regardless of clear error, the Decision is nonetheless "manifestly unjust" because it is too "harsh." (Dkt. 89 at 7.) It argues that the Court did not intend to dismiss Dickinson's case, that Dickinson did not act in "bad faith," and that the Court did not

want to enter a "drastic" sanction, yet the adverse jury instruction "effectively ends Dickinson's case." (*Id.* at 7-8.) Dickinson is wrong for several reasons.

As the Decision makes clear, "Agreement" is defined as the March 11, 2016 written contract between the parties, so the sanction only directly impacts one of Dickinson's four claims (Count One – Breach of Contract Under the CISG). (Dkt. 69 at 3, 1 at ¶¶ 22-43.) While FPS is not in the business of telling Dickinson how it can sue FPS, to the extent such evidence exists Dickinson can still claim that FPS breached an express warranty under Idaho state law (count two), can argue it was damaged under a good faith and fair dealings theory (count three), and can attempt to assert promissory estoppel against FPS (count four). (Dkt. 1 at ¶¶ 22-43.) Though FPS would surely oppose such an attempt, Dickinson is always free to try and amend its Complaint as well. Dickinson's case is not dead. And besides, whether or not there is "bad faith" has no impact on whether it is "manifestly unjust" to enter an adverse jury instruction. *See Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.,* 982 F.2d 363, 368 n.2 (9th Cir. 1992) (bad faith is not necessary to impose an adverse jury instruction).

Dickinson hopes that by falling on the mercy of the Court and showing how "harsh" the sanction is, the Court will convert the non-rebuttable presumption into a rebuttable one. (Dkt. 89 at 6.) What Dickinson is really asking for is no sanction at all for its willful destruction of evidence.

The Court has already declined to dismiss Dickinson's case in its entirety (Dkt. 69 at 31), declined to preclude all evidence of the Freezer and Refrigeration System from coming in (*id.* at 37-38) and declined to order any "monetary sanctions." (*Id.* at 39 n.8.) An adverse inference is the least onerous and only remaining meaningful and "significant sanction" in the Court's quiver left to address the "significant prejudice" experienced by FPS and caused by Dickinson. (*Id.* at 39.)

Dickinson thinks this case is like *Apple Inc. v. Samsung Electronics Co.,* where Samsung spoliated evidence, but Apple failed to show sufficient evidence to justify an adverse jury instruction. 888 F. Supp. 2d 976, 995 (N.D. Cal. 2012). This Court has already concluded that FPS has shown "significant prejudice." (Dkt. 69 at 39.)

This case is actually more like *Hathaway*, where Idaho Pacific Corp. ("IPC") eventually provided audio recordings of two interviews but failed to disclose the contact information of the interviewees, even though their names were listed on the initial disclosure. 2017 WL 6268514, at *1. When this Court denied IPC use of these interviewees at trial because of the late disclosure, IPC moved this Court to "reconsider its decision because…the discovery sanctions imposed in the decision are too harsh and unfair in that they remove IPC's primary defense to Hathaway's claims." *Id.* After finding that IPC's failure to timely disclose contact information denied Hathaway of potentially relevant evidence, this Court responded:

> IPC argues on reconsideration that the Court's ruling guts IPC's defense in this case. The Court disagrees for two reasons. First, it was IPC's failure to timely provide contact information that clearly exists in the personnel files that precludes IPC from putting on evidence from [the interviewees]. Second, the Court's ruling does not gut any defense. IPC can use properly disclosed witnesses to develop the theory that IPC had a valid reason for terminating Hathaway.

*Id.* at *3.

This Court then went a step further, finding first that the withheld contact information could "go to the heart of the pretext issue," the Court strengthened its prior discovery sanction and held that "[o]ut of fairness, the sanctions for untimely disclosure of contact information will be extended to cover the recordings also." *Id.* Thus, this Court enforced the Rules, defended its previous discovery sanction order, and made sure that prejudice was remedied as best it could, even if the party that violated their discovery obligations felt the result was too "harsh."

OPPOSITION TO PLAINTIFF'S MEMORANDUM RE APPROPRIATE STANDARD OF REVIEW FOR MOTION FOR RECONSIDERATION OF INTERLOCUTORY ORDER  - 18

This case is no different. It is not this Court's fault if Dickinson's case is suddenly more difficult. It is Dickinson's fault for destroying the key evidence—evidence that could "go to the heart of" the case, *viz.*, whether the Freezer worked in the first place or not. The Court's Decision "does not gut" Dickinson's case, as it can still argue its other claims or attempt to amend. Either way, Dickinson has no one to blame but itself. The Motion should be denied.[4]

## IV.  CONCLUSION

For the foregoing reasons, the Court should deny the Motion, find that Dickinson has not satisfied the required legal standard for reconsideration, and affirm its prior Decision.


DATED:  October 31, 2019.

STOEL RIVES LLP


*/s/ Elijah M. Watkins*
Elijah M. Watkins
Megan A. Olmstead
Attorneys for Defendant FPS Food Process
Solutions Corporation

---

[4] In shotgun manner, Dickinson concludes by "way of example only" that the Court "appears to have reached certain mistaken or erroneous conclusions based on an absence of evidence," and then proceeds to list several alleged "examples" ranging from Dickinson's expert witness to the alleged "disingenuousness" of certain FPS employees. (Dkt. 89 at 9 (emphasis omitted).) If Dickinson has chosen not to argue the merits of these admittedly incomplete allegations, then the Court has no obligation to consider them as a basis for reconsideration. *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) ("Our circuit has repeatedly admonished that we cannot 'manufacture arguments for an appellant' and therefore we will not consider any claims that were not actually argued in appellant's opening brief." (citation omitted)). The Court should disregard any attempt by Dickinson to include more argument or evidence about these "examples" on reply. *Greenwood v. F.A.A.*, 28 F.3d 971, 977 (9th Cir. 1994) ("We review only issues which are argued specifically and distinctly in a party's opening brief.").

OPPOSITION TO PLAINTIFF'S MEMORANDUM RE APPROPRIATE STANDARD OF REVIEW FOR MOTION FOR RECONSIDERATION OF INTERLOCUTORY ORDER  - 19
103612059.3 0067345-00001

# CERTIFICATE OF SERVICE

I hereby certify that on October 31, 2019, I served a copy of the foregoing **OPPOSITION TO PLAINTIFF DICKINSON FROZEN FOODS, INC.'S MEMORANDUM REGARDING THE APPROPRIATE STANDARD OF REVIEW FOR REVIEWING A MOTION FOR RECONSIDERATION OF AN INTERLOCUTORY ORDER** on CM/ECF Registered Participants as reflected on the Notice of Electronic Filing as follows:

John F. Kurtz, Jr., ISB No. 2396        Via:  CM/ECF Notification
Dane Bolinger, ISB No. 9104
HAWLEY TROXELL ENNIS & HAWLEY LLP
877 Main Street, Suite 1000
P.O. B ox 83701-1617
Boise, ID 83701-1617
Telephone:  208-344-6000
Facsimile:  208-954-5936
Email:  jkurtz@hawleytroxell.com
       dbolinger@hawleytroxell.com


*/s/ Elijah M. Watkins*
Elijah M. Watkins
Megan A. Olmstead

CERTIFICATE OF SERVICE  - 1
103612059.3 0067345-00001