Elijah M. Watkins, ISB No. 8977
Email: *elijah.watkins@stoel.com*
Jennifer S. Palmer, ISB No. 11136
Email: *jenny.palmer@stoel.com*
STOEL RIVES LLP
101 S. Capitol Blvd., Ste. 1900
Boise, ID 83702
Telephone: (208) 389-9000
Fax: (208) 389-9040

Attorneys for Defendant/Counterclaimant

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DICKINSON FROZEN FOODS, INC., <br><br> Plaintiff/Counterdefendant, <br><br> v. <br><br> FPS FOOD PROCESS SOLUTIONS CORPORATION, <br><br> Defendant/Counterclaimant. | Case No. 1:17-CV-00519-DCN <br><br> **OPPOSITION TO DICKINSON FROZEN FOODS, INC.'S MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT (Dkt. 98)** |

Defendant/Counterclaimant FPS Food Process Solutions Corporation ("FPS") submits this memorandum in opposition to Plaintiff/Counterdefendant Dickinson Frozen Foods, Inc.'s ("Dickinson") Motion for Leave to File First Amended Complaint (Dkt. 98). This opposition is also supported by the Declaration of Elijah M. Watkins ("Watkins Decl.") filed herewith.

### I.    INTRODUCTION

Over two-and-a-half years after initiating this lawsuit—after willfully destroying key evidence and receiving severe sanctions for that spoliation—Dickinson now seeks leave to file a proposed First Amended Complaint ("PFAC") to add pages of new facts and six new causes of action. But under the Court's spoliation order, the jury must presume that had Dickinson not

**OPPOSITION TO DICKINSON FROZEN FOODS, INC.'S MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT** - 1

destroyed that key evidence FPS would have been able to prove that the Freezer was capable of performing at the levels specified by the parties' agreement.  Given this mandatory, non-rebuttable presumption that the Court has now reaffirmed post-reconsideration, Dickinson cannot prevail on its existing breach of contract claim.  Its three other existing claims—breach of express warranty, breach of the implied covenant, and promissory estoppel—are also problematic from a legal and evidentiary perspective.  Because Dickinson knows its existing claims have little chance of success, it wants to start over and try again to somehow escape the Court's spoliation order.

Yet even with the complaint's proposed additions and amendments, Dickinson cannot prevail because all of its claims depend on a showing that the Freezer was *not* capable of performing at the levels specified by the parties' agreement—something that Dickinson will never be able to show due to the non-rebuttable jury presumption.  This is the fair and just result given Dickinson's prejudicial and willful destruction of the key evidence in the case.  Moreover, because amendment would severely prejudice FPS, and because Dickinson sought the amendment in bad faith and with undue delay, the Court should deny Dickinson leave to amend.

## II.     BACKGROUND

On March 11, 2016, the parties entered into a written contract for Dickinson to purchase an industrial freezer from FPS, a freezer that FPS would build according to Dickinson's requirements (the "Freezer").  *See* Dkt. 1 (hereafter "Complaint") ¶ 11 (referring to "written contract" and "Agreement"); *compare with* PFAC ¶ 18 (referring to "Order Confirmation").  FPS delivered the Freezer and completed installation on July 23, 2016.  Complaint ¶ 16; PFAC ¶ 33.

On December 21, 2017, Dickinson filed its Complaint against FPS, pleading breach of contract under the United Nations Convention on Contracts for the International Sale of Goods (the "CISG"), and, in the alternative, breach of express warranty, violations of the implied

**OPPOSITION TO DICKINSON FROZEN FOODS, INC.'S MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT** - 2

covenant of good faith and fair dealing, and promissory estoppel.  Dkt. 1.  FPS filed its answer and counterclaim on February 9, 2018, bringing counterclaims for breach of contract, breach of implied covenant of good faith and fair dealing, and defamation, and amended less than 14 days later to also include a breach of CISG Article 86, failure to preserve goods.  Dkts. 7, 13.

The parties engaged in substantial discovery based on these operative pleadings.  FPS deposed Todd Campbell, Sergio Castaneda, Robert Rebmann, and Chuck Taylor between March 26, 2019 and May 9, 2019.  Dickinson took the substantive depositions of six fact witnesses—James Peterson, Alex Chen, Danny Hu, Justin Lai, Jeffrey Chang, and Jason Kwok—between November 12, 2018 and January 10, 2019, expert Ed Ford's deposition on June 26, 2019, and the depositions of two Nestle employees (Kris Hinds and Bent Wiencke) on August 7 and 8, 2019.  Dickinson also improperly noticed and deposed Bruce Nelson, Trevor Pope, and Joe Fazzari, all of Colmac Coil, on August 12, 2019, in Spokane, Washington—prompting FPS to file its Third Motion for Protective Order followed by Dickinson's Motion for Leave to Take Additional Depositions.  *See* Dkts. 73, 74.  Dickinson also deposed Jan Clarke of GEA on August 13, 2019, and two Kemper Northwest representatives (Drew Provard and Erik York) on August 14, 2019.  Dickinson also propounded 35 Interrogatories, 122 Requests for Production, and one Request for Admission, with FPS producing approximately 71,050 documents between May 4, 2018 and August 1, 2019.  Ample discovery has been done as a result of the operative pleadings on file.

But, before any discovery took place, just days after Dickinson filed the Complaint, on January 13, 2018, Dickinson willfully destroyed the Freezer and the Freezer's refrigeration infrastructure—the very evidence upon which this case turns—and barred FPS from its premises.  *See* Dkt. 69 at 9-10.  As a result, FPS filed a Motion for Spoliation.  Dkt. 39.  In its spoliation decision, the Court found that Dickinson improperly engaged in the willful spoliation of evidence,

**OPPOSITION TO DICKINSON FROZEN FOODS, INC.'S MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT** - 3

and that "FPS has been prejudiced because Dickinson's expert had the opportunity to run tests and analyze the FPS Freezer and Refrigeration System as it existed at the time the Complaint was filed, while FPS's expert cannot."  Dkt. 69 at 16, 26, 29.  Accordingly, the Court determined that it would instruct the jury to presume the following:

> Dickinson has failed to preserve relevant evidence for FPS's use in this litigation. This is known as the "spoliation of evidence." Specifically, Dickinson destroyed the FPS Freezer and Refrigeration System after its duty to preserve this evidence arose. As a result of this spoliation, you are to presume that had Dickinson not destroyed the FPS Freezer and Refrigeration System, *FPS would have been able to prove that the FPS Freezer was capable of performing at the levels specified by the Parties' Agreement*.

Dkt. 69 at 39 (emphasis added).

Dickinson later moved the Court to reconsider this decision.  *See* Dkts. 81, 93.  Dickinson took the position that the non-rebuttable inference "was tantamount to a dismissal of Dickinson's claim," which argument the Court rejected.  Dkt. 81-1 at 5.  While the Court specified that Dickinson would be "presumptively" unable to prevail on its breach of contract claim to the extent it is based on the *performance* of the Freezer, the Court did not foreclose Dickinson from arguing its breach of contract claim on other grounds.  *See* Dkt. 93 at 38-39.[1]  The Court also explained that Dickinson remained free to pursue its other claims for breach of express warranty, breach of the covenant of good faith and fair dealing, and promissory estoppel.  *See id.* at 40.  In denying reconsideration, the Court stated again that "[b]ecause of Dickinson's willful destruction of the key evidence at issue in this suit, there is no way for Ford [FPS's expert] to conduct his own tests of the FPS Freezer or Refrigeration System, or to do anything other than rely upon information gathered for Dickinson."  Dkt. 93 at 36.

---

[1] For example, had FPS delivered the Freezer untimely, failed to deliver all the parts specified in the agreement, or caused property damage or personal injury during installation, Dickinson remains free to argue breach or some other tort arising from these hypothetical facts.

**OPPOSITION TO DICKINSON FROZEN FOODS, INC.'S MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT - 4**

Thus, Dickinson is only precluded from arguing about the ***performance*** of the Freezer, but not precluded from other avenues. Yet Dickinson's PFAC focuses entirely on the Freezer's performance and nothing else. In reality, the proposed amended complaint is nothing less than an entirely new complaint. *See* Dkt. 98-11 (Ex. 9). What once was a four-count pleading with 51 paragraphs has ballooned into a 10-count complaint with 172 paragraphs that includes entirely new facts and six new alternative causes of action, not to mention rewritten versions of the original claims. *Id.* Dickinson's significant changes all impermissibly focus on the performance of the Freezer and arise out of the same alleged representations extrinsic to the parties' written agreement—alleged representations that Dickinson admits it has known about for years. *See* Dkt. 98-3 (Ex. 1). Dickinson's request to essentially start the case over this late in the game should be denied. Dickinson wants a second bite at the apple, but the apple is spoiled.

### III.   ARGUMENT

Under Rule 15 of the Federal Rules of Civil Procedure, a party may amend its complaint as a matter of course within 21 days of serving it or 21 days after service of a responsive pleading or Rule 12 motion. Fed. R. Civ. P. 15(a)(1). However, in all other cases, a party may amend its complaint only with leave of the Court or the opposing party's written consent. Fed. R. Civ. P. 15(a)(2). FPS does not consent to Dickinson's proposed amendment, and although a "court should freely give leave when justice so requires," *id.*, it need not do so where amendment (1) would be futile, (2) is prejudicial to the opposing party, (3) is sought in bad faith, or (4) produces an undue delay in the litigation. *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 951 (9th Cir. 2006). In the Ninth Circuit, it is "the consideration of prejudice to the opposing party that carries the greatest weight." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). Here, all four considerations weigh heavily against allowing amendment.

**OPPOSITION TO DICKINSON FROZEN FOODS, INC.'S MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT** - 5

**A.     Dickinson's proposed amendments are futile because, among other reasons, they do not get around the adverse jury instruction requiring the jury to find that FPS's Freezer satisfied the parties' agreement.**

Although leave to amend is liberally granted, "leave is properly denied when amendment would be futile." *Burch v. Smathers*, 990 F. Supp. 2d 1063, 1078 (D. Idaho 2014) (citing *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987)).  "Futility of amendment can, by itself, justify the denial of a motion for leave to amend." *Johnson v. United States*, 160 F. App'x 575, 576 (9th Cir. 2005) (quoting *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995)).  This Court routinely denies leave to amend on futility alone.  *See, e.g.*, *Jacobs Silver K Farms, Inc. v. Taylor Produce, LLC*, 101 F. Supp. 3d 962, 974 (D. Idaho 2015) (denying amendment where doing so would be futile); *Joseph v. Boise State Univ.*, 998 F. Supp. 2d 928, 935 (D. Idaho 2014) (same), *aff'd*, 667 F. App'x 241 (9th Cir. 2016); *Am. Indep. Mines & Minerals Co. v. U.S. Dep't of Agric.*, 733 F. Supp. 2d 1241, 1266 (D. Idaho 2010) (same), *aff'd*, 494 F. App'x 724 (9th Cir. 2012).

Although courts often consider futility in the context of surviving a 12(b)(6) motion to dismiss, the futility inquiry can also look beyond the motion to dismiss phase.  It can include, for example, "the inevitability of a claim's defeat on summary judgment." *Burch*, 990 F. Supp. 2d at 1078-79 (quoting *Johnson v. Am. Airlines, Inc.*, 834 F.2d 721, 724 (9th Cir. 1987)); *see also, e.g.*, *Doe v. Cutter Biological, a Div. of Miles, Inc.*, 852 F. Supp. 909, 923 (D. Idaho 1994) (noting that "futility includes the inevitability of a claim's defeat on summary judgment" (quoting *Roth v. Garcia Marquez*, 942 F.2d 617. 628 (9th Cir. 1991))); *Jahelka v. S. Cal. Gas Co.*, 122 F.3d 1071 (table), 1997 WL 484184 (9th Cir. 1997) (unpublished) (affirming district court's decision that amendment is futile where the party would lose on summary judgment); *Gabrielson v. Montgomery Ward & Co.*, 785 F.2d 762, 766 (9th Cir. 1986) (same).  A claim that is futile at trial due to an adverse jury instruction would likewise be futile on summary judgment because, to

**OPPOSITION TO DICKINSON FROZEN FOODS, INC.'S MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT - 6**

survive summary judgment, a party must point to "evidence sufficient to support a jury verdict in [its] favor." *Winn v. Amerititle, Inc.*, 731 F. Supp. 2d 1093, 1097 (D. Idaho 2010). Because a jury could never find in Dickinson's favor regarding the ***performance*** of the Freezer, Dickinson's performance-based amendments are futile.

### 1.      The proposed new factual allegations supporting all claims are futile.

First, Dickinson seeks leave to add new factual allegations regarding FPS's alleged representations extrinsic to the parties' written agreement, *viz.*, Order Confirmation. *See* PFAC ¶¶ 8-10, 12-28, 31, 35, 38. These alleged extrinsic representations fall into four main categories: (i) the Freezer would operate for 20-22 hours per day; (ii) the Freezer would perform at a specified capacity for additional potato types; (iii) the maximum heat load would never exceed 210 tons of refrigeration; and (iv) the Freezer's sequential hot gas defrost design would not create significant additional parasitic heat load. *See* Dkt. 98-1 at 6-10.

Dickinson makes a lengthy argument that under the CISG and the Idaho Code, evidence regarding these alleged extrinsic representations would be admissible to support Dickinson's claims for breach of contract, breach of express warranty, and breach of implied covenant of good faith and fair dealing. Dkt. 98-1 at 3-6. However, while it is true that the CISG does not recognize an official parol evidence rule, parties to a written contract can still depend on the written contract and parol evidence should not change the parties' express agreement. *See MCC-Marble Ceramic Ctr., Inc. v. Ceramica Nuova d'Agostino, S.p.A.*, 144 F.3d 1384, 1391 (11th Cir. 1998) ("Consequently, a party to a contract governed by the CISG will not be able to avoid the terms of a contract and force a jury trial simply by submitting an affidavit which states that he or she did not have the subjective intent to be bound by the contract's terms."). And as Dickinson recognizes, Idaho's Uniform Commercial Code ("UCC") does have a parol evidence rule, Idaho Code § 28-2-

**OPPOSITION TO DICKINSON FROZEN FOODS, INC.'S MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT** - 7

202, that bars contradictory extrinsic evidence. *See* Dkt. 98-1 at 5.  Although Idaho Code § 28-2-202 allows contracts to be explained or supplemented by course of performance, course of dealing, or usage of trade, it does not allow contradictory terms, or consistent additional terms where the contract is fully integrated.

But even if these alleged extrinsic representations could be considered, they are still futile. Should this case proceed to trial, the jury must presume that had Dickinson not destroyed the Freezer, "FPS would have been able to prove that the FPS Freezer was capable of performing at the levels specified by the Parties' Agreement." Dkt. 69 at 39.  Because the jury must find that the Freezer performed as promised, it simply does not matter what performance facts Dickinson alleges about the parties' "agreement"—no matter what, FPS satisfied it.[2]

That is the fair result given Dickinson's willful spoliation of evidence, a result already affirmed by this Court on reconsideration.  Dkts. 69, 93.  Because Dickinson destroyed the key evidence in this case, there is no way for FPS to prove that it complied with its obligations, so the jury must find that it did.  The new allegations of extrinsic obligations are thus futile.  *See, e.g.*, *Raymond v. Sloan*, No. CIV. 1:13-423 WBS, 2014 WL 4215378, at *6 (D. Idaho Aug. 25, 2014) (finding proposed amended complaint futile because the "new facts do not resolve the central flaw

---

[2] Previously, in denying Dickinson's motion for reconsideration, the Court construed the parties' agreement as not including the alleged representation that the Freezer could operate at 20-22 hours a day. *See* Dkt. 93 at 39.  Dickinson may argue that, to the extent this construction carries forward, the alleged extrinsic representations are not covered by the mandatory jury presumption. But if the Court were now to allow Dickinson to make the extrinsic statements actionable, they would essentially become part of the agreement. *See Porcello v. Estate of Porcello*, No. 46443, 2020 WL 4432813, at *11 (Idaho Aug. 3, 2020) (if a contract is ambiguous, then "[t]he court must consider the words of the agreement, including writings made a part of the contract by annexation or incorporation by reference, the alternative meanings suggested by the parties, ***and any extrinsic evidence offered in support of those meanings***" (emphasis added) (quoting 11 *Williston on Contracts* § 30:5 (4th ed.))).  Thus, the jury would necessarily be required to conclude that FPS complied with these extrinsic statements as well—statements FPS denies exist—because those statements would now be part of the parties' agreement.  Besides, even if this were not the case (and it is), FPS could simply file a renewed spoliation motion to make sure that the operative spoliation order is comprehensive.  Given the Court's prior orders, it is appropriate that the jury instruction cover all contractually binding representations that Dickinson alleges FPS made. *See generally* Dkts. 69, 93.

**OPPOSITION TO DICKINSON FROZEN FOODS, INC.'S MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT** - 8

with her claim"). Thus, the Court should deny Dickinson's request to add 18 new factual paragraphs comprising 12 additional pages of allegations to the complaint.

### 2.    The claims Dickinson seeks to add or amend are also futile.

Aside from how futile adding facts extrinsic to the parties' written agreement would be, Dickinson also attempts to amend its four existing claims and add six new claims. Such exercise would also likewise be futile. The Court should deny it.

#### a.    The proposed amendments to Count One, breach of contract under the CISG, are futile.

Dickinson seeks leave to make certain additions to the existing Count One, its breach of contract claim under the CISG, mainly to state that the Order Confirmation "is not a fully integrated document," to include the CISG rules on parol evidence, and to echo the 12 new pages of factual allegations discussed above. *See generally* PFAC ¶¶ 40-47. These changes are futile because, as discussed, any new factual allegations intended to support the breach of contract claim based on the Freezer's performance will fail because of the adverse jury instruction that requires the jury to find the Freezer could perform up to the parties' agreement. *See id.* ¶¶ 41, 45-53.

Moreover, legal arguments about merger clauses and the CISG rule statement are unnecessary and therefore futile. *See id.* ¶¶ 43-44. Dickinson can make these legal arguments regardless if they are in the complaint, so there is no need to add them. *See* Fed. R. Civ. P. 8(a)(2) (complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief"); *Gilbert v. Bank of Am. Corp.*, No. 1:11-CV-00272-BLW, 2012 WL 4470897, at *3 (D. Idaho Sept. 26, 2012) (legal conclusions in a complaint need not be accepted as true).

#### b.    The proposed addition of Count Two for breach of the CISG's Article 35 for failure to provide confirming goods is futile.

Dickinson next seeks leave to add a new claim that FPS provided non-conforming goods under Article 35 of the CISG. Dkt. 98-1 at 10-12; PFAC ¶¶ 58-73. This claim, however, is also

**OPPOSITION TO DICKINSON FROZEN FOODS, INC.'S MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT** - 9

futile given the non-rebuttable jury presumption. Dkt. 69 at 39. Article 35 of the CISG requires a seller to deliver goods that are of the quantity, quality, and description "required by the contract." Dkt. 98-1 at 10 (quoting CISG Article 35). If the Freezer satisfied the parties' agreement, as the jury must find, then there is no way that Article 35 was breached. Again, this is the fair and just result for Dickinson's willful destruction of key evidence. Because of Dickinson's willful spoliation, FPS has no way of proving that it did in fact provide a conforming good. As such, amending to add this claim would be futile, not to mention patently unfair.

### c. The proposed amendments to Count Three, breach of express warranty, are futile.

Dickinson also seeks leave to make changes to proposed Count Three, breach of express warranty under Idaho law (Original Complaint Count Two). PFAC ¶¶ 75-88. Under Idaho Code § 28-2-313(1), a seller creates express warranties through, of relevance here, "(a) [a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and *becomes part of the basis of the bargain*" or "(b) [a]ny description of the goods *which is made part of the basis of the bargain*." (Emphasis added.) In other words, express warranties, if they are created, become part of the bargain and part of the parties' agreement. *See, e.g.*, *Jensen v. Seigel Mobile Homes Grp.*, 105 Idaho 189, 195, 668 P.2d 65, 71 (1983) ("Those affirmations became part of the basis of the bargain and hence constituted express warranties . . . ."). Because the jury must find that FPS satisfied its end of the bargain, it cannot possibly find that FPS breached an express warranty. And again, this is the natural and fair result given Dickinson's willful destruction of the Freezer and refrigeration infrastructure. Because of Dickinson's spoliation, FPS has no way of proving it did not breach any alleged express warranties.

### d. The proposed addition of Counts Four and Five for breach of implied warranties under Idaho's UCC are futile.

Dickinson next seeks leave to add two new implied warranty claims: breach of the implied

**OPPOSITION TO DICKINSON FROZEN FOODS, INC.'S MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT** - 10

warranty of ordinary purpose/merchantability under Idaho Code § 28-2-314 and breach of the implied warranty of fitness for a particular purpose under Idaho Code § 28-2-315.  *See* Dkt. 98-1 at 12-14; PFAC ¶¶ 89-106 (Count Four); ¶¶ 107-16 (Count Five).  Again, the jury instruction forecloses these claims.  If the jury must presume that the Freezer satisfied the parties' agreement, then it follows that there can be no breach of an implied warranty.  *Salmon Rivers Sportsman Camps, Inc. v. Cessna Aircraft Co.*, 97 Idaho 348, 354-55, 544 P.2d 306, 312-13 (1975) (privity of contract is required for implied warranty actions).  Had Dickinson not destroyed the Freezer, FPS would have been able to offer proof that it did not breach any implied warranty, but it cannot do that now because of Dickinson's willful spoliation.

Moreover, FPS cannot be liable for breach of implied warranties unless Dickinson "rel[ied] on the seller's skill or judgment to select or furnish suitable goods."  Idaho Code § 28-2-315. Dickinson, a subsidiary of the Oregon Potato Company, is a highly sophisticated corporation that freezes vegetables as a regular part of its business and has, for years, owned and operated multiple freezers across several locations. *See* Dickinson Frozen Foods, http://df-foods.com/aboutus.html (last accessed Aug. 26, 2020); Watkins Decl. Ex. B (Castaneda Depo. Tr.) 37:13-40:2; Watkins Decl. Ex. A (Campbell Depo.) Tr. 21:5-22:7; 25:8-26:8.  It engaged in arm's length negotiations and a months-long back-and-forth engineering process to design the Freezer, something it has done many times before.  Watkins Decl. Ex. B (Castaneda Depo. Tr.) 111:20-112:17; Watkins Decl. Ex. A (Campbell Depo. Tr.) 22:21-23:9, 35:1-36:7, 40:3-17, 44:21-45:19, 47:17-48:10, 66:5-15, 87:12-88:3, 136:11-139:14, 206:12-22.  Thus, Dickinson cannot claim that it "relied" on FPS in selecting the Freezer.  To add these claims would be futile.

### e.  *The proposed amendments to Count Six, breach of the implied covenant of good faith and fair dealing, are futile.*

Dickinson also seeks leave to make changes to proposed Count Six, breach of the implied

covenant of good faith and fair dealing under Idaho law (Original Complaint Count Three).  PFAC ¶¶ 117-30.  "The implied covenant of good faith and fair dealing is a covenant implied by law in the parties' contract," and "requires that the parties perform, in good faith, the obligations imposed by their agreement."  *Idaho Power Co. v. Cogeneration, Inc.*, 134 Idaho 738, 750, 9 P.3d 1204, 1216 (2000).  Importantly, Idaho law further provides that "[n]o covenant will be implied which is contrary to the terms of the contract negotiated and executed by the parties."  *Id.*; *see also Clement v. Farmers Ins. Exch.*, 115 Idaho 298, 300, 766 P.2d 768, 770 (1988) (an implied covenant of good faith and fair dealing cannot override an express provision in a contract).  Here, because the jury instruction requires that the jury find the Freezer satisfied the parties' agreement, it is impossible for the jury to find that FPS breached any implied covenant.

This claim is futile for another reason as well: the parol evidence rule.  This count is not brought under the CISG, so Idaho common law controls, and as Dickinson repeatedly makes clear, certain alleged representations—like the 20-22 hour claim, etc.—are extrinsic to the written agreement between the parties.  *See* Dkt. 98-1 at 2-9; PFAC ¶ 119 (noting "additional express and implied terms" outside of the written Order Confirmation).  Under the parol evidence rule, "[i]f a written contract is complete upon its face and unambiguous, no fraud or mistake being alleged, extrinsic evidence of prior or contemporaneous negotiations or conversations is not admissible to contradict, vary, alter, add to, or detract from the terms of the contract."  *Posey v. Ford Motor Credit Co.*, 141 Idaho 477, 480, 111 P.3d 162, 165 (Ct. App. 2005).  Here, the Order Confirmation provides the complete written agreement between the parties—it contains the key price and quantity terms, delivery date, etc., *see* Dkt. 1-1—so no extrinsic evidence can alter that contract.  Thus, the factual allegations in this claim, PFAC ¶¶ 123-27, are inadmissible under the Idaho common law parol evidence rule and adding these factual allegations here are futile.  *See, e.g.*,

**OPPOSITION TO DICKINSON FROZEN FOODS, INC.'S MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT** - 12

*Vickery v. Fisher Governor Co.*, 417 F.2d 466, 470 (9th Cir. 1969) (amending complaint futile where "the basis of appellant's new claim rested on parol evidence which was inadmissible").

### f. The proposed addition of Count Seven for strict product liability and design defect is futile.

Dickinson next seeks leave to add another new claim for strict product liability/design defect under Idaho law.  Dkt. 98-1 at 13-14; PFAC ¶¶ 131-40.  Given the non-rebuttable jury instruction, this claim would fail at trial.  Dickinson is claiming that the product was defective ***in that it did not satisfy FPS's alleged performance representations***.  *See* PFAC ¶ 135 ("FPS's Freezer was inherently defective and/or defectively or negligently designed at the time it left FPS's control because the Freezer would not freeze 8,000 pounds per hour of frozen potato product for 20-22 hours per day . . . .").  Because the jury must find that FPS did in fact comply with its obligation under the parties' agreement, Dickinson will not be able to show strict liability or defective design based on alleged failure to fulfill these alleged performance representations.

And again, that result makes sense:  Because Dickinson destroyed the Freezer, FPS would have no way of showing that the Freezer was not "inherently defective." *Id.*  The Court already addressed this issue when it rejected Dickinson's argument that spoliation claims do not apply in defective design cases.  *See* Dkt. 93 at 42-44.  The Court explained that in this case, because the FPS Freezer was "custom designed by FPS for Dickinson," FPS could not test the design of the product on anything other than the Freezer itself—the very Freezer that Dickinson destroyed. *Id.* at 43.  The Court further rejected Dickinson's "somewhat outrageous[]" argument that FPS could re-build the Freezer to match the original one and test that one instead. *Id.* at 44.

The claim also fails due to Idaho's economic loss doctrine.  Dickinson claims that as a result of the alleged inherent defect and/or negligent or defective design, it "suffered extensive financial damages"—a purely economic loss.  PFAC ¶ 139.  But "[u]nless an exception applies,

**OPPOSITION TO DICKINSON FROZEN FOODS, INC.'S MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT** - 13

the economic loss rule prohibits recovery of purely economic losses in a negligence action because there is no duty to prevent economic loss to another." *Blahd v. Richard B. Smith, Inc.*, 141 Idaho 296, 300, 108 P.3d 996, 1000 (2005); *Myers v. A.O. Smith Harvestore Prods., Inc.*, 114 Idaho 432, 435, 757 P.2d 695, 698 (Ct. App. 1988) (rule also applies in strict liability cases).   Thus, the purchaser of an allegedly defective product who has suffered only economic losses—like Dickinson—may not recover those losses under a negligence or strict liability theory.

Dickinson argues that the economic loss rule does not apply because of the possible "special relationship" exception.   Dkt. 98-1 at 14-15.   But this "special relationship" exception applies only in "an extremely limited group of cases" "where the relationship between the parties is such that it would be equitable to impose such a duty."   *Blahd*, 141 Idaho at 301, 108 P.3d at 1001 (citation omitted).   Dickinson argues that it applies because "FPS held itself out to the public at large and specifically to Dickinson as having expertise in the design and manufacture of industrial freezers."   PFAC ¶ 137; Dkt. 98-1 at 15.   But this extremely limited exception, typically applied to physicians, attorneys, accountants, and the like, cannot apply here where two sophisticated corporations represented by able counsel engaged in arm's-length negotiations to develop and engineer the freezer Dickinson ordered.   *See, e.g.*, *Mountain Bird, Inc. v. Goodrich Corp.*, 369 F. App'x 940, 944 (10th Cir. 2010) (applying Idaho tort law and finding no special relationship exception to the economic loss doctrine because the parties "are sophisticated business entities that engaged in an arms-length transaction"); *Truckstop.Net, L.L.C. v. Sprint Commc'ns Co.*, 537 F. Supp. 2d 1126, 1139 (D. Idaho 2008) (finding no special relationship under Idaho law where both parties are "sophisticated commercial entities represented by counsel").   As such, amending to add this claim would be futile.

### g.   *The proposed amendments to Count Eight, promissory estoppel, are futile.*

Dickinson also seeks leave to make changes to proposed Count Eight, promissory estoppel

**OPPOSITION TO DICKINSON FROZEN FOODS, INC.'S MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT** - 14

(Original Complaint Count Four).  PFAC ¶¶ 141-50.  The main change is the addition of the same new factual allegations about alleged representations extrinsic to the written contract.  *See* PFAC ¶¶ 142-45.  Yet again, this claim is also futile because of the adverse jury instruction.  Because the jury must find that the Freezer performed to the parties' agreement, it would be impossible for the jury to find that "FPS failed to perform on its promises to Dickinson and/or the promises made by FPS to Dickinson proved false, inaccurate, or misleading."  *Id.* ¶ 147.

### h.   The proposed addition of Count Nine for unjust enrichment is futile.

Dickinson next seeks leave to add a new claim for unjust enrichment under Idaho law.  *See* Dkt. 98-1 at 15-16; PFAC ¶¶ 151-55.  Given the adverse jury instruction that FPS complied with the parties' agreement, this claim cannot prevail.  Dickinson's PFAC gives the futility away: "***Given that the Freezer never performed as promised by FPS***, it would be unjust and inequitable for FPS to retain the monies paid by Dickinson to FPS without rendering equivalent value."  PFAC ¶ 154 (emphasis added).  Because of the spoliation jury instruction, the jury must find that the Freezer ***did*** in fact perform as promised by FPS, so amending to add this claim would be futile.

### i.   The proposed addition of Count Ten under the ICPA is futile.

Finally, Dickinson seeks leave to add another new claim for alleged violation of the Idaho Consumer Protection Act ("ICPA"), Idaho Code § 48-603, focusing on Section 603 subsections (5), (7), and (17).  Dkt. 98-1 at 16-16; PFAC ¶¶ 156-65.  Yet again, given the adverse jury instruction that FPS complied with the parties' agreement, this claim cannot prevail since it depends on the allegation that FPS made performance representations that proved false.  *See* Dkt. 98-1 at 17; PFAC ¶¶ 160-63; *see also* Idaho Code § 48-603(5), (7).  Because the jury must find that FPS complied with the parties' agreement, it cannot find that FPS made false performance representations, and also cannot find that FPS acted in a misleading, false, or deceptive manner.

As discussed, Dickinson might amend its complaint based on claims that involve issues

*other than the Freezer's performance* assuming it could satisfy Rule 11 and the concerns over prejudice, bad faith, and undue delay. *See infra* Sections III.B-D. But because Dickinson attempts to amend based entirely on the Freezer's performance, all of Dickinson's proposed amendments are futile and leave to amend can and should be denied on this basis alone.

### B.   FPS would suffer severe prejudice from the inevitable costs and delay that would result if Dickinson is allowed to amend its complaint at this late stage.

Next, FPS would be severely prejudiced if Dickinson were allowed to amend its complaint at this late stage, where the parties have already taken 19 in-person depositions[3] across multiple states and countries, conducted extensive discovery by interrogatory and document production, and produced and reviewed tens of thousands of documents, and the close of discovery is less than two months away. *See* Dkt. 96 at 2. The Ninth Circuit has held that prejudice is the most important factor in deciding whether to deny leave to amend, *see Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir. 1990), and it is prejudicial to allow a party to amend its claim late in the litigation where the amended complaint seeks to advance different legal theories and requires development and proof of different facts, *AmerisourceBergen*, 465 F.3d at 953-54.

After realizing that its existing claims would fail in the wake of the Court's adverse jury instruction, Dickinson seeks to plead 12 pages of new facts and six new alternative claims after all of the discovery in this case has long been substantially completed. Some of Dickinson's new legal theories—including strict liability, implied warranties, unjust enrichment, and the ICPA— have never even been mentioned before in any briefing or deposition. These new claims will all require proof of new and distinct facts, and FPS will need to re-take depositions and re-conduct discovery to adequately defend itself. This is reason enough to deny leave to amend. *See, e.g.,*

---

[3] This is the total number of individuals who have been deposed. For purposes of the 10-deposition limit, a deposition under Rule 30(b)(6) is treated as a single deposition even though more than one person may testify. *See* Dkt. 93 at 17 n.15.

**OPPOSITION TO DICKINSON FROZEN FOODS, INC.'S MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT** - 16

*Chodos v. West Publ'g Co.*, 292 F.3d 992, 1003 (9th Cir. 2002) (upholding district court's denial of leave to amend fraud claim where plaintiff had facts prior to first amendment and amendment was both prejudicial and dilatory); *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990) (upholding denial of leave to amend on the basis of dilatoriness and prejudice where litigant advanced new legal theory well into the litigation); *Waters v. Weyerhaeuser Mortg. Co.*, 582 F.2d 503, 507 (9th Cir. 1978) (denying leave to amend where plaintiffs sought to amend their complaint to alter the parties' understanding of a written contract).

Dickinson contends that amendment will not prejudice FPS because the factual bases for its new claims—that is, the alleged extrinsic representations—"have been hotly contested" throughout this case. *See* Dkt. No. 98-1 at 19-20.  These contentions misapprehend the Ninth Circuit standard for prejudice and provide further evidence of Dickinson's failure to amend in a timely manner.  As discussed above, prejudice can arise where a party seeks to introduce new claims and legal theories late in the case and the introduction of those claims will impose the burden of additional discovery and delay the resolution of the case.  *See Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002) ("The requirement of additional discovery would have prejudiced [defendant] and delayed the proceedings."); *Solomon v. N. Am. Life & Cas. Ins. Co.*, 151 F.3d 1132, 1139 (9th Cir. 1998) (extending discovery can constitute undue delay).

Even though the alleged representations have come up before, the new legal theories have not, and FPS would undoubtedly require additional discovery to defend itself against them.  Thus, prejudice to FPS would be unavoidable.  The Court should deny amendment for that reason.

### C. Dickinson's amendments are proposed in bad faith in an attempt to circumvent the Court's adverse jury instruction.

The Court should also deny leave to amend due to Dickinson's bad faith not just in spoiling key evidence, but also in bringing this motion for leave to amend.  Courts deny leave to amend a

**OPPOSITION TO DICKINSON FROZEN FOODS, INC.'S MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT** - 17

complaint where it is proposed in bad faith. *AmerisourceBergen*, 465 F.3d at 951.  A motion to amend is filed in bad faith if the moving party seeks to prolong litigation by adding new but baseless legal theories, *see Griggs v. Pace Am. Grp., Inc.*, 170 F.3d 877, 881 (9th Cir. 1999), or has a "wrongful motive," *DCD Programs*, 833 F.2d at 187.  One such wrongful motive is amendment for the purpose of circumventing the express effect of a previous court order or instruction.  *See, e.g.*, *Ahdom v. Lopez*, No. 1:09-CV-01874-AWI, 2012 WL 117994, at *2 (E.D. Cal. Jan. 13, 2012) (denying a motion for leave to amend where the amendment was sought "in an attempt to avoid the findings set forth in the [court's] findings and recommendations"); *see also Earlie v. Jacobs*, 745 F.2d 342 (5th Cir. 1984) (denying leave where implicit purpose of amendment was to circumvent a prior district court order denying a jury trial).

Here, Dickinson seeks to amend its complaint in bad faith to circumvent this Court's spoliation order (and the Court's reaffirmation of that spoliation order on reconsideration), which imposes an adverse jury instruction requiring the jury to find that the Freezer performed as agreed. The PFAC is littered with new factual allegations (that have always been known) and claims that all relate to the performance of the Freezer and its alleged failure to live up to FPS's promises.  It is clear the PFAC is nothing more than Dickinson's Trojan horse attempt to revive its claims and resurrect issues this Court purposefully foreclosed when it entered the adverse jury instruction.

Moreover, the implicit purpose of the PFAC is to further delay the swift and speedy resolution of this case.  Dickinson now seeks to prolong the litigation by adding new facts and issues to the mix in an 11th-hour attempt to save its case by amending its way around the Court's mandated jury presumption.  To the extent the Court permits any of Dickinson's new claims in the PFAC to move forward, FPS will be required to bear the cost and burden of further discovery that will be necessary to prepare an adequate defense, with the likely result of pushing out the existing

**OPPOSITION TO DICKINSON FROZEN FOODS, INC.'S MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT** - 18

discovery deadline of October 23, 2020 and related pretrial deadlines.

      **D.**      **Dickinson failed to promptly amend its complaint despite its early awareness of the facts giving rise to its claims.**

Dickinson's failure to promptly amend its complaint also supports denial of its motion for leave to amend. The Ninth Circuit has explained that

> [i]n assessing timeliness, [courts] do not merely ask whether a motion was filed within the period of time allotted by the district court in a Rule 16 scheduling order. Rather, in evaluating undue delay, [courts] also inquire "whether the moving party knew or should have known the facts and theories raised by the amendment in the original pleading."

*AmerisourceBergen*, 465 F.3d at 953 (quoting *Jackson*, 902 F.2d at 1388); *see also Royal Ins. Co. of Am. v. Sw. Marine*, 194 F.3d 1009, 1016-17 (9th Cir. 1999) (denying leave to amend where claim plaintiff sought to add was based on the same facts known to him throughout the litigation). Requests for leave to amend that provide no justification for the delay are disfavored. *See Royal Ins. Co. of Am.*, 194 F.3d at 1016-17 (leave to amend denied where plaintiff offered no justification for delay); *Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980, 986 (9th Cir. 1999) (undue delay is a pertinent factor in denying leave to amend "when no reason is given for the delay"). Undue delay operates in combination with the other factors described above to establish cause for denial of leave to amend. *See DCD Programs*, 833 F.2d at 187.

While there is no specific timeline that controls when a party must amend its complaint after becoming aware of the facts supporting its claims, undue delay exists where a case has advanced too far on the merits. *See Sturm v. CB Transp., Inc.*, 943 F. Supp. 2d 1102, 1121 (D. Idaho 2013). For example courts, have found that an eight-month delay between discovering relevant facts and amending the complaint can be too long, *Texaco, Inc. v. Ponsoldt*, 939 F.2d 794, 799 (9th Cir. 1991), and that amendments filed two or three years after the filing of an initial complaint can constitute undue delay, *see, e.g.*, *First Fed. Sav. Bank of Wash. v. United States*,

996 F.2d 1224 (table), 1993 WL 220257 (9th Cir. 1993) (unpublished) (holding that a three-year

delay in bringing the claim was undue); *D.A v. Meridian Joint Sch. Dist. No.* 2, 289 F.R.D. 614,

635 (D. Idaho 2013) (denying leave to amend for undue delay where case was filed almost two

years ago and plaintiff sought to raise a new theory in its proposed amended complaint).

For years now Dickinson has known everything it needed to know in order to add the

additional factual allegations and six new claims.  Indeed, it admits as much:

> [T]he factual bases for the amended and additional claims have all been
> hotly contested and litigated throughout the course of this litigation. For
> example, as early as November 1, 2018, Dickinson disclosed the expert
> report of its freezer and refrigeration engineering expert Charles Taylor.
> (Bolinger Decl. at Exh. 8.) In that report, Mr. Taylor expressly noted
> that the Freezer failed to achieve certain agreed-upon performance
> terms, including that, "The Freezer was to be continuously operable 20-
> 22 hours per day utilizing sequential defrost," and that the Freezer
> "[c]ould not run more than 6 hours without having to stop and manually
> defrost." (*Id.* at p. 2.) Dickinson also raised that it believed FPS
> breached the parties' contract by providing a Freezer incapable of
> operating continuously for 20-22 hours per day in its original opposition
> to FPS's Motion for Sanctions . . . .

Dkt. 98-1 at 18-20.  Yet Dickinson's motion to amend comes now—despite having known these

alleged facts for years—and only in the face of an adverse jury instruction mandated by the Court

and a subsequent denial of its request to reconsider the same.  Dickinson provides no explanation

for its delay in seeking leave to amend its complaint, which is especially startling given its repeated

and strong admissions that the new factual allegations have long been known by Dickinson.

While delay alone does not establish sufficient cause to amend, here, the undue delay

between Dickinson's discovery of relevant facts and the filing of its motion to amend its complaint

is prejudicial to FPS and indicative of bad faith.

## IV.    CONCLUSION

For the reasons set forth above, this Court should deny in full Dickinson's motion for leave

to file its First Amended Complaint.

**OPPOSITION TO DICKINSON FROZEN FOODS, INC.'S MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT** - 20

DATED:  August 26, 2020.

STOEL RIVES LLP


/s/ Elijah M. Watkins
Elijah M. Watkins
Jennifer S. Palmer

Attorneys for Defendant/Counterclaimant FPS
  Food Process Solutions Corporation

## CERTIFICATE OF SERVICE

I hereby certify that on August 26, 2020, I served a copy of the foregoing **OPPOSITION TO DICKINSON FROZEN FOODS, INC.'S MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT** on CM/ECF Registered Participants as reflected on the Notice of Electronic Filing as follows:

John F. Kurtz, Jr., ISB No. 2396                 Via:  CM/ECF Notification
Dane Bolinger, ISB No. 9104
HAWLEY TROXELL ENNIS & HAWLEY
LLP
877 Main Street, Suite 1000
P.O. Box 83701-1617
Boise, ID 83701-1617
Telephone:  208-344-6000
Facsimile:  208-954-5936
Email:  jkurtz@hawleytroxell.com
          dbolinger@hawleytroxell.com


/s/ Elijah M. Watkins
Elijah M. Watkins
Jennifer S. Palmer