UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DICKINSON FROZEN FOODS, INC., | Case No. 1:17-cv-00519-DCN |
| Plaintiff, | **MEMORANDUM DECISION AND ORDER** |
| vs. | |
| FPS FOOD PROCESS SOLUTIONS CORPORATION, | |
| Defendant. | |

## I. INTRODUCTION

Pending before the Court are Defendant FPS Food Process Solutions Corporation's ("FPS") Motion for Attorney Fees and Costs (Dkt. 97); Plaintiff Dickinson Frozen Foods, Inc.'s ("Dickinson") Motion to Take Trial Preservation Depositions (Dkt. 100); and FPS's Motion to Strike (Dkt. 108).

Having reviewed the record and briefs, the Court finds the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding further delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, the Court will rule on the motions without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B). Upon review, and for the reasons set forth below, the Court GRANTS in PART and DENIES in PART FPS's Motion for Attorney Fees and Costs, GRANTS Dickinson's Motion to Take Trial Preservation Depositions, and DENIES FPS's Motion to Strike.

## II. BACKGROUND

The background of this case is well known to the parties and the Court, has been set forth in previous orders, and is incorporated by reference. Dkts. 69, 93. The pending motions relate to a discovery dispute that arose when Dickinson scheduled various depositions in preparation for seeking reconsideration of the Court's order granting sanctions for Dickinson's spoliation of the industrial freezer that is the subject of this suit ("Sanctions Order"). Dkt. 69.

Prior to the Sanctions Order, Dickinson took the depositions of six fact witnesses, including depositions of various employees or executives of FPS, as well as of FPS's independent consultant. After the Sanctions Order, the parties scheduled an additional five depositions: one of FPS's expert witness, and Federal Rule of Civil Procedure 30(b)(6) depositions of Kemper Northwest, Inc, Nestle USA, GEA Food Solutions North America, and Colmac Coil Manufacturing, Inc.[1]

On July 24, 2019, Dickinson served FPS with Dickinson's Notice of a Rule 30(b)(6) Deposition of Colmac Coil Manufacturing, Inc. ("Colmac Coil"), scheduling the deposition to take place at 9:00 a.m. on August 12, 2019, in Spokane, Washington.[2] Dickinson's Notice included a "Rider" with a detailed list of topics upon which Dickinson intended to inquire at the Colmac Coil deposition, and also identified the potential

---

[1] A deposition under Rule 30(b)(6) is, for purposes of Federal Rule of Civil Procedure 30's limit of ten depositions per side (absent stipulation or leave of the court) treated as a single deposition even though more than one person may be designated to testify. Fed. R. Civ. P. 30(a)(2)(A) Advisory Committee Notes to 1993 Amendment.

[2] The parties and Colmac Coil mutually agreed to this schedule and location before Dickinson sent out its Notice.

involvement of several key Colmac Coil employees, including (but not limited to) Bruce Nelson, Trevor Pope, and Joe Fazzari. After it sent out the Notice, Dickinson had several phone calls with Colmac Coil regarding the upcoming deposition. Colmac Coil advised Dickinson that it intended to produce only Fazzari as Colmac Coil's Rule 30(b)(6) designee. Dickinson was concerned this could be problematic since a review of the record indicated Fazzari might lack personal knowledge of certain key events and/or documents. Dickinson and Colmac Coil (without the involvement of FPS) decided to vacate the Colmac Coil Rule 30(b)(6) deposition and instead notice up individual depositions of Nelson, Pope, and Fazzari, to occur on the same agreed-upon date, time, and place.

On August 5, 2019, Dickinson vacated the Colmac Coil 30(b)(6) deposition and sent FPS deposition notices for the individual depositions of Nelson, Pope, and Fazzari. On August 6, 2019, FPS objected to the individual depositions. Over the next few days, the parties communicated via email and phone regarding FPS's objection. FPS's counsel contends he tried to "resolve the issue prior to incurring the potentially needless expense of flying to Spokane, Washington for the Nelson, Pope, and Fazzari depositions, given that these depositions exceeded the 10 depositions allowed under Rule 30 and violated the 14-day notice requirement in Rule 32." Dkt. 97-1, at 3–4.[3] Dickinson counters that "*nowhere* [in the attorneys' communications regarding the issue] did FPS's counsel ever argue or assert any objection regarding a lack of sufficient or timely notice as to the depositions of Nelson, Pope, or Fazzari." Dkt. 99, at 5 (emphasis in original).

---

[3] Page citations are to the ECF-generated page number.

On August 9, 2019, when it became clear the attorneys had reached a stalemate, FPS's counsel contacted the Court's chambers to explain the issue and request authorization to file a motion for protective order. Because the Nelson, Pope, and Fazzari depositions were scheduled to take place the next business day, there was not enough time to follow the Court's discovery dispute process.[4] The Court's Law Clerk authorized motion practice.

FPS filed its Third Motion for Protective Order at 5:29 p.m. on Friday, August 9, 2019. Dkt. 73. Dickinson filed a Motion for Leave to Take Additional Depositions later the same evening. Dkt. 74. The depositions of Nelson, Pope, and Fazzari started at 9:00 a.m. on Monday, August 12, 2019, before the Court could address the pending motions. The parties subsequently completed briefing on the Third Motion for Protective Order and Motion to for leave to Take Additional Depositions. Dickinson also submitted its Motion for Reconsideration (Dkt. 81), which necessitated an additional round of briefs regarding the appropriate standard of review. Dkt. 88.

On June 1, 2020, the Court denied Dickinson's Motion for Reconsideration, granted FPS's Third Motion for Protective Order in part, and denied Dickinson's Motion for Leave to Take Additional Depositions as moot. Dkt. 93. The Court granted FPS's Third Motion for Protective Order to the extent it sought exclusion of the Nelson, Pope, and Fazzari depositions pursuant to Federal Rule of Civil Procedure 32, which mandates a deposition "must not be used against a party who, having received less than 14 days' notice of the

---

[4] *See* https://id.uscourts.gov/district/judges/nye/Discovery_Disputes.cfm.

deposition, promptly moves for a protective order under Rule 26(c)(1)(B) requesting that it not be taken or be taken at a different time or place—and the motion was still pending when the deposition was taken." Fed. R. Civ. P. 32(a)(5)(A).

Because, after exclusion of the Nelson, Pope, and Fazzari depositions, Dickinson had only taken ten depositions, the Court denied both Dickinson's Motion for Leave to Take Additional Depositions, and FPS's Third Motion for Protective Order (to the extent it sought enforcement of the ten-deposition limit of Federal Rule of Civil Procedure 30(a)(2)) as moot. Dkt. 93, at 18. However, since it partially granted FPS's Third Motion for Protective Order, the Court held it would award FPS "the reasonable fees incurred in making the motion, including attorney's fees" pursuant to Federal Rule of Civil Procedure 37(a)(5). *Id.* at 19. The Court directed FPS to file a short brief documenting the reasonable expenses it incurred in making its Third Motion for Protective Order. *Id*.

Rather than incurring the time and expense associated with further briefing, the parties attempted to informally resolve the fee issue for several weeks. During such discussions, Dickinson's counsel notified FPS's counsel of Dickinson's intent to file a motion for leave to take trial preservation depositions of Nelson, Pope, and Fazzari. Because the Court struck the aforementioned depositions, and because such witnesses live outside of the Court's subpoena power and will not agree to appear voluntarily at trial, Dickinson suggested it would need to obtain the Court's leave to take trial preservation testimony from Nelson, Pope, and Fazzari, unless FPS would agree to stipulate to use their deposition transcripts for trial. As a compromise, Dickinson offered to stipulate to allow FPS to re-open such depositions. Dickinson also stated it would bear some responsibility

for a reasonable portion "of those costs and fees for FPS to complete their cross-examination and additional questioning (to remedy any purported prejudice from FPS allegedly not having sufficient time to prepare for the depositions)." Dkt. 99, at 7. FPS rejected Dickinson's proposal. The parties were also unable to agree on the fee issue.

On July 29, 2020, FPS filed its Motion for Attorney Fees and Costs. Dickinson later filed its Motion to Take Trial Preservation Depositions.[5] After the briefing on FPS's Motion for Award of Attorney Fees and Costs and Dickinson's Motion to Take Trial Preservation Depositions was complete, FPS filed a Motion to Strike certain portions of Dickinson's Reply brief in support of its Motion to Take Trial Preservation Depositions. All three motions are now ripe for the Court's review. [6]

### III. ANALYSIS

Since there are three pending motions, with different applicable legal standards, the Court sets forth the appropriate legal standard(s) when addressing each motion.

**A. Motion for Attorney Fees and Costs (Dkt. 97)**

*1. Legal Standard*

a. <u>Fee awards under Rule 37</u>

With respect to the payment of expenses incurred in obtaining a discovery order, Federal Rule of Civil Procedure 37(a) provides: "If the motion is granted . . . the court

---

[5] Dickinson also filed a Motion for Leave to File First Amended Complaint on August 5, 2020. Dkt. 98. The latter motion will be addressed in a separate decision.

[6] On September 24, 2020, the Court entered an order holding all remaining case deadlines, including the deadline for completion of fact discovery, in abeyance until the Court could rule on the pending motions. Dkt. 107. Such deadlines will remain stayed after today's decision until the three other pending motions (Dkts. 98, 112, and 114) are resolved.

must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion . . . to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A). However, Rule 37 also states the court must not order expenses and fees if: "(i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust." *Id*. at (a)(5)(A)(i)–(iii). "The burden of establishing this substantial justification or special circumstances rests on the party being sanctioned." *Infanzon v. Allstate Ins. Co*., 335 F.R.D. 305, 311 (C.D. Cal. 2020) (citing *Hyde & Drath v. Baker*, 24 F.3d 1162, 1171 (9th Cir. 1994)).

If a discovery motion is granted in part and denied in part, the court may also apportion the reasonable expenses for the motion. Fed. R. Civ. P. 37(a)(5)(C). The exceptions to Rule 37(a)(5)(A) are applicable to a court's determination of whether attorney fees should be apportioned under Rule 37(a)(5)(C). *Aevoe Corp. v. AE Tech Co*., *Ltd*., No. 2:12-cv-00053-GMN-NJK, 2013 WL 5324787, at *1 (D. Nev. Sept. 20, 2013). The primary difference between Rule 37(a)(5)(A) and (a)(5)(C) is that an award is discretionary under Rule 37(a)(5)(C), while, absent one of the Rule 37(a)(5)(A)(i)–(iii) exceptions, a fee award is mandatory under Rule 37(a)(5)(A). *W. Mortg. & Realty Co. v. KeyBank Nat'l Ass'n*, No. 1:13-cv-00216-EJL-REB, 2016 WL 11643651, at *1 (D. Idaho Jan. 4, 2016).

### b.  Calculation of Attorney's Fees

Courts use the "lodestar" method to calculate the amount of reasonable fees awarded

under Rule 37. *See, e.g. Marrocco v. Hills*, 291 F.R.D. 586, 587 (D. Nev. 2013); *Raygoza v. City of Fresno*, 297 F.R.D. 603, 608 (E.D. Cal. 2014) ("This Court has applied the 'lodestar' method to the award of attorney fees under Rule 37") (citations omitted). The lodestar amount is "calculated by multiplying the number of hours *reasonably* expended on the litigation by a *reasonable* hourly rate."[7] *Vogel v. Harbor Plaza Ctr., LLC*, 893 F.3d 1152, 1160 (9th Cir. 2018) (emphasis in original) (quoting *Costa v. Comm'r of Soc. Sec. Admin.*, 690 F.3d 1132, 1135 (9th Cir. 2012)).

"Generally, when determining a reasonable hourly rate, the relevant community is the forum in which the district court sits." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008) (citing *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997)). In addition, the court must consider the "rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Barjon*, 132 F.3d at 502 (quoting *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210–11 (9th Cir. 1986)).

A court may exclude from the fee calculation hours that were not "reasonably expended," such as hours which are "excessive, redundant, or otherwise unnecessary[.]" *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). The "fee applicant bears the burden of documenting the appropriate hours expended in the litigation and must submit evidence in support of those hours worked." *Gates v. Deukmejian*, 987 F.2d 1392, 1397 (9th Cir. 1992) (citing *Hensley* 461 U.S. at 437). "The party opposing the fee application has a burden of

---

[7] A court may adjust the lodestar figure based on a number of additional factors not subsumed in the initial lodestar calculation. *Kerr v. Screen Extras Guild, Inc*., 526 F.2d 67, 70 (9th Cir. 1975). As neither party argues for an adjustment, the Court will not address such factors here.

rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party in its submitted affidavits." *Gates*, 987 F.2d at 1397–98 (citations omitted).

"The calculation of the amount of a 'reasonable attorney's fee' is not a precise science." *Green v. Baca*, 225 F.R.D. 612, 614 (C.D. Cal. 2005). Still, there is a "strong presumption" that the lodestar figure "represents a reasonable" fee. *Jordan v. Multnomah Cty.*, 815 F.2d 1258, 1262 (9th Cir. 1987).

### 2. Discussion

FPS seeks an award of $36,181.50 in attorneys' fees and $2,152.18 in costs. Dkt. 97-1, at 16. Before turning to the reasonableness of FPS's fee request, the Court must first address Dickinson's contention that the Court should decline to award FPS *any* fees and costs.

### a. Rule 37(a)(5)(A)(i)–(iii)

Dickinson argues the Court failed to consider the Rule 37(a)(5)(A)(i)–(iii) factors when finding FPS is entitled to fees. Dickinson contends:

> [T]he Court appears erroneously to have overlooked the mandatory exception expressly stated in Rule 37(a)(5)(A), whereby a reviewing court must *not* award a party its fees and costs if: 1) the party filed its motion before attempting in good faith to resolve the discovery dispute without court action; 2) the opposing party's response to the moving party's position was substantially justified; or 3) other circumstances make the award of expenses unjust.

Dkt. 99, at 8–9 (emphasis in original). Dickinson suggests the Court should deny FPS an

MEMORANDUM DECISION AND ORDER – 9

award of fees and costs under any of these three criteria. The Court disagrees.[8]

Dickinson first argues FPS must not be awarded fees and costs under Rule 37(a)(5)(A)(i) because FPS never mentioned its objection regarding "a purported lack of 14-days' notice until it raised the issue for the first time in its actual motion." Dkt. 99, at 9.

The text of Rule 37 requires only that the movant "attempt[]" to confer in good faith without court action. Fed. R. Civ. P. 37(5)(A)(i); *see also* Fed. R. Civ. P. 37(a)(1) (requiring that the movant have "in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action."). Although Dickinson acknowledges the parties had "repeated exchanges" regarding FPS's objections to the Nelson, Pope, and Fazzari depositions, Dickinson maintains such exchanges involved *only* FPS's objection to Dickinson's attempt to take more than ten depositions, and that FPS never mentioned its objection to Dickinson's failure to provide timely notice*. Dkt. 99, at 5. Dickinson also suggests FPS's counsel never asked Dickinson to postpone or reschedule the Nelson, Pope, and Fazzari depositions and "instead solely demand[ed] that Dickinson stipulate that it could not use the deposition transcripts of the Colmac employees (and others) at trial for purportedly failing to seek leave to exceed the presumptive ten-deposition limit." *Id*. at 6.

However, in its Third Motion for a Protective Order, FPS argued the Nelson, Pope,

---

[8] Incidentally, although FPS requested fees pursuant to Rule 37(a)(5) in its Third Motion for Protective Order (Dkt. 73, at 8–9) Dickinson did not address FPS's fee request in its Response to FPS's Motion. *See generally* Dkt. 79. The Court did not "erroneously overlook" factors Dickinson did not raise when the Court decided FPS was entitled to fees. Rather, the Court did not find the Rule 37(a)(5)(A)(i)–(iii) factors applicable when it granted FPS's Motion for a Protective Order and request for fees, and it does not find them applicable now.

and Fazzari depositions were noticed just six days before they were scheduled to occur, that FPS did not have adequate time to prepare for the depositions, and that the late noticed depositions must not be used against FPS pursuant to Rule 32(a)(5)(A). Dkt. 73-1, at 8. FPS specifically stated it would be amenable to the depositions taking place "if properly noticed and not in excess of the 10-deposition limit." *Id*. FPS's counsel also certified that he had attempted to resolve the dispute in good faith and submitted a declaration in support. *Id*. at 9; Dkt. 73-2.

Despite having notice of FPS's Rule 32(a)(5)(A) argument and its objection to the late notice when FPS filed its Third Motion for Protective Order on August 9, 2019, Dickinson did not offer to reschedule the August 12, 2019 depositions in order to provide sufficient notice, and instead filed its Motion for Leave to Take Additional Depositions later the same evening. While the Court understands Dickinson was concerned it could not take the Nelson, Pope, and Fazzari depositions in time if they were rescheduled given the August 30, 2019 deadline for its Motion for Reconsideration, Dickinson could have simply asked the Court for an extension to this deadline. Although Dickinson suggests FPS did not offer to stipulate to an extension, the Court has repeatedly granted extensions in this case and, even if FPS would not so stipulate (which is unclear from the record), the Court would have welcomed a Motion to Extend the deadline. Such motion would have saved the parties and the Court a great deal of time—particularly in the alternative to the Third Motion for Protective Order and Motion for Leave to Take Additional Depositions, which are now essentially being litigated again after the Court first decided them.

Dickinson cites two cases in support of its claim that fees are inappropriate because

the notice issue was not raised before FPS filed its Motion. Dkt. 99, at 10 (citing *Santiago v. Select Portfolio Servicing*, No. 07-cv-262-S-EJL, 2008 WL 130922, at *2 (D. Idaho Jan. 10, 2008) and *Ferrell v. Speer*, No. C17-5276 BHS, 2018 WL 3303144, at *8 (W.D. Wash. July 5, 2018)). Both are inapposite because they involved attorneys' failure to meet and confer on *different* discovery requests. *Santiago*, 2008 WL 120922, at *2 (awarding fees for plaintiff's failure to provide initial disclosures where defense counsel had two conversations with plaintiff's counsel regarding the missing initial disclosures, but denying fees for plaintiff's missing discovery responses where defense counsel never conferred with plaintiff's counsel regarding plaintiff's failure to respond to the discovery requests); *Ferrell*, 2018 WL 3303144, at *8 (denying fees where counsel did not object to certain specific discovery responses at all during the meet and confer process).

Here, both parties contend they made multiple attempts, including at least one phone call, to resolve FPS's opposition to the Pope, Nelson, and Fazzari depositions. Dkt. 99, at 5–6; Dkt. 103, at 2. During such exchanges, FPS argued the depositions were improper and Dickinson maintained they should go forward. *See, e.g.,* Dkt. 73-17. The Court was obviously not privy to the parties' final attempt to resolve the issue over the phone on August 9, 2019, but there is no dispute the parties ultimately determined they could not agree on whether or not the depositions should occur and would both proceed with motion practice. Dkt. 73-2, at ¶ 30; Dkt. 74-2, at ¶ 40; Dkt. 79, 8–9.

Even if FPS did not voice each of its objections when discussing the depositions with Dickinson, it is clear both parties repeatedly attempted to resolve the issue of whether or not the depositions should occur before seeking the Court's intervention. The Court

accordingly finds FPS attempted to confer with Dickinson in good faith in order to resolve its objection to the Nelson, Pope, and Fazzari depositions before filing the Third Motion for Protective Order. *See, e.g., E.E.O.C. v. Global Horizons, Inc*., 287 F.R.D. 644, 648 (E.D. Wash. 2012) (finding the parties sufficiently conferred prior to filing motion to compel once it was clear the parties could not agree on a specific discovery issue); *V5 Technologies v. Switch, Ltd*., 334 F.R.D. 297, 302 (D. Nev. 2019) (holding plaintiff at least "attempted" to confer by discussing specific discovery issue with opposing counsel and noting "litigants should not expect courts to look favorably on attempts to use the prefiling conference requirements as procedural weapons through which to avoid complying with their discovery obligations.").

Dickinson next argues fees must not be awarded pursuant to Rule 37(a)(5)(A)(ii) because its opposition to FPS's notice argument was substantially justified. Dickinson notes a party's opposition to a discovery dispute or motion is substantially justified where it had a reasonable basis in law and fact. Dkt. 99, at 10 (citing *Ulrich v. Schweiker*, 548 F. Supp. 63, 65 (D. Idaho 1982)).

Dickinson suggests its opposition to FPS's objection that it had less than fourteen days' notice had a reasonable basis in law because, while some federal case law holds Rule 32(a)(5)(A)'s notice requirement is mandatory, other federal courts have held the rule still vests courts with discretion to decide whether a deposition taken on short notice should be permitted. In support, Dickinson cites *Mezu v. Morgan State Univ*., No. CV WMN-09-2855, 2014 WL 12734011, at *1 (D. Md. May 13, 2014) and *Landis v. Galarneau*, No. 2:05-CV-74103, 2010 WL 446445, at *2 (E.D. Mich. Jan. 28, 2010).

Although both the *Mezu* and the *Landis* courts stated Rule 32(a)(5)(A) does not remove the discretion of the court to permit depositions on short notice, neither case supports Dickinson's position because both courts had the opportunity to rule on a party's motion for protective order *before* the contested depositions occurred. Crucially, unlike in this case, a motion for a protective order was not pending in either *Mezu* or *Landis* when the late-noticed depositions took place. For instance, in *Mezu*, a motion for protective order was not pending at the time of the contested deposition because the court denied the motion the morning the deposition was scheduled to occur. *Mezu*, 2014 WL 12734011, at *2 (noting the parties were informed by telephone call from chambers the morning of the short-noticed deposition that the motion for protective order was denied and the deposition would go forward); *see also Landis*, 2010 WL 446445, at *2 (denying Motion to Quash the day of the deposition). As both the *Mezu* and *Landis* courts explained, Rule 32(a)(5)(A) "provides that if a deposition is scheduled on short notice and a prompt motion for a protective order is filed requesting that the deposition not be taken or be taken at a different time or place, *and this motion was still pending when the deposition was taken*, then the deposition may not be used against the objecting party." *Landis*, 2010 WL 446445, at *2 (emphasis in original); *Mezu*, 2014 12734011, at *2.

The decisions in *Landis* and *Mezu* illustrate that a court does not lack discretion to allow a short-noticed deposition to move forward *if* a motion for protective is not pending at the time of the deposition. However, where, as here, a motion for protective order is pending at the time of a short-noticed deposition, then "the deposition *must* not be used" against the objecting party. Fed. R. Civ. P. 32(a)(5)(A) (emphasis added).

MEMORANDUM DECISION AND ORDER – 14

Dickinson vacated Colmac Coil's 30(b)(6) deposition, and noticed the depositions of Nelson, Pope, and Fazzari, on August 5, 2019. The depositions were scheduled to start at 9:00 a.m. on Monday, August 12, 2019. Thus, when FPS filed its Third Motion for Protective Order at 5:29 p.m. on Friday, August 9, 2019, it was not substantially justified for Dickinson to respond with its own Motion for Leave to Take Additional Depositions at 9:53 p.m. the same night, and to move forward with the depositions at 9:00 a.m. the next business day. Even if the Court would have exercised its discretion to allow the short-noticed depositions to move forward had it had time to address the Third Motion for Protective Order before the depositions took place, the Court lacked such discretion once the depositions started on August 12, 2019.

Dickinson also contends its opposition to FPS's Third Motion for Protective Order was substantially justified because, in a case cited by this Court when granting the protective order, *King v. O'Reilly Automotive Stores, Inc*., No. C13-1220JLR, 2013 WL 4511476, at *2 (W.D. Wash. Aug. 22. 2013),[9] the court held Rule 32(a)(5)(A) did not apply when the parties informally agreed to schedule a deposition, even though the objecting party lacked at least fourteen-days "formal notice." Dickinson suggests FPS had informal notice of the Nelson, Pope, and Fazzari depositions because Dickinson sent its Rule 30(b)(6) Notice of Colmac Coil's deposition nineteen days before August 12, 2019.

However, the defendant in *King* agreed to the deposition of specific witness, on a

---

[9] In *King*, the court stated, "Rule 32(a)(5) is the only provision of the Federal Rules that affirmatively requires exclusion of a deposition taken on short notice." *Id*. The Court cited *King* for this proposition in granting FPS's Third Motion for Protective Order. Dkt. 93, at 14.

specific date, more than fourteen days prior to the deposition, and was also aware the plaintiff would not send formal notice of the deposition until approximately nine days before the deposition, when plaintiff's counsel returned from vacation. *Id*. at *2. The *King* court explained:

> Under these circumstances, where [defendant's] counsel agreed to the scheduling of a disputed deposition on a particular date and that agreement occurred more than fourteen days prior to the deposition, and where [defendant's] counsel was informed that formal notice of the deposition would be served on less than fourteen days' notice and did not object, the court finds that [defendant] did have more than fourteen days' notice of the deposition—even if formal notice was sent less than fourteen days prior to the deposition. Accordingly, the court cannot conclude that the affirmative prohibition against using the deposition contained in Rule 32(a)(5)(A) applies[.]

*Id*.

By contrast, here FPS did not consent to Nelson, Pope, or Fazzari's depositions, and instead strongly opposed them. Although FPS agreed to Colmac Coil's 30(b)(6) deposition, it never agreed to individual depositions of three of Colmac Coil's employees. While Dickinson suggests notice of Colmac Coil's 30(b)(6) deposition provided informal notice of the individual depositions of Nelson, Pope, and Fazzari, a Rule 30(b)(6) deposition is substantially different from the testimony of an individual. *See, e.g.*, *Louisiana Pac. Corp. v. Money Market Institutional Inv. Dealer*, 285 F.R.D. 481, 487 (N.D. Cal. 2012); *Doe v. Trump*, 329 F.R.D. 262, 273 (W.D. Wash. 2018) (explaining the deposition of an individual and a deposition of the representative of an organization, even if they are the same person, "are two distinct matters and can be utilized as distinct forms of evidence.").

Although FPS consented to, and had more than fourteen days' notice of, Colmac

Coil's 30(b)(6) deposition, it did not have *any* notice of the depositions of Nelson, Pope, and Fazzari as individuals until six days before the depositions were scheduled to occur. As FPS argued in its Reply in support of the Third Motion for Protective Order, the Court cannot accept Dickinson's "argument that, because the names of Fazzari, Pope, and Nelson were mixed in with some of the 42 different Rule 30(b)(6) topics provided to Colmac, FPS should have divined that Dickinson was going to 'swap' the single 30(b)(6) deposition for these three fact witnesses mere days before the depositions were to occur and in violation of the Rules[.]" Dkt. 87, at 5. Under such circumstances, the Court rejects Dickinson's argument that its opposition to FPS's Third Motion for Protective Order was substantially justified because FPS purportedly had informal notice of the Nelson, Pope, and Fazzari depositions.

Dickinson also argues its opposition to FPS's Third Motion for Protective Order had a reasonable basis in fact because "FPS suffered no prejudice from the purportedly late notice, and, in fact, under the circumstances, received *greater* notice of what questions would be asked at the deposition than if Dickinson had noticed the witnesses individually to begin with." Dkt. 99, at 11 (emphasis in original). Dickinson highlights its 30(b)(6) Rider "expressly referenced Nelson, Pope, and Fazzari by name," and suggests FPS thus had an outline of what Dickinson would ask Nelson, Pope, and Fazzari nineteen days before their depositions took place. Dkt. 99, at 11–12.

Although prejudice is not a factor in the Rule 37(a)(5)(A)(i)–(iii) analysis, FPS explained in its Third Motion for Protective Order that due to Dickinson's improper notice, it was unable to adequately prepare for the Nelson, Pope, and Fazzari depositions. Dkt. 73-

1, at 8 ("Because he was attending to other depositions out of state (that Dickinson had previously noticed), counsel for FPS has not had sufficient time to properly prepare for these new fact depositions in just six days' time."). In its Reply brief, FPS also highlighted it did not have time to adequately question Nelson, Pope, and Fazzari, or to participate fully in their depositions, since all three depositions occurred in one day and Dickinson took the majority of the time with its own questions. Dkt. 87, at 4–5. Despite Dickinson's unilateral assessment of FPS's ability to adequately prepare and participate in the Nelson, Pope, and Fazzari depositions, parties are required to comply with the Federal Rules of Civil Procedure and Dickinson's failure to do so was not factually justified.

Finally, Dickinson suggests awarding FPS fees would be unjust under Rule 37(a)(5)(A)(iii) because FPS failed to meet and confer on the notice issue and because Dickinson's position was substantially justified. As explained above, the Court finds FPS did attempt to resolve its objection to the depositions in good faith before seeking the Court's intervention, and Dickinson's opposition to FPS's Third Motion for Protective Order was not legally or factually justified.

Dickinson also contends it would be particularly unjust to award FPS its fees and costs because Dickinson offered to mitigate prejudice to FPS "from allegedly having inadequate time to prepare for the Colmac depositions by offering to stipulate to allow FPS to *re-open* the Colmac Coil depositions and that Dickinson would bear some responsibility for a reasonable portion of those costs and fees for FPS to complete its cross-examination and additional questioning." Dkt. 99, at 12 (emphasis in original). However, Dickinson appears to have first offered to so stipulate on July 2, 2020, almost a year *after* FPS filed

its Third Motion for Protective Order on August 9, 2019, and only *after* the Court had already ruled FPS was entitled to reasonable fees. Dkt. 93, at 19; Dkt. 99-2, Ex. D. Because FPS incurred the fees associated with its Third Motion for Protective Order long before Dickinson made the aforementioned offer, it would be unjust to deny FPS its fees and costs.

In short, none of the Rule 37(a)(5)(A)(i)–(iii) exceptions apply. The Court accordingly turns to Dickinson's argument that the Court should drastically reduce FPS's requested fees and costs.

b. Scope of Available Fees

Dickinson notes sanctions under Rule 37(a)(5) are "limited to *only* those costs 'incurred in bringing the motion.'" Dkt. 99, at 13–14. While the Court agrees with this general proposition, federal courts have interpreted expenses and fees "incurred in making the motion" more expansively than Dickinson suggests. Fed. R. Civ. P. 37(a)(5)(A). For instance, in a case Dickinson cites—*Morgan Hill Concerned Parents Ass'n v. Cal. Dep't of Educ.*, No. 2:11-cv-03471-KJM-AC, 2017 WL 2492850, at *3 (E.D. Cal. June 9, 2017)—the court held plaintiffs were entitled to recover fees "related to bringing their motion to compel." While the *Morgan Hill* court explained plaintiffs were not entitled to recover fees for "everything they have ever done related to discovery in this case,"[10] plaintiffs were permitted to recover for 263.83 attorney hours and 62.66 paralegal hours in "fees related to actually litigating their motion to compel." *Id*. Although the *Morgan Hill*

---

[10] The *Morgan Hill* court held plaintiffs could not recover for discovery time entries dating back several months before their motion to compel was brought, including hours for general discovery tasks and case preparation. Here, FPS does not seek to recover for general discovery or case preparation, and instead requests compensation for expenses incurred as a result of litigating the specific discovery issue of the Nelson, Pope, and Fazzari depositions.

court did not delineate the specific tasks related to "actually litigating the motion to compel," plaintiffs' counsel and paralegal clearly could not have spent nearly 330 hours—approximately two months of working hours—simply briefing a motion to compel.

In *Liew v. Breen*, 640 F.2d 1046, 1051 (9th Cir. 1981), the Ninth Circuit explained a party may recover under Rule 37(a)(5) for "expenses resulting from efforts to secure an order compelling discovery." While some federal courts have held such expenses include only those related to drafting and arguing a discovery motion, *Brown v. City of Glendale*, No. CV-18-01267-PHX-DWL, 2019 WL 3412585, at *4 (D. Ariz. July 29, 2019), others have interpreted "expenses resulting from efforts to secure" a discovery order more broadly. *Liew*, 640 F.2d at 1051. For instance, judges in the District of Idaho have held such expenses include, *inter alia*, fees for time spent trying to resolve a discovery issue prior to bringing a discovery motion, costs associated with attending a disputed deposition, fees for time spent preparing for a contested deposition, and fees responding to the opposing party's corresponding motion on the same issue. *See W. Mortg. & Realty Co.*, 2016 WL 11643651, at *2 (explaining "[t]he Court disagrees with Defendants' characterization that *only* the fees incurred in the actual drafting of a motion to compel are recoverable" and awarding fees "directly related" to the Court's discovery order, including fees for time spent meeting and conferring prior to filing the motion to compel) (emphasis in original); *Hunzeker v. Butler*, No. 4:12-cv-00421-BLW, 2013 WL 3976280, at *3 (D. Idaho Aug. 5, 2013) ("[T]he Court will order [Defendant] and her attorney to pay Plaintiff's costs and fees associated with the motion to compel, including counsel's time spent informally trying to mediate the issue and the cost of the transcript and recorder travel

fees"); *Britton v. Dallas Airmotive Inc.*, No. 07-cv-547-S-EJL-LMB, 2008 WL 11348499, at *3 (D. Idaho Oct. 30, 2008) (awarding fees for time spent preparing for a deposition); *Nelson-Ricks Cheese Co. v. Lakeview Cheese Co.*, No. 4:16-cv-00427-DCN, 2020 WL 1465738, at *4 (D. Idaho Mar. 25, 2020) ("*Nelson-Ricks II*") (awarding fees for expenses incurred in both defending against motion to quash and bringing corresponding motion to compel). The Court accordingly rejects Dickinson's narrow interpretation of the appropriate definition of "expenses incurred in making the motion" under Rule 37(a)(5).

Having considered Dickinson's contention regarding the appropriate scope of FPS's fee award, the Court will assess each category of fees Dickinson argues the Court should exclude.

### i.  *Fees for Portions of FPS's Motion the Court Denied*

Federal Rule of Civil Procedure 37(a)(5)(C) provides the Court may "apportion the reasonable expenses" for a motion that is granted in part and denied in part. Pursuant to Rule 37(a)(5)(C), Dickinson maintains FPS may not recover the portion of FPS's Third Motion for Protective Order that the Court denied. Dickinson suggests:

> In reviewing FPS's Motion and related briefing and materials, a substantial majority of FPS's drafting and arguments focus solely on arguments that the Court denied. Indeed, of the eighteen (18) pages of briefing that FPS submitted, at best for FPS, only five (5) pages of that briefing (or 27%) relates to the insufficient notice argument. Accordingly, the Court can and should assess an appropriate 73% reduction of FPS's time entries for that Motion practice (i.e., award at most 27% of those entries) to reflect those portions of FPS's Motion that this Court denied as moot.

Dkt. 99, at 15. Again, the Court disagrees.

In its Third Motion for Protective Order, FPS argued both that: (1) the Nelson, Pope,

and Fazzari depositions were improperly noticed under Rule 32(a)(5)(A); and (2) the depositions improperly exceeded the ten-deposition limit under Rule 30(a)(2). Because the Court granted FPS relief under Rule 32(a)(5)(A), it denied FPS's Rule 30(a)(2) argument as moot since, without the depositions of Nelson, Pope, and Fazzari, Dickinson had only taken a total of ten depositions. Yet, as FPS highlights, "the Court did not have to reach the second issue *precisely because it ruled in favor of FPS on the first*." Dkt. 103, at 5 (emphasis in original).

Thus, this is not a case where apportionment is appropriate because the Court rejected certain arguments or only awarded FPS a portion of the relief it sought in filing its discovery motion. *See W. Mortg. & Realty Co.*, 2016 WL 11643651, at *1 (awarding 78% of the fees requested where the court ordered defendants to produce 78% of the documents plaintiffs sought in motion to compel). Instead, because it prevailed on its Rule 32(a)(5)(A) argument, FPS achieved 100% of the relief it sought in the Third Motion for Protective Order: preclusion of the August 12, 2019 Nelson, Pope, and Fazzari depositions. That the Court did not need to address every argument FPS presented in its motion does not mean FPS cannot recover fees for the entirety of its briefing on the Third Motion for Protective Order. *See, e.g., Signatours Corp. v. Hartford*, No. C14-1581-RSM, 2016 WL 4533048, at *2 (W.D. Wash. June 14, 2016) (rejecting party's request to reduce fee award based on portion of the motion to compel that was the "relevant or winning argument.").

The Court exercises its discretion under Rule 37(a)(5) and declines to apportion the reasonable expenses FPS incurred in making the Third Motion for Protective Order.

ii.   *Fees Associated with Opposing Dickinson's Motion for Leave to Take Additional Depositions*

Dickinson similarly suggests FPS is not entitled to recover fees associated with opposing Dickinson's Motion for Leave to Take Additional Depositions ("Dickinson's Motion") since the Court denied Dickinson's Motion as moot. Yet, the Court only determined Dickinson's Motion was moot *because* it granted FPS's Third Motion for Protective Order. Since FPS was successful in excluding the Nelson, Pope, and Fazzari depositions, the Court did not need to substantively rule on Dickinson's Motion. Dkt. 93, at 18.

Due to Dickinson's decisions to vacate Colmac Coil's 30(b)(6) deposition and to move forward with the Nelson, Pope, and Fazzari depositions after having notice of FPS's objection, FPS was essentially forced to brief the same issues twice. Further, Dickinson's failure to comply with Federal Rules of Civil Procedure 32(a)(5)(A) and 30(a)(2) necessitated both FPS's Third Motion for Protective Order and its opposition to Dickinson's Motion. Rule 30(a)(2) requires either leave of the Court or a written stipulation of the parties in order to take more than ten depositions. Dickinson had neither prior to noticing (and taking) the depositions of Nelson, Pope, and Fazzari. Dkt. 93, at 16–18. As such, the Court finds FPS is entitled to recover the expenses it incurred in responding to Dickinson's Motion. *See Nelson-Ricks II*, 2020 WL 1465738, at *4 (awarding defendant fees associated with both defending against plaintiff's motion to quash and bringing its own motion to compel, and noting such motions "all could have been avoided had [plaintiff] been willing to adhere to notions of fair play and courtesy in litigation").

MEMORANDUM DECISION AND ORDER – 23

iii.    *Fees for Traveling to and Attending the Nelson, Pope, and Fazzari Depositions*

Dickinson also argues the fees associated with traveling to and attending the Nelson, Pope, and Fazzari depositions should be excluded from FPS's fee award. In support, Dickinson cites *American Hangar, Inc. v. Basic Line, Inc.*, 105 F.R.D. 173, 175 (D. Mass. 1985). Dkt. 99, at 15–16. In *American Hangar*, defense witnesses refused to answer certain questions during a deposition, and plaintiff subsequently filed a motion to compel requiring the witnesses' responses. The court granted the motion and awarded fees, but excluded the costs for attending the deposition from the award, holding "there is no power to include in [a fee award under Rule 37(a)] the costs associated with taking the deposition at which the refusal to answer occurred." *American Hangar*, 105 F.R.D. at 175.

In a more recent District of Massachusetts case, the court held expenses incurred in making a motion for a protective order under Rule 30(a)(2) included both those "incurred by [counsel] in participating in the eleventh and twelfth depositions," as well as those incurred in drafting the motion. *Advanced Sterilization Products, etc. v. Jacobs*, 190 F.R.D. 284, 287 (D. Mass. 2000). The distinction between the holding in *American Hangar* and that in *Advanced Sterilization* makes sense because, in *American Hangar*, the deposition would have occurred, and plaintiff would have incurred expenses for it, regardless of whether the defense witnesses refused to answer certain questions during the deposition. However, in *Advanced Sterilization*, and here, the party who moved for a protective order sought to preclude the contested depositions from occurring at all.

FPS would not have attended the Nelson, Pope, and Fazzari depositions, and would

not have incurred the fees and costs associated with such attendance, if it had been able to obtain the protective order the Court ultimately granted prior to such depositions. The Court accordingly exercises its discretion under Rule 37(a)(5) to include fees related to traveling to and attending the Nelson, Pope, and Fazzari depositions in FPS's fee award. *Hunzeker,* 2013 WL 3976280, at *3; *Britton,* 2008 WL 11348499, at *3 (awarding fees under Rule 37(a)(5)(A) not just for the expenses related to drafting the motion for protective order, but also costs for "arranging the deposition, booking travel, and preparing for the deposition again").

### iv.     Fees for FPS's Attempts to Meet and Confer

Dickinson next contends the Court should decline to award FPS fees incurred for "meet and confer" or "other informal attempts to resolve the discovery dispute." Dkt. 99, at 16–17. Courts are divided on the compensability of time spent trying to meet and confer prior to filing a discovery motion. *Infanzon,* 335 F.R.D. at 314; *DCD Partners, LLC v. Transamerica Life Co.,* No. 2:15-cv-03238-CAS, 2018 WL 6252450, at *3 (C.D. Cal. 2018) (highlighting conflict and citing cases). As Dickinson points out, some federal courts have held such fees are not recoverable because the moving party would have had to incur such expenses regardless of whether that party ultimately filed a discovery motion. Dkt. 99, at 17 (citing *Manning v. Soo Line R.R. Co.,* 16-cv-1011-LTS, 2017 WL 811903, at *2 (N.D. Iowa Mar. 1, 2017)). Other federal courts—including the District of Idaho—have found such fees are compensable costs incurred in obtaining a discovery order. *See, e.g., W. Mortg. & Realty Co.,* 2016 WL 11643651, at *2 ("The expense of a lawyer's time spent informally trying to resolve the matter prior to filing of a motion to compel is recoverable

under Rule 37(a)(5), and such informal attempts to resolve such disputes are strongly encouraged by the rules and the Court"); *Hunzeker*, 2013 WL 3976280, at *3 (awarding "costs and fees associated with the motion to compel, including counsel's time spent informally trying to mediate the issue"); *DCD Partners*, 2018 WL 6252450, at *3 (affirming Magistrate Judge's determination that such costs were allowable because "[m]eeting and conferring (and preparing for it) is no less important and no less the result of discovery misconduct than legal research, drafting a joint stipulation, or satisfying any other prerequisite to filing a motion to compel").

In this case, FPS would not have incurred fees associated with its attorney's attempt to meet and confer if Dickinson had provided appropriate notice and obtained either FPS's stipulation or leave of the Court prior to taking the depositions of Nelson, Pope, and Fazzari. Dickinson did not do so, and also did not postpone the depositions once FPS objected. The Court finds FPS incurred the expenses for its attorney's attempts to meet and confer in obtaining the protective order and will accordingly award FPS expenses for the time spent attempting to resolve its objection to the Nelson, Pope, and Fazzari depositions.

   v.   *Costs of Travel Expenses and Computerized Research*

District Courts within the Ninth Circuit have held "reasonable expenses" under Rule 37(a)(5) can include an award of costs. *Aevoe Corp*., 2013 WL 5324787, at *8 (holding the expenses allowed under Rule 37 "include both attorneys' fees and costs reasonably incurred in bringing the motion to compel."). Dickinson suggests FPS cannot recover the costs of its travel expenses because FPS would have been obligated to attend the Nelson, Pope, and Fazzari depositions regardless of whether further examination of such witnesses

is necessary. Dkt. 99, at 18. However, as mentioned, FPS would not have attended the Nelson, Pope, and Fazzari depositions had it obtained the protective order the Court ultimately granted prior to such depositions.

Dickinson also cites a District of North Carolina case holding "computerized legal research" was not recoverable under the "plain language" of Rule 37(a)(5). *Id.* (citing *Raynor v. G4S Secure Solutions (USA) Inc.*, 327 F. Supp. 3d 925, 950 (W.D.N.C. 2018)). As explained above, courts within this circuit have interpreted expenses incurred in making a motion under Rule 37(a)(5) more broadly than simply drafting the motion, and have also specifically awarded costs for computerized legal research. *Aevoe Corp.*, 2013 WL 5324787, at *8; *see also Sure Safe Indus., Inc. v. C & R Pier Mfg.*, 152 F.R.D. 625, 626 (S.D. Cal. 1993) (finding fees associated with bringing motion to compel "properly included . . . out-of-pocket expenses, including travel, telephone, mailing, copying and computerized legal research expenses"). The Court will thus award FPS the costs it would not have incurred but for Dickinson's discovery misconduct, including the costs of travel and computerized legal research.

### vi.    *Fees for drafting Motion for Award of Attorney's Fees and Costs*

Finally, Dickinson argues FPS cannot recover the expenses associated with drafting its fee petition because federal case law "supports that fees incurred solely *after* the Court issues its ruling on a contested discovery motion are not recoverable." Dkt. 99, at 17 (emphasis in original) (citing *Lorillard Tobacco Co. v. Elston Self Serv. Wholesale Groceries, Inc.*, 259 F.R.D. 323, 329 (N.D. Ill. 2009)).

Federal courts within the Ninth Circuit, including the District of Idaho, have held

the fees incurred in preparing a fee application are recoverable when a party seeks reasonable expenses associated with bringing a successful motion under Rule 37(a)(5). *W. Mortg.& Realty Co.*, 2016 WL 11643651, at *2 (finding attorney fees were compensable where, as here, a party complied "with the request of the Court in filing a separate fees petition"); *Sure Safe*, 152 F.R.D. at 627 (holding attorneys' fees in preparation of fee petition are recoverable under Rule 37(a)); *Matlink, Inc. v. Home Depot U.S.A., Inc*., No. 07-cv-1994-DMS, 2008 WL 8504767, at *6 (S.D. Cal. Oct. 27, 2008) ("Contrary to Plaintiffs' assertion, time spent litigating a fee petition [for successful motion to compel] is compensable"); *TVI, Inc. v. Harmony Enterprises, Inc.*, No. C18-1461-JCC, 2019 WL 5213247, at *1 (W.D. Wash. Oct. 16, 2019) (explaining a party may be awarded reasonable fees in preparing a subsequent fee application once it obtains an order compelling discovery under Rule 37(a)(5)). As the Southern District of California highlighted when awarding expenses associated with preparing a fee petition under Rule 37(a)(5), "compensation for time spent litigating a fee petition 'must be included in calculating a reasonable fee because uncompensated time spent on petitioning for a fee automatically diminishes the value of the fee eventually received.'" *Matlink*, 2008 WL 8504767, at *6 (quoting *Anderson v. Dir., Office of Workers Comp. Programs*, 91 F.3d 1322, 1325 (9th Cir. 1996)).

The Court finds such cases persuasive and exercises its discretion under Rule 37(a)(5) to award FPS the fees associated with bringing its Motion for Attorney Fees and Costs.

### c. Reasonable Hourly Rates and Amount of Hours Reasonably Expended

Dickinson also challenges the rates and number of hours FPS seeks to collect. The

Court agrees that certain rates FPS seeks, as well as hours it expended for which it requests compensation, are not reasonable.

     *i.*     *Reasonable Hourly Rates*

It is undisputed that the relevant community for assessing the reasonable hourly rate is Boise, Idaho, where this Court sits. Dkt. 97-1, at 13; Dkt. 99, at 19. However, the relevant community alone does not establish a reasonable hourly rate. Instead, "'the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.'" *Camacho*, 523 F.3d at 980 (quoting *Blum*, 465 U.S. at 895 n. 11). Conclusory affidavits as to what constitutes a reasonable rate, even if from other attorneys working in the same area of law, are insufficient to establish the prevailing market rate. *See Widrig v. Apfel*, 140 F.3d 1207, 1209–10 (9th Cir. 1998).

Here, FPS requests the following hourly rate for the Stoel Rives, LLP attorneys and paralegal who worked on this matter:

| Name | Title | Experience | Hourly Rate |
|------|-------|-----------|-------------|
| Elijah M. Watkins | Partner | 11 years | $370 |
| Anna E. Courtney | Associate | 6 years | $340 |
| Jennifer S. Palmer | Associate | 5 years | $340 |
| Megan A. Olmstead | Associate | 1 year | $245 |
| Rollo M. Scott | Associate | <1 year | $245 |
| Jacqueline Franolich | Paralegal | 23 years | $220 |

MEMORANDUM DECISION AND ORDER – 29

Although FPS submitted the declaration of Aaron Chandler, Of Counsel for Holland & Hart LLP, to support such rates, Mr. Chandler simply concludes: "It is my opinion that the hourly rates for the aforementioned attorneys and paralegals are (a) similar to the rates charged by commercial litigation attorneys and paralegals with similar reputations, experience, and expertise in Boise, including attorneys at Holland & Hart; and (b) reasonable for this type of case." Dkt. 97-7, at ¶ 10. Mr. Chandler identifies the years of experience and position of each of the aforementioned professionals but does not specify the rates Holland & Hart charges for the same positions and levels of experience. Instead, Mr. Chandler generally notes "Holland & Hart charges between $280 and $600 for litigation services of attorneys in the Boise office, depending on various factors [including] the nature of the litigation and experience of the attorney." *Id.* at ¶ 8. In the absence of any delineation between the amounts charged for specific experience levels or types of litigation, the Court cannot assess how Holland & Hart distinguishes between hourly rates, or where FPS's fees should fall within the wide range of $280 to $600 per hour charged by Holland & Hart.

FPS also submitted the declaration of Elijah Watkins, its lead counsel on this case. Dkt. 97-2. Mr. Watkins provided additional information about himself, including his legal and educational background. Mr. Watkins also detailed the educational backgrounds and legal experience of the other attorneys and paralegal who worked on this matter. While such information provides a more complete picture of FPS's attorneys' and paralegal's skill, experience, and reputation, it lacks any information regarding rates charged by comparable attorneys within the Boise area.

MEMORANDUM DECISION AND ORDER – 30

In its Motion for Attorney Fees and Costs and Reply brief, FPS also compares its requested rates with other hourly rates awarded by the undersigned and other judges in the District of Idaho. Dkt. 97-1, at 13–15; Dkt. 103, at 9–10. While such cases are helpful, they do not shed light on whether FPS's attorneys and paralegal possess experience comparable with the attorneys discussed in such decisions. For instance, FPS cites cases awarding rates between $225 and $290 an hour for associates but does not identify the years of experience associated with such awards. Dkt. 97-1, at 13–14. Nor does FPS explain why it seeks the significantly higher rate of $340 an hour for two of its associates.

FPS also cites *Balla v. Idaho State Board of Corr.*, No. 81-cv-1165-BLW, 2016 WL 6762651, at *12 (D. Idaho Feb. 1, 2016) for the general proposition that, in 2016, Holland & Hart (a firm FPS characterizes as "comparable to Stoel Rives") charged between $195 and $495 an hour for the litigation services of the attorneys in its Boise office. Dkt. 97-1, at 13–14. FPS does not provide further details regarding how such fees were delegated based on experience level or any other criteria.

FPS similarly cites a prior decision where this Court awarded a rate of $435 an hour for an Of Counsel attorney at Holland & Hart, and $225 an hour for an associate. *Id.* (citing *Nelson-Ricks Cheese Company, Inc. v. Lakeview Cheese Co., LLC*, 4:16-cv-00427-DCN, 2018 WL 2248588, at *2 (D. Idaho May 15, 2018) ("*Nelson-Ricks I*"). FPS does not compare the experience of Mr. Watkins with the Holland & Hart attorney awarded "the higher end of the Boise legal market" in *Nelson-Ricks I*, and does not explain why the Court should award a higher 2019 rate for each of its associates than the $225 an hour awarded to a Holland & Hart associate with approximately eight-years of experience in 2018.

*Nelson-Ricks I*, 2018 WL 2248588, at *2. *See* https://hollandandhart.com/boise#people.

While the Court does not expect a detailed comparison between specific attorneys or law firms, FPS's citation to general billing ranges awarded in a few cases (without any identification of the experience associated with the attorneys who billed such rates) is not nearly as helpful as would be a comparison between the experience levels and billing rates of Stoel Rives' attorneys with those of other regional Boise law firms. Evidence that rates as high of $495 were charged by one firm, or that a rate as high as $435 was awarded in one case, does not establish the *prevailing* rates in Boise. *Barjon*, 132 F.3d at 502.

Dickinson argues the rates FPS requests exceed the prevailing market rates for commercial litigation attorneys in Boise, and submitted the declaration of Merlyn W. Clark in support. Dkt. 99-2, Ex. F. Mr. Clark, a senior litigation partner with Hawley Troxell Ennis & Hawley LLP, has fifty-six years of litigation experience, and has also determined and awarded reasonable attorney fees as an approved arbitrator for Idaho state and federal courts. In his declaration, Mr. Clark detailed specific billing rates, associated with specific levels of experience, for various Boise law firms engaged in commercial litigation services. Mr. Clark also reviewed and relied upon the declarations submitted by FPS, as well as on fee awards in seven cases within the District of Idaho, including several of the cases FPS cites, to identify the prevailing market rates.

Mr. Clark concluded the prevailing 2019 attorney fee rates for litigation attorneys in Boise were: $320 to $375 an hour for senior litigation attorneys with more than fifteen years of experience; $195 to $320 an hour for junior litigation attorneys with five to fifteen years of experience; and less than $195 per hour for attorneys with less than five years of

experience. Based on such rates, Mr. Clark determined the following are reasonable 2019

rates for FPS's attorneys and paralegal:

| Name | Title | Experience | Requested Rate | Proposed Rate |
|---|---|---|---|---|
| Elijah M. Watkins | Partner | 11 years | $370 | $300 |
| Anna E. Courtney | Associate | 6 years | $340 | $225 |
| Jennifer S. Palmer | Associate | 5 years | $340 | $220 |
| Megan A. Olmstead | Associate | 1 year | $245 | $190 |
| Rollo M. Scott | Associate | <1 year | $245 | $190 |
| Jacqueline Franolich | Paralegal | 23 years | $220 | $175 |

*Id.*

In its Reply brief, FPS faults Mr. Clark for relying on rates from four law firms that

are "smaller and more local than Stoel Rives and would therefore tend to charge lower

rates." Dkt. 103, at 10. While the Court does believe an upward adjustment to Dickinson's

proposed hourly rates is appropriate because "regional firms typically bill at higher hourly

rates than smaller Boise firms," the Court also does not have sufficient information

regarding the rates charged by FPS's attorneys and paralegal—when compared to similarly

situated attorneys in Boise—to approve the rates FPS seeks. *Sparks v. Allstate Med. Equip.,

Inc*., No. 1:14-cv-00166-EJL-CWD, 2016 WL 5661758, at *3 (D. Idaho Sept. 29, 2016).

Ultimately, FPS has not met its burden of producing satisfactory evidence that the

requested rates are in line with those prevailing in the community for similar services by

lawyers of reasonably comparable skill, experience, and reputation. *Camacho*, 523 F.3d at

980. The Court will accordingly rely on Dickinson's suggested rates, as well as "its own

familiarity with the legal market," to determine the prevailing market rates. *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011).

The Court adjusts the hourly rate for Ms. Olmstead and Mr. Scott from $245 to $200 per hour. This accounts for Stoel Rives' higher billing rate as a large regional firm and is also above hourly rates for attorneys with more experience that this Court has authorized for associates of smaller Boise law firms. *Fuller v. State of Idaho, Dep't of Corr.*, 1:13-cv-00035-DCN, 2019 WL 6332850, at *3 (D. Idaho Nov. 26, 2019), Dkt. 164, at 6 (approving $175 an hour for an associate of small regional firm with three years of experience); *Norton v. Maximus Inc.*, No. 1:14-cv-30-WBS, 2016 WL 6247004, at *2, Dkt. 141-2, at ¶ 20 (awarding $180 hourly rate for associate of small Boise law firm with more than two years of experience).

The Court also adjusts the hourly rate for Ms. Courtney and Ms. Palmer from $340 to $250 per hour. Although well below the $340 an hour FPS requests, awarding $250 per hour for associates with five to six years of experience is significantly more than the rate charged for attorneys with comparable experience at the Boise law firms Mr. Clark cites. Dkt. 99-2, Ex. F. It is also higher than hourly rates this Court has previously awarded for associates with similar experience levels. *See, e.g.*, *Gonzales on behalf of A.G. v. Burley High School*, No. 4:18-cv-00092-DCN, 2020 WL 7047747, at *4 (D. Idaho Nov. 30, 2020), (approving award of $225 per hour for Of Counsel at a small Boise firm with seven years of experience); *Nelson-Ricks I*, 2018 WL 2248588, at *2 (approving $225 hourly rate for Holland & Hart associate with approximately eight years of experience); *Latta v. Otter*, No. 1:13-cv-00482-CWD, 2014 WL 7245631, at *6 (D. Idaho Dec. 19, 2014) (approving

hourly rate of $175 for staff attorney with five years of experience).

The Court adjusts Mr. Watkins' hourly rate from $370 to $330 per hour. In 2020, this Court approved a $315 hourly rate for a partner with twenty-one years of experience, and $300 per hour for a partner with twenty years of experience, in *U.S. ex rel. Madsen v. St. Luke's Health Sys., Ltd.*, 1:15-cv-00210-DCN, 2020 WL 873911, at *2, Dkt. 95-1, at ¶ 5; Dkt. 96-1, at ¶ 9 (D. Idaho Feb. 21, 2020). Although FPS highlights the attorneys awarded such rates were with small Boise firms, such attorneys had also practiced approximately ten years longer than had Mr. Watkins in 2019. The Court finds an adjustment to $330 an hour adequately reflects Stoel Rives' position as a large regional firm and prevailing market rates for partners with eleven years of experience.[11]

Finally, FPS seeks an hourly rate of $220 for Ms. Franolich, a paralegal with twenty-three years of experience. Paralegal fees are recoverable using the lodestar analysis. *Nelson-Ricks I*, 2018 WL 2248588, at *3; *Balla*, 2016 WL 6762651, at *6 ("[A]warding paralegals their standard hourly rate makes a great deal of economic sense" and "encourages cost-effective delivery of litigation services.") (cleaned up)). Dickinson suggests Ms. Franolich's hourly rate should be reduced to $175 based upon the paralegal rates at the four Boise law firms Mr. Clark cites.

The Court finds $190 is the prevailing market rate for paralegals of firms

---

[11] FPS notes this Court also awarded $350 per hour for an attorney at a small Boise firm in *Madsen*, 2020 WL 873911, at *2. Dkt. 103, at 9. Notably, the attorney who was awarded $350 an hour had twenty-eight years of experience. 1:15-CV-00210-DCN, at Dkt. 96-1, at ¶ 8. Similarly, FPS highlights that Mr. Clark, who is with an attorney with a smaller Boise firm than Stoel Rives, charges $375 an hour—a rate higher than that sought for Mr. Watkins. However, Mr. Clark has been practicing commercial litigation in Boise for forty-two years, and has been a litigator for fifty-six years. Dkt. 99-2, Ex. F, at ¶¶ 6, 16.

comparable in size to Stoel Rives and given Ms. Franolich's current experience level. Dkt. 99-2, Ex. F (noting Givens Pursley charges between a $174-185 hourly rate for paralegals); *Balla*, 2016 WL 6762651, at *12 (awarding Ms. Franolich her 2016 hourly rate of $165 and another Stoel Rives' paralegal a $190.50 hourly rate); *Nelson-Ricks I*, 2018 WL 2248588, at *2 (awarding $190 hourly rate for paralegal at Holland & Hart). This amount is also significantly higher than that this Court has awarded for paralegals of smaller Boise firms. *See, e.g., Gonzales*, 2020 WL 7047747, at *7 (awarding $120 hourly rate for paralegal with small Boise firm); *Fuller*, 2019 WL 6332860, at *3 (same).

A "district court has a great deal of discretion in determining the reasonableness" of a requested hourly fee. *Gates*, 987 F.2d at 1398. This discretion "is appropriate in view of the district court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters." *Hensley*, 461 U.S. at 437. The Court finds the following adjusted rates are in line with its former decisions and are the prevailing market rates for attorneys of regional firms in Boise, Idaho:

| Name | Title | Experience | Proposed Rate | Reasonable Rate |
|------|-------|-----------|---------------|-----------------|
| Elijah M. Watkins | Partner | 11 years | $370 | $330 |
| Anna E. Courtney | Associate | 6 years | $340 | $250 |
| Jennifer S. Palmer | Associate | 5 years | $340 | $250 |
| Megan A. Olmstead | Associate | 1 year | $245 | $200 |
| Rollo M. Scott | Associate | <1 year | $245 | $200 |
| Jacqueline Franolich | Paralegal | 23 years | $220 | $190 |

The Court's adjustment to the requested hourly rates results in a $5,522.50 reduction to FPS's fee award.[12]

ii.     *Reasonable Fees*

FPS has the burden of submitting detailed time records to support its claim for fees. *Chalmers*, 796 F.2d at 1210. Although courts have a "strong preference" for contemporaneous time records, reconstructed time records are not per se impermissible and do not preclude an award of fees. *United States v. $12,248 U.S. Currency*, 957 F.2d 1513, 1521 (9th Cir. 1991). Claimed hours "may be reduced by the court where documentation of the hours is inadequate; if the case was overstaffed and hours are duplicated; if the hours expended are deemed excessive or otherwise unnecessary." *Chalmers*, 796 F.2d at 1210. "But the Court's discretion to reduce claimed hours is not unbounded, nor does it provide an opportunity for second-guessing when counsel exercises sound billing judgment." *Latta*, 2014 WL 7245631, at *6.

In addition to its objection to the various categories of work FPS seeks to recover (which the Court has rejected for the reasons explained above) Dickinson also suggests almost all of FPS's time entries are unreasonable because they are either excessive, vague, inaccurate, or duplicative. Apart from contending its time entries "were not excessive or duplicative in counsel's professional judgment, but rather necessary to address Dickinson's

---

[12] Mr. Watkins billed a total of 59.8 hours; (59.8 x 370) - (59.8 x 330) = $2,392 less in fees awarded for Mr. Watkins' time. Ms. Courtney billed a total of 3.4 hours; (3.4 x 340) - (3.4 x 250) = $306 less in fees awarded for Ms. Courtney's time. Ms. Palmer billed a total of 18.6 hours; (18.6 x 340) - (18.6 x 250) = $1,674 less in fees awarded for Ms. Palmer's time. Ms. Olmstead billed a total of 12.9 hours; (12.9 x 245) - (12.9 x 200) = $580.5 less in fees awarded for Ms. Olmstead's time. Mr. Rollo billed a total of 9 hours; (9 x 245) - (9 x 200) = $405 less in fees awarded for Mr. Rollo's time. Ms. Franolich billed a total of 5.5 hours; (5.5 x 220) - (5.5 x 190) = $165 less in fees awarded for Ms. Franolich's time.

multiple discovery abuses and refusals to work with counsel in good faith to resolve them," FPS does not respond to Dickinson's specific objections to various time entries. Dkt. 103, at 8.

The Court has reviewed each of FPS's time entries and finds they are generally reasonable. However, there are some entries which appear to be duplicative or inaccurate. For instance, on August 9, 2019, Ms. Olmstead billed .5 hours for a conference with opposing counsel Dickinson maintains (and FPS does not rebut) Ms. Olmstead did not attend. FPS also billed an hour for a conference with the Court's chambers on August 9, 2019. This entry appears to be in error, as the conference lasted ten minutes or less, and was likely meant to be billed at .1 hours.

Other entries appear excessive. For example, FPS spent a total of 40.3 hours on its fee petition. A great deal of this time was incurred for legal research (by three different attorneys), review of various case documents and billing records, communications among FPS's legal team, and preparation of declarations and exhibits in support of the fee petition. Dkt. 97-5, Ex. C. Some of this time was excessive because "[t]he applicable law is well-settled, and the most important supporting documents—billing records and statements of counsel's experience—should have been readily available." *Latta*, 2014 WL 7245631, at *9. Further, some of the work was administrative or, at a minimum, could have been handled by attorneys with a lower billing rate than Mr. Watkins.[13] Further, time for other

[13] For example, Mr. Watkins spent over six hours reviewing, analyzing, revising, and gathering invoices and/or other "fee issue" documents and corresponding with accounting and the legal team regarding the same. Dkt. 97-5, Ex. C. While the Court accepts a portion of this time was necessary so Mr. Watkins could exercise his billing judgment, some of this work could have been handled by a paralegal, and some of it also appears to have been duplicative of additional time Ms. Palmer spent preparing exhibits to submit with the fee petition.

MEMORANDUM DECISION AND ORDER – 38

entries—such as the nearly seven hours FPS billed for travel time from Spokane to Boise (a one hour flight)—also appear excessive.

Rather than undertaking an hour-by-hour assessment of each of the entries Dickinson identifies as excessive, vague, inaccurate, or duplicative, the Court will exercise its discretion and reduce FPS's total fee award by five percent. *Gates*, 987 F.2d at 1399. The Court imposes this "haircut" to account for the excessive, vague, inaccurate and/or duplicative entries Dickinson has identified and FPS has not addressed. *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008) ("[T]he district court can impose a small reduction, no greater than 10 percent—a 'haircut'—based on its exercise of discretion and without more specific explanation."). A five percent reduction to FPS's fee award (after taking into account the $5,522.50 reduction to reflect the prevailing market rates in Boise) results in an additional $1,532.95 reduction in fees. In its attempt to fairly compensate FPS while also reducing Dickinson's liability for unreasonable fees, the Court will neither address Dickinson's additional objections to FPS's time entries, nor entertain any further requests by FPS for fees incurred in litigating its fee motion. *Gates*, 987 F.2d at 1400 (finding a district court is not required to expressly rule on each of defendant's specific objections to plaintiff's fee request).

d. Conclusion

"The district court has a great deal of discretion in determining the reasonableness of the fee and, as a general rule, [an appellate court will] defer to its determination, including its decision regarding the reasonableness of the hours claimed by the prevailing party." *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 453 (9th Cir. 2010) (quoting

*Gates*, 987 F.2d at 1398). After considering the parties' briefing, assessing FPS's time entries, and determining the prevailing market rate, the Court awards FPS $29,126.05 in fees and $2,152.18 in costs.

### B. Dickinson's Motion to Take Trial Preservation Depositions (Dkt. 100)

Dickinson seeks leave to take the trial preservation depositions of Nelson, Pope, and Fazzari. Such witnesses live outside of the Court's subpoena power, do not regularly transact business within this Court's 100-mile subpoena power, and will not agree to testify at trial voluntarily or to waive objections to a trial subpoena.

### 1. Legal Standard

Federal Rule of Civil Procedure 30 provides a party must obtain leave of the court to take a deposition if the parties have not stipulated to the deposition where the "deposition would result in more than 10 depositions being taken under this rule or Rule 31 by the plaintiffs, or by the defendants, or by the third-party defendant," or if "the deposition has already been taken in the case." Fed. R. Civ. P. 30(a)(2)(A)(i) and (ii).

When assessing whether leave should be given, the court must grant leave to the extent consistent with Federal Rule of Civil Procedure 26(b)(1) and (2). Fed. R. Civ. P. 30(a)(2). As such, the court should consider the relevance of the deposition, whether the deposition would be unreasonably cumulative or duplicative, if the information would be better obtained from another source, whether the party seeking discovery has had the opportunity to obtain the information pursuant to prior discovery in the action, and whether the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the

importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues. *Thykkuttathil v. Keese*, 294 F.R.D. 601, 602 (W.D. Wash. 2013); *see also* Fed. R. Civ. P. 26(b)(1) and (2).

The party seeking leave to take additional depositions has the burden of establishing that its request satisfies the relevancy requirements of Rule 26(b)(1). *Soto v. City of Concord*, 162 F.R.D. 603, 610 (N.D. Cal. 1995). In turn, the party opposing the depositions has the burden of showing that discovery should not be allowed, and also has the burden of clarifying, explaining, and supporting its objections with competent evidence. *DIRECTTV, Inc. v. Trone*, 209 F.R.D. 455, 458 (C.D. Cal. 2002).

*2. Analysis*

Dickinson has already taken ten depositions and has also already taken the depositions of Nelson, Pope, and Fazzari. However, because such witnesses are beyond the Court's subpoena power and will not agree to testify at trial, and because the Court precluded the use of their deposition testimony pursuant to Rule 32(a)(5)(A), Dickinson seeks leave to either retake or reopen the Nelson, Pope, and Fazzari depositions in order to preserve their testimony for trial.

a.  Relevance of the Depositions

Colmac Coil designed and manufactured the evaporator coils used in the industrial freezer ("FPS Freezer") at issue in this case. Dickinson argues the design and subsequent performance of the evaporator coils are critical aspects of this dispute since an "evaporator coil is a heat-transfer device where the refrigeration system and the freezing tunnel interface." Dkt. 100-1, at 2. Because FPS argues Dickinson's Refrigeration System was

inadequate, while Dickinson contends the FPS Freezer was deficient, Dickinson argues the design and subsequent performance of the evaporator coils are critical components of this case. Dickinson also suggests Nelson, Pope, and Fazzari have personal knowledge regarding conversations with FPS witnesses concerning the performance of the evaporator coils, including statements FPS employees made regarding why the FPS Freezer failed to achieve certain performance metrics. Nelson, Pope and Fazzari also purportedly have personal knowledge regarding performance tests that were run on the Freezer and Refrigeration system before they were disassembled. Dickinson suggests such facts are "critical in supporting Dickinson's case-in-chief as well as rebutting FPS's defenses and defending FPS's counterclaim." Dkt. 100-1, at 14.

FPS counters that the depositions are irrelevant because any information regarding the performance of the FPS Freezer is "information the jury specifically should not hear based on the Court's Adverse Jury Instruction." Dkt. 105, at 6. Specifically, as a sanction for Dickinson's spoliation of the FPS Freezer, the Court held it would instruct the jury to presume the following:

> Dickinson has failed to preserve relevant evidence for FPS's use in this litigation. This is known as the "spoliation of evidence" Specifically, Dickinson destroyed the FPS Freezer and Refrigeration System after its duty to preserve this evidence arose. As a result of this spoliation, you are to presume that had Dickinson not destroyed the FPS Freezer and Refrigeration System, FPS would have been able to prove that the FPS Freezer was capable of performing at the levels specified by the Parties Agreement.[14]

Dkt. 69, at 39. FPS suggests any information about the performance of the FPS Freezer is

---

[14] The Court based this instruction on language proposed by FPS in its Motion for Sanctions. Dkt. 39-1, at 20.

directly contrary to this jury instruction, and, as such, the Nelson, Pope, and Fazzari depositions would be futile and irrelevant.

As Dickinson notes, although the Court awarded a non-rebuttable jury instruction in its Sanctions Order, it also denied FPS's request to preclude Dickinson from introducing evidence at trial regarding the performance of the Freezer and Refrigeration System because such an exclusion of evidence would be "tantamount to dismissal," which the Court determined was unwarranted since Dickinson did not act in bad faith when it destroyed the unit. *Id.* at 31–37. The Court also held that although FPS was prejudiced by Dickinson's conduct, FPS was not without evidence to support its claims because "[m]uch of the evidence regarding the respective performance issues associated with the FPS Freezer and with the Refrigeration System, and the parties' interpretations of each, is already in the record," and "will undoubtedly be supplemented at trial." *Id.* at 31. FPS's argument that any evidence regarding the Freezer's performance is irrelevant and futile is contrary to the Court's Sanctions Order.

FPS's contention is also somewhat disingenuous since FPS previously argued—in its response to Dickinson's Motion for Reconsideration—that the adverse jury instruction only "directly impact[ed]" Dickinson's breach of contract claim. Dkt. 90, at 23. As such, FPS stated Dickinson's case was "not dead" and that Dickinson was "also free to try and amend its Complaint." *Id.* FPS now takes the opposite position and claims the adverse jury instruction bars Dickinson from presenting any evidence or testimony regarding the Freezer's performance at trial. However, the Court has twice held Dickinson is *not* barred from presenting evidence in support of its claims. Dkt. 69, at 30–31, 37–38; Dkt. 93, at 40.

FPS's argument ignores both its own previous interpretation of the Court's adverse jury instruction and the Court's prior rulings. Dkt. 90, at 23.

The Court finds the testimony of Nelson, Pope, and Fazzari is potentially relevant to all but Count One of Dickinson's Complaint.[15] Further, given the Court's prior orders and FPS's inconsistent positions, the Court rejects FPS's claim that any evidence regarding the FPS Freezer and Refrigeration system is irrelevant and futile.

    b.  <u>Additional Rule 26(b) Factors</u>

Allowing Dickinson to take the trial preservation depositions of Nelson, Pope, and Fazzari also satisfies the other factors identified in Rule 26(b)(1) and (2). Such discovery is not duplicative or cumulative since Dickinson has been precluded from using the deposition transcripts from its initial depositions of these witnesses. Dickinson also cannot obtain the information from another source since Nelson, Pope, and Fazzari were involved in designing and manufacturing the evaporator coils and in conducting performance tests prior to the deconstruction of the FPS Freezer and Refrigeration System. However, FPS suggests the burden of the proposed discovery outweighs its benefits due to Dickinson's conduct and the prejudice FPS will suffer if such depositions are allowed. The Court addresses each contention in turn.

---

[15] As the Court noted in its Order denying reconsideration, the parties have not briefed whether Dickinson's other three claims rest on the FPS Freezer's ability to meet the performance metric of operating 20-22 hours a day. Dkt. 93, at 40. As such, at this point, Dickinson can still claim that FPS breached an express warranty under Idaho law, can argue it was damaged under a good faith and fair dealings theory, and can attempt to assert promissory estoppel against FPS. *Id.* Dickinson has also filed a Motion to File First Amended Complaint (Dkt. 98) and Supplemental Motion for Leave to File First Amended Complaint (Dkt. 112). Although the Court has not ruled on such motions and does not address them further herein, it notes that Nelson, Pope, and Fazzari's testimony may be relevant to Dickinson's new claims if Dickinson's motion to amend is granted.

c.  Dickinson's Conduct

FPS argues Dickinson should not be allowed to re-depose Nelson, Pope, and Fazzari because Dickinson caused its own problems and delays related to the first depositions of such witnesses, and that the Court rightly excluded the depositions under Rule 32. The purpose of Rule 32(a)(5)(A) is to protect a party against prejudice associated with a short-noticed deposition. There is nothing in the Rule, and FPS does not cite any authority to suggest, that a party who violates Rule 32 may not seek leave to re-depose, with proper notice, a witness whose first deposition was precluded under Rule 32(a)(5)(A). Although the initial Nelson, Pope, and Fazzari depositions may not be used against FPS, this does not mean Dickinson is barred from *ever* taking the depositions of such witnesses.

Further, Rule 30 provides the court *must* grant leave to take a deposition to the extent consistent with the principles stated in Rule 26(b)(1) and (2). Fed. R. Civ. P. 30(a)(2) (emphasis added). The wording of the rule "creates a default position" that a second deposition "must" be allowed, absent some affirmative reason to preclude it. *Estate of Cay Bich Tran v. City of San Jose*, No. 03-04997 JW-PVT, 2005 WL 8162714, at *1 (N.D. Cal. Mar. 23, 2005). This construction is consistent with the history of Rule 30, which, prior to 1993, put no limit on the number of times a person could be deposed. *Id.* "If the deponent wished to avoid being deposed again, the burden was on the deponent to obtain a protective order from the court upon a showing of good cause. The fact the person had already been deposed did not per se entitle him to a protective order." *Id*. Although, after the 1993 amendments, a party is now required to seek leave to take a second deposition, "the burden is, at most, a minimal requirement that the moving party articulate why the further

deposition is consistent with Rule 26(b)(2)." *Id.* (cleaned up). The burden then shifts "to the non-moving party to show why [Rule 26(b)] protections are in fact required." *Id.*

Here, Dickinson has shown the discovery is potentially relevant to its three remaining claims and is neither cumulative, duplicative, nor obtainable from another source since the Court has precluded Dickinson from using Nelson, Pope, and Fazzari's initial depositions against FPS and because such witnesses are beyond the Court's subpoena power. Fed. R. Civ. P. 45(c)(1). Dickinson has also proposed an alternative to alleviate the expense and burden of taking second depositions. Specifically, Dickinson suggests that in lieu of retaking the depositions in their entirety, the Court should reopen the depositions to remedy any prejudice to FPS and to allow FPS to complete its cross-examination of Nelson, Pope, and Fazzari.[16] Dkt. 100-1, at 18. Under such circumstances, Dickinson has articulated why second depositions are consistent with Rule 26(b)(1) and (2) and FPS's argument regarding Dickinson's delay in noticing the Nelson, Pope, and Fazzari depositions in 2019 does not fall under any of the protections granted against discovery under Rule 26(b)(1) or (2).

d.  <u>Prejudice to FPS</u>

For several reasons, FPS also argues it would be substantially prejudiced if the depositions are allowed to go forward. First, FPS suggests because "the Court has already ruled that the jury will be instructed that the Freezer's performance meets the requirements of the Agreement," the information Dickinson seeks from Nelson, Pope, and Fazzari is

---

[16] While the Court will not require FPS to so stipulate, FPS is encouraged to consider this option in lieu of incurring the time and expense associated with taking new depositions of Nelson, Pope, and Fazzari.

"per se irrelevant." Dkt. 105, at 11. As explained above, this argument disregards the Court's prior rulings that Dickinson is *not* precluded from presenting evidence, as well as FPS's prior position that the adverse jury instruction only impacts Dickinson's breach of contract claim.

Next, FPS argues the second depositions will cause undue financial burden, and notes Dickinson only offered to compensate FPS for part of its fees if FPS stipulated to reopening the depositions. It is unclear if Dickinson will still compensate FPS for three hours of attorney time if FPS stipulates to reopening the depositions (rather than retaking them) after this decision. Regardless, the Court has determined Dickinson is responsible for the fees and costs associated with the first depositions, so allowing Dickinson to retake the Nelson, Pope, and Fazzari depositions will not force FPS to twice incur expenses for the same depositions.

Third, FPS contends the second depositions will cause undue delay. However, the discovery deadline and deadline for dispositive motions have been suspended and will not be reset until the multiple pending motions in this case are addressed. There is also no trial date set in this case. As such, FPS's contention that the second depositions will result in undue delay lacks merit.

Fourth, FPS argues the proposed depositions would unnecessarily burden Nelson, Pope, and Fazzari. As Dickinson notes, FPS could avoid this burden if FPS agreed to stipulate to reopen the depositions without requiring the depositions to be retaken. Given Dickinson's violation of Rule 32(a)(5)(A), it is up to FPS to decide whether to reopen or retake the depositions. However, the undue prejudice to third parties is ultimately an

unfortunate consequence of the parties' contentious relationship and joint decision to resort to motion practice rather than simply seeking an extension so Dickinson could properly notice and obtain the Court's leave before it took Nelson, Pope, and Fazzari's depositions the first time.

Finally, FPS maintains it would be prejudiced if Dickinson is allowed to use the existing transcripts. Due to the significant time that has passed since the first depositions of Nelson, Pope, and Fazzari, FPS argues its "counsel will be required to review the thousands of pages of documents that apply to these witnesses, as well as their testimony from the 2019 depositions—a costly effort bound to take far longer than the three hours Dickinson proposes." Dkt. 105, at 13. FPS contends "memories also fade, which means these non-parties and their counsel will have to take on the burden of re-reading their transcripts to avoid being impeached, which will likely still happen, not because of the honesty of the witnesses, but just because of their memory." *Id.* at 13–14. As Dickinson counters, such problems "are an inherent part of preparing for the trial testimony of *any* previously deposed witness." Dkt. 106, at 8. Such problems are not "'prejudicial' as asserted by FPS, but rather are a routine cost of trial preparation." *Id.*

e.  Conclusion

The Court finds allowing Dickinson to retake the depositions of Nelson, Pope, and Fazzari is consistent with Rule 26(b)(1) and (2) and will not substantially prejudice FPS. This decision applies only to the Nelson, Pope, and Fazzari depositions. Dickinson has not sought, and has not been granted, leave to take additional depositions beyond the thirteen it will have taken once the aforementioned witnesses are deposed. Further, because the

Court has held the initial depositions of Nelson, Pope, and Fazzari must not be used against FPS, it is up to FPS to decide whether to stipulate to reopen the depositions or to instead retake them.

### C.  FPS's Motion to Strike or Disregard Reply Brief Arguments (Dkt. 108)

FPS argues the Court should strike and/or disregard Dickinson's reference to specific testimony offered by Nelson and Pope in their initial depositions. FPS also suggests the Court should not address Dickinson's insinuation in its reply brief that the Sanctions Order was wrong or unclear as to its meaning. *Id.*

a.  <u>Legal Standard</u>

"The Federal Rules of Civil Procedure do not provide for a motion to strike documents or portions of documents other than pleadings." *United States. v. Crisp*, 190 F.R.D. 546, 550 (E.D. Cal. 1999). Further, "motions to strike are generally disfavored and rarely granted." *Utley v. Continental Divide Outfitters*, No. 07-cv-264-LMB, 2009 WL 631465, at *2 (D. Idaho Mar. 10, 2009) (citations omitted). Still, "a motion to strike is not totally irrelevant," and may be "regarded as an invitation by the movant to consider whether [proffered material] may properly be relied upon." *Id.* (quoting *Nat. Res. Defense Council v. Kempthorne*, 539 F. Supp. 2d 1155, 1161 (E.D. Cal. 2008)).

b.  <u>Analysis</u>

In addressing Dickinson's Motion for Leave to Take Additional Depositions, the Court has relied on its familiarity with the case and with Colmac Coil's role in the parties' dispute, as well as upon Dickinson's summary of the topics upon which Nelson, Pope, and Fazzari have knowledge. The Court has not read Nelson, Pope, or Fazzari's deposition

transcripts—nor the specific testimony Dickinson cites—because the Court previously held such depositions must not be used against FPS. The Court has also not considered Dickinson's contention that the Sanctions Order was wrong or unclear. Dkt. 106, at 3–4. The Court has already assessed the Sanctions Order twice, both when writing it and when denying Dickinson's Motion for Reconsideration, and declines any invitation by Dickinson (whether merely perceived by FPS or actual) to do so again.

In short, the Court will deny FPS's Motion to Strike as moot and will not spill further ink on the issues of whether or not Dickinson's citation to the transcripts, or argument regarding the meaning of the Sanctions Order, were proper.

## IV. ORDER

1. FPS's Motion for Attorney Fees and Costs (Dkt. 97) is **GRANTED** in **PART** and **DENIED** in **PART**. FPS is awarded a total of $29,126.05 in fees and $2,152.18 in costs;

2. Dickinson's Motion to Take Trial Preservation Depositions of Colmac Coil Employees (Dkt. 100) is **GRANTED**;

3. FPS's Motion to Strike or Disregard Reply Brief Arguments (Dkt. 108) is **MOOT** and is therefore **DENIED**.

DATED: June 15, 2021

David C. Nye
Chief U.S. District Court Judge