# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF IDAHO

|  |  |
|---|---|
| DICKINSON FROZEN FOODS, INC., <br>      Plaintiff, <br><br>v. <br><br>FPS FOOD PROCESS SOLUTIONS CORPORATION, <br>      Defendant. | Case No. 1:17-cv-00519-MMB <br><br>**OPINION AND ORDER RESPECTING SUMMARY JUDGMENT MOTIONS** |
| FPS FOOD PROCESS SOLUTIONS CORPORATION, <br>      Counterclaimant, <br><br>v. <br><br>DICKINSON FROZEN FOODS, INC., <br>      Counter-Defendant. | |

Before the court are the parties' dueling motions for summary judgment. Defendant/Counterclaimant FPS seeks summary judgment (ECF 137) on all counts in Plaintiff Dickinson's complaint (ECF 1) and as to liability on its counterclaim (ECF 13). Dickinson cross-moves for summary judgment (ECF 138) on Counts One and Three of FPS's counterclaim.

The extensive background of this case is well-known to the parties and is set forth in detail in several prior orders. *See, e.g.*, ECF 69, 93, and 128. This opinion assumes familiarity with those orders.

## Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled

to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court's role at the summary judgment stage is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Zetwick v. Cnty. of Yolo*, 850 F.3d 436, 441 (9th Cir. 2017) (cleaned up). The court must construe the facts in the non-moving party's favor, and to defeat the motion the non-moving party must present evidence upon which "a reasonable juror drawing all inferences in favor of the [non-movant] could return a verdict in [that party's] favor." *Id.* "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial and summary judgment is appropriate." *Id.* (cleaned up) (citing *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009)).

"[T]he Court must enter summary judgment if a party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* (cleaned up) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

## Analysis

The court first addresses FPS's motion as to Dickinson's complaint, and then addresses FPS's motion and Dickinson's cross-motion as to FPS's counterclaim.

## I.   Dickinson's complaint

Dickinson's complaint asserts four counts—Count One, breach of contract under the U.N. Convention on Contracts for the International Sale of Goods (the Convention), ECF 1, ¶¶ 22–28; Count Two, breach of express warranty under Idaho law, *id.* ¶¶ 29–33; Count Three, breach of the implied covenant of good faith and fair dealing under Idaho law, *id.* ¶¶ 34–37; and Count Four, promissory estoppel. *Id.* ¶¶ 38–43. FPS moves for summary judgment on all counts.

### A.   Counts Two and Three (breach of warranty; breach of duty of good faith and fair dealing)

Dickinson states that it "agrees with FPS's argument that Dickinson's Count Two for Breach of Warranty under Idaho state law and its Count Three for Breach of the Duty of Good Faith and Fair Dealing appear to be preempted by the [Convention] as a federal treaty. Dickinson agrees to voluntarily dismiss Count Two and Count Three." ECF 143, at 56–57.

Rule 41(a) of the Federal Rules of Civil Procedure governs voluntary dismissals. A plaintiff may dismiss "an action" without a court order only at the preliminary stages (which are long past in this case) or via a stipulation of dismissal signed by all parties who have appeared in the action. Fed. R. Civ. P. 41(a)(1)(A). Otherwise, the plaintiff may dismiss "an action" only by court order. Fed. R. Civ. P. 41(a)(2).

The words "an action" in Rule 41 are significant because the Ninth Circuit has held that "a plaintiff may not use Rule [41(a)(1)] to dismiss, unilaterally, a single claim from a multi-claim complaint." *Ethridge v. Harbor House Rest.*, 861 F.2d 1389, 1392 (9th Cir. 1988). There is no reason to believe that the analysis under Rule 41(a)(2) should be any different. "Both branches of Rule 41(a) refer to the voluntary dismissal of an 'action' . . . . It seems well established that when multiple claims are filed against a particular defendant, Rule 41(a) is applicable only to the voluntary dismissal of all claims against the defendant . . . ." 9 Wright & Miller, *Federal Practice & Procedure* § 2362 (Apr. 2021 update); *see also Sherick v. Battelle Energy All., LLC*, No. CV-07-307-S-BLW, 2009 WL 453768, at *2 (D. Idaho 2009) (noting the *Ethridge* rule as to Rule 41(a)(1) and finding that "[i]t stands to reason that the same would hold true with respect to a motion under Rule 41(a)(2)"). Therefore, Dickinson may not voluntarily dismiss Counts Two and Three unless it also voluntarily dismisses Counts One and Four—which it has not offered to do.

The court construes Dickinson's failure to oppose FPS's motion for summary judgment as to Counts Two and Three as a tacit admission that those claims are without merit—Dickinson has elected not to attempt to present evidence upon which "a reasonable juror drawing all inferences in favor of [Dickinson] could return a verdict in [Dickinson's] favor." *Zetwick*, 850 F.3d at 441.

Accordingly, the court grants FPS's motion for summary judgment as to Counts Two and Three of Dickinson's complaint.

## B.    Count One (breach of contract)

Count One of Dickinson's complaint seeks damages for FPS's allegedly breaching the parties' contract[1] by failing "to provide a freezer that conformed with the Agreement's specifications." ECF 1, ¶ 26. FPS argues that the mandatory jury instruction[2] makes it impossible for Dickinson to prove that FPS breached the parties' contract: "Dickinson's *only* allegation is that the Freezer did not satisfy the parties' Agreement, a point that Dickinson must necessarily lose under the spoliation sanction the Court has affirmed again and again." ECF 137-1, at 8 (emphasis added).

As a preliminary matter, FPS is correct that Dickinson's breach claim is limited to the allegation that the freezer did not satisfy contractual specifications. Although Count One appears to allege that FPS also breached the parties' contract in some way *unrelated* to freezer performance, *see* ECF 1, ¶ 26

---

[1] It is undisputed that the parties' contract consists of an "Order Confirmation" prepared by FPS on its letterhead and addressed to Dickinson, *see* ECF 1-1 at 1, whose director of operations confirmed the order's terms by signing it, *see id.* at 8.

[2] In response to FPS's request that the court dismiss the entire case for Dickinson's spoliation of evidence, the court instead imposed a lesser sanction in the form of a mandatory, non-rebuttable jury instruction that reads in relevant part as follows: "[Y]ou are to presume that had Dickinson not destroyed the FPS Freezer and Refrigeration System, FPS would have been able to prove that *the FPS Freezer was capable of performing at the levels specified by the Parties' Agreement*." ECF 69, at 39 (emphasis added).

(alleging that FPS breached "by failing to perform its duties and obligations therein, *including* by failing to provide a freezer that conformed with the Agreement's specifications") (emphasis added), Dickinson offered no admissible evidence to support a claim that FPS breached the parties' contract through some means other than "failing to provide a freezer that conformed with the Agreement's specifications."[3]

So Dickinson's breach claim is self-limited to its theory that the freezer failed to comply with contractual specifications, which FPS contends fails because of the mandatory jury instruction. Dickinson responds that FPS's reliance on that instruction is unavailing because the court's original order imposing the instruction held that it was not a "case-terminating" sanction, ECF 143, at 3–4, 5–6, 6–9, yet FPS (in Dickinson's view) urges the court to treat the instruction as exactly that. Dickinson characterizes FPS's argument as being "in direct conflict with the Court's prior rulings: 1) that Dickinson's case should *not* be terminated, 2) that a jury trial *would* proceed, and 3) that both Dickinson and FPS *would* present additional evidence of the Freezer and Refrigeration System's performance to the jury." *Id.* at 3 (all forms of emphasis in original).

_____

[3] Had Dickinson offered any such evidence, that aspect of its breach of contract claim would not have been subject to the mandatory jury instruction.

Contrary to Dickinson's argument, neither the original spoliation order nor the order denying reconsideration precluded the entry of summary judgment on its breach of contract claim (as opposed to terminating the entire case), which has now been limited (by Dickinson's failure to argue otherwise) to the contract specifications issue. Indeed, the latter order expressly acknowledged that the mandatory jury instruction *is* likely fatal as to Dickinson's breach of contract claim: "The Court's adverse inference instruction only presumptively ends Dickinson's ability to establish its breach of contract claim . . . ." ECF 93, at 38.

Dickinson further argues that (1) the parties had a contractual agreement that FPS was obligated to provide a freezer that could operate for 20–22 hours per day and (2) FPS breached that obligation. *See, e.g.*, ECF 143, at 37 ("[A] jury could return a verdict in favor of Dickinson for FPS's breach of the agreed-upon term that the Freezer would operate continuously for 20–22 hours per day.").

There are three major problems with Dickinson's argument. First, it ignores the court's prior determinations that Dickinson waived any claim that a

20–22 hour requirement was a term of the parties' contract. *See* ECF 128, at

22–25;[4] ECF 93, at 39.

Second, it ignores the rationale for the court's prior order denying Dick-

inson's motion for leave to amend the complaint:[5]

> If the court will not construe the parties' agreement as requiring
> that the freezer could operate for 20–22 hours per day, then it is
> irrelevant for purposes of the breach of contract claim whether the
> freezer could or could not operate for that amount of time. If, on
> the other hand, the court *does* construe the parties' agreement as
> imposing such a requirement, then the mandatory jury instruction
> forecloses Dickinson's argument, as the instruction requires the
> jury to "presume that had Dickinson not destroyed the FPS
> Freezer and Refrigeration System, FPS would have been able to
> prove that the FPS Freezer was capable of performing at the levels
> specified by the Parties' Agreement."

*Id.* at 28 (quoting ECF 69, at 39).

Dickinson's argument that the parties agreed to a 20–22 hour runtime

requirement misses the point: *Even if* there were such an agreement, it's now

---

[4] The court's order admonished Dickinson for asserting a backdoor motion to recon-
sider by arguing, in the context of a motion for leave to amend the complaint, that
"the court was 'mistaken' in finding that Dickinson had not raised the '20–22 hours
issue' as a ground for breach of contract prior to its reply in support of its motion for
reconsideration." ECF 128, at 22 (citing ECF 104, at 3–4). Dickinson now argues that
the court's prior two rulings "overlooked" certain facts. ECF 143, at 29. The upshot is
the same—Dickinson yet again tries to convince the court to reconsider what the
court said it will not reconsider. The court declines the invitation.

[5] Dickinson had attempted to add various claims under which it would have sought
to introduce parol evidence intended to show that the parties agreed that the FPS
freezer would operate in various ways, including the 20–22 hour claim, and that FPS
breached that agreement by providing a freezer that could not operate as agreed. ECF
128, at 27–28.

immaterial. Under the jury instruction, whatever the terms of the "Parties' Agreement" were, the freezer was capable of performing *as required by those terms*. For the same reason, it does not matter whether, as Dickinson contends in its brief, the admission of parol evidence is "mandatory" under the Convention, because Dickinson expressly ties its parol evidence theories to its "20–22 hour run-time requirement" argument. ECF 143, at 28.

Third, Dickinson ignores that as the non-movant, it must present evidence upon which "a reasonable juror drawing all inferences in favor of the [non-movant] could return a verdict in [that party's] favor." *Zetwick*, 850 F.3d at 441. Here, the non-rebuttable jury instruction means that all of Dickinson's arguments about the terms of the parties' contract—be they the written terms or extrinsic agreements established by parol evidence—are immaterial. No reasonable jury could return a verdict in Dickinson's favor on any claim based on proving that FPS did not provide a freezer capable of operating as the parties agreed, yet all of Dickinson's arguments opposing FPS's motion on the breach of contract claim are based on Dickinson's desire to argue exactly that theory at trial. *See* ECF 143, at 38 ("Applied to the facts of this case, the jury should decide whether FPS failed to provide a Freezer fit for the particular purpose of operating continuously for 20–22 hours per day.").

As a matter of law in this case, the FPS freezer was capable of operating for whatever number of hours the parties agreed it was to operate. The jury

instruction decides the issue. And insofar as Count One alleges breach of contract in some way unrelated to performance of the freezer, Dickinson has failed to present any evidence substantiating that allegation. The court therefore grants FPS's motion for summary judgment on Count One of Dickinson's complaint.

### C.    Count Four (promissory estoppel)

Count Four of Dickinson's complaint, the promissory estoppel count, alleges as follows:

> 39. Defendant promised to Dickinson that the Freezer would be capable of processing diced and shredded potatoes with a throughput capacity of eight thousand (8,000) pounds per hour from an infeed temperature of plus one hundred and thirty degrees Fahrenheit (+130°F) to an equilibrated outfeed/discharge temperature of zero degrees Fahrenheit (0°F).
>
> 40. Dickinson reasonably relied on that promise in paying Defendant for the Freezer and making business plans to sell its products in accordance with Defendants' promise.
>
> 41. Defendant knew or should have known that if it failed to perform consistent with its promise, Dickinson would suffer substantial economic losses.
>
> 42. As a result of Defendants' failure to comply with its promise, Dickinson did in fact suffer extensive financial damages.

ECF 1, ¶¶ 39–42.

Under Idaho law, promissory estoppel is "[a] promise which the promisor should reasonably expect to induce action or forebearance [sic] on the part of a promisee or a third person and which does induce such action or forebearance

[sic] is binding if injustice can be avoided only by enforcement of the promise." *Profits Plus Cap. Mgmt., LLC v. Podesta*, 156 Idaho 873, 891, 332 P.3d 785, 803 (2014)).

"Promissory estoppel is simply a substitute for consideration, not a substitute for an agreement between parties." *Id.* at 891, 332 P.3d at 803. Thus, "[i]f a written agreement covers the subject matter of a claim based on promissory estoppel, consideration for the agreement is presumed and promissory estoppel cannot apply." *SilverWing at Sandpoint, LLC v. Bonner Cnty.*, 164 Idaho 786, 798, 435 P.3d 1106, 1118 (2019).

FPS seeks summary judgment on Count Four based on two theories— first, that the mandatory jury instruction forecloses it, ECF 137-1, at 12, and, second, that Idaho law does not permit a promissory estoppel claim when there is a valid contract in place because promissory estoppel is a substitute for consideration, not a substitute for an agreement between parties, *id.* (citing *Podesta*, 156 Idaho at 891, 332 P.3d at 803).

As an initial matter, Dickinson does not dispute that *as pled*, its promissory estoppel claim fails as a matter of law because it is entirely duplicative of Count One's breach of contract claim based on the parties' written agreement. *See SilverWing*, 164 Idaho at 798, 435 P.3d at 1118. Dickinson, however, argues that summary judgment is inappropriate because it also has an *unpled* promissory estoppel claim based on its assertion that the parties also agreed—

albeit not in writing—that the freezer would operate for 20–22 hours per day, a claim that Dickinson seeks to prove at trial through parol evidence. *See* ECF 143, at 57–59.

Dickinson's attempt to stave off summary judgment by invoking this unpled theory fails for three reasons.

First, the court has already denied Dickinson's effort to amend its complaint to add this new promissory estoppel theory. *See* ECF 128, at 25–30. Dickinson's new theory is not properly before the court.

Second, this new theory fails as a matter of law because even if the parties agreed that the freezer would operate for 20–22 hours per day, it would not be a *separate* agreement—it would simply be another requirement of the same contract by which FPS agreed to supply Dickinson with a freezer capable of meeting certain specifications. "Promissory estoppel is simply a substitute for consideration, not a substitute for an agreement between parties." *Podesta*, 56 Idaho at 891, 332 P.3d at 803.

Finally, even if the court had allowed Dickinson to amend its complaint to assert this theory *and* the parties' purported unwritten agreement that the freezer would operate for 20–22 hours per day were considered an entirely separate agreement (rather than simply an unwritten term of the parties' purchase and sale agreement), the mandatory jury instruction forecloses it. As discussed above in connection with granting FPS's motion for summary

judgment on Dickinson's breach of contract claim, under that instruction, whatever the terms of the parties' agreement were, the freezer could perform as required by those terms. Dickinson has presented no evidence to support its new promissory estoppel theory under which a reasonable jury "drawing all inferences in favor of [Dickinson] could return a verdict in [Dickinson's] favor." *Zetwick*, 850 F.3d at 441.

The court therefore grants FPS's motion for summary judgment on Count Four of Dickinson's complaint.

## II.   FPS's counterclaim

FPS's counterclaim asserts three live counts[6]—Count One, breach of contract based on Dickinson's alleged failure to provide a proper refrigeration system, ECF 13, ¶¶ 57–64; Count Two, breach of Convention Article 86 based on Dickinson's alleged failure to preserve the freezer in a reasonable manner, *id.* ¶¶ 66–74; and Count Three, breach of the implied covenant of good faith and fair dealing, *id.* ¶¶ 76–80, based on Dickinson's alleged failure to remedy its refrigeration infrastructure and operational issues while "continually seeking and taking advantage of valuable accommodations from FPS," *id.* ¶ 78. FPS moves for summary judgment as to liability on all three counts, and Dickinson cross-moves for summary judgment on Counts One and Three.

---

[6] The court dismissed a fourth count that alleged defamation but allowed FPS 30 days' leave to amend. ECF 25. FPS elected not to do so.

## A.     Counterclaim Count One (breach of contract)

FPS's theory of recovery on its breach of contract claim has evolved. Count One of the counterclaim as pled is premised entirely on the theory that the parties' contract required Dickinson "to, among other things, supply proper '[r]efrigeration equipment, piping, valves[,] and refrigerant charge' at the levels and in the manner set forth in the Agreement," ECF 13, ¶ 60 (first brackets in original); that Dickinson breached the contract "when it, either directly or through its contractor, failed to provide '[r]efrigeration equipment' of '210TR' with an '[e]vaporator temperature' of '–40°F,' " *id.* ¶ 62 (brackets in original); and that as a result FPS suffered financial damages "including, but not limited to, unnecessary repair, engineering, and travel expenses, as well as product costs and lost opportunities," *id.* ¶ 63.[7]

FPS's motion contains a lengthy discussion of the refrigeration system's alleged deficiencies, but then pivots and asserts that Dickinson breached the parties' contract by "wrongfully rejecting the Freezer" and never paying in full for it. *See* ECF 137-1, at 26 (so arguing and citing documents showing that Dickinson paid $893,000 towards a contracted-for price of $926,000, leaving a $33,000 balance due).[8]

---

[7] In the interest of clarity, and to contrast it to the alternative theory discussed below, the court refers to this theory as the "inadequate equipment" theory.

[8] The court refers to this theory as the "wrongful rejection" theory.

### 1.   "Wrongful rejection" theory

Dickinson argues that FPS's "wrongful rejection" theory "is raised for the first time on summary judgment and also contains a new theory of damages—nowhere in FPS's complaint or initial disclosures does it claim damages for the difference between the purchase price and what was paid before the Freezer was rejected." ECF 143, at 71 (citing ECF 143-1, ¶ 32).[9]

Dickinson's objection to the "wrongful rejection" theory, at least for summary judgment purposes, is well-taken. The Ninth Circuit has held that it is improper for a party to allege only one possible theory for recovery in its initial pleading but then to attempt to raise another theory on summary judgment. *See Pickern v. Pier 1 Imps. (U.S.), Inc.*, 457 F.3d 963, 968–69 (9th Cir. 2006). The court explained that raising a new theory in summary judgment briefing violates Rule 8's pleading standard because the allegations in the complaint—or, here, the counterclaim—must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Id.* at 969 (quoting

---

[9] Dickinson attached FPS's initial disclosures as an exhibit to its opposition brief. A review of that exhibit confirms that Dickinson is correct—the "wrongful rejection" theory does not appear: "FPS has been damaged by Dickinson's failure to keep safe and preserve the Freezer, Dickinson's *per se* defamatory statements to the market-place, and by FPS providing services and product to Dickinson for the Freezer when Dickinson's refrigeration infrastructure, an area exclusively within Dickinson's control, was the primary issue." ECF 143-4, at 11. While FPS purported to "reserve[ ] its right to supplement" the initial disclosures, *id.*, there is no indication it ever did so.

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002)).[10] Where the grounds upon which a party seeks to base a breach of contract claim in a summary judgment motion are distinct from the grounds alleged in the party's initial pleading, "[c]onsidering [its] new theories at this point would effectively amend the [c]omplaint after the close of discovery and initiation of summary judgment proceedings." *Quality Res. & Servs., Inc. v. Idaho Power Co.*, 706 F. Supp. 2d 1088, 1096 (D. Idaho 2010) (citing *Pickern*, 457 F.3d at 968–69).[11]

FPS's new "wrongful rejection" theory[12] is therefore not properly before the court, so the court denies FPS's motion for summary judgment on liability as to the counterclaim's Count One insofar as FPS relies on that theory.

### 2.    "Inadequate equipment" theory

Under its "inadequate equipment" theory that mirrors Count One of the counterclaim as pled, FPS argues that Dickinson breached the contract by

---

[10] The *Pickern* court was primarily concerned with a party's reliance on new factual allegations. The same principle applies to new legal theories, however. *See Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1292 (9th Cir. 2000) (agreeing "that adding a new theory of liability at the summary judgment stage would prejudice the defendant who faces different burdens and defenses under this second theory of liability").

[11] FPS, of course, could have moved for leave to amend its counterclaim to allege its "wrongful rejection" theory. FPS did not do so prior to the deadline for motions to amend.

[12] Although Dickinson characterizes FPS's "wrongful rejection" theory as a new theory of *damages*, in substance it is a new theory of *breach*—FPS (only now) contends that Dickinson is in breach for failing to pay the $33,000 balance due under the parties' contract.

failing to provide a refrigeration system compliant with the contract's specifications. ECF 137-1, at 14–15.[13]

Dickinson responds to this theory both by attacking the factual bases for FPS's argument and by disputing whether FPS could obtain damages at all even if the counterclaim's factual allegations are assumed to be true. *See* ECF 143, at 59 ("[T]he parties never intended that Dickinson would be liable in damages if the Refrigeration System's specification[s] were not met, and no suggestion of the same is found in the Order Confirmation or any other record evidence.") (citing ECF 138-1, at 10).

FPS replies that

> [t]he plain language of the contract . . . makes clear that Dickinson had the responsibility to provide the required specifications, including "refrigerant charge." . . . If Dickinson was not required to provide these specifications, then Dickinson could require FPS to deliver a Freezer, not pipe water to it or plug it in, *and then sue FPS for failure to produce 8,000 pounds per hour*. Such an outcome is nonsensical and could not be the parties' intent.

ECF 155, at 20 (emphasis added).

FPS's responsibility was to manufacture, deliver, and install a freezer that met contract specifications. *See* ECF 1-1, at 1 (specifying equipment to be

---

[13] Under the heading "technical specifications," the contract contained a series of representations by FPS, including various technical requirements necessary for the freezer to function—"electrical specifications," "freezer refrigeration specifications," and "water & steam specifications." ECF 1-1, at 6 (title case removed). The contract further provided that these electrical, refrigeration, and water requirements were "to be supplied by the customer." *Id*. at 5.

supplied by FPS and "extent of delivery" by FPS). Dickinson, in return, was to pay FPS a sum certain for the "equipment and services," the latter referring to the delivery and installation, as well as the warranty provided in the parties' contract. *Id.* at 2. The contract stipulates that the "[r]efrigeration equipment, piping, valves[,] and refrigerant charge" are "to be supplied by customer." *Id.* at 5.

As FPS inadvertently admits on reply, Dickinson's alleged failure to provide a compliant refrigeration system to support the freezer is only an *affirmative defense* to Dickinson's contract breach claim. FPS's defense is that the freezer failed to function properly because the refrigeration system supplied by Dickinson—rather than the freezer itself—was flawed. Assuming, as Count One of FPS's counterclaim alleges, that the refrigeration system supplied by Dickinson was noncompliant with the contract's specifications, FPS's counterclaim for breach of contract in Count One fails a matter of law because the only *promise* Dickinson made was to pay FPS the contract price of $926,000.[14]

To be sure, the contract (prepared by FPS) contained representations by FPS that for the freezer to function properly, "the customer" (Dickinson) needed to make certain preparatory arrangements, including, but not limited to, providing certain refrigeration equipment. For example, Dickinson needed

---

[14] In the jargon of contract law, Dickinson's sole performance obligation was to pay FPS $926,000.

to provide an electrical "power supply" to the freezer's "control panel." ECF 1-1, at 5; *see also above* note 13. But this specification was hardly a promise by *Dickinson* to FPS that the former would supply electricity so the device would function; rather, it was merely a representation by the latter that Dickinson needed to provide the specified electrical power for the equipment to function.

Consider this hypothetical: After Dickinson made full payment and FPS delivered the freezer (as each promised the other), the freezer never functioned at all (much less properly) because of Dickinson's failure to provide the necessary electrical power specified in FPS's representations in the contract. Dickinson would be left with a useless (and expensive) piece of equipment, but that would be Dickinson's (self-inflicted) problem, not FPS's.

But imagine that in this same hypothetical, FPS brought an independent breach of contract action against Dickinson because the latter failed to provide power to the freezer. This court, or an Idaho trial court, would dismiss that suit in an instant, because in this hypothetical Dickinson made no promise to FPS that Dickinson would supply power to the equipment. The only promise that Dickinson made was to pay the full sales price, which (in this hypothetical) it did.

As pled, FPS's breach of contract claim is indistinguishable in principle from the breach claim described in the hypothetical discussed above. Thus, FPS's breach claim fails as a matter of law because the alleged failure to

provide a compliant refrigeration system was not a breach of any promise made by Dickinson in the contract—Dickinson's only performance obligation was to pay the sale price of $926,000. Insofar as FPS alleges that Dickinson failed to provide the refrigeration system necessary for the freezer to properly function, at most it would only support an affirmative defense to Dickinson's breach claim. The court therefore denies FPS's motion for summary judgment on liability as to Count One of its counterclaim, and for the same reason grants Dickinson's cross-motion for summary judgment on Count One.

## B.   Counterclaim Count Two (failure to preserve freezer)

Count Two of FPS's counterclaim alleges that Dickinson "asserted the right to revoke acceptance of the Freezer" during July 2017, ECF 13, ¶ 67, and that then in January 2018 Dickinson did remove the freezer from its facility but refused to allow FPS to be present to "monitor and record the dismantling" or to arrange for removal and collection of the freezer, *id.* ¶¶ 69–70. Instead, "the Freezer is currently being stored in an unreasonable manner that has caused damage to the Freezer," *id.* ¶ 72, and FPS claims to have suffered "extensive financial damages" as a result, including diminution in the freezer's value, *id.* ¶ 73.

FPS's argument in support of this theory in its opening summary judgment brief is cursory at best. FPS quotes Convention Article 86 for the rule that a buyer who intends to reject goods "must take such steps to preserve

them as are reasonable under the circumstances" and then argues, simply, "There is no genuine factual dispute about this claim. The Court already determined that Dickinson wrongfully destroyed the Freezer, meaning it did not take reasonable and required steps to preserve under the circumstances." ECF 137-1, at 27.

Dickinson responds by, initially, arguing with the court's conclusion in the spoliation order and asserting that "Dickinson continues to dispute the factual assertion that the Freezer was 'destroyed' by any definition." ECF 143, at 73 (citing ECF 143-1, ¶¶ 29–31). Dickinson argues that some level of disassembly was necessary to remove the freezer from Dickinson's plant in order to allow for installation of its replacement and that Dickinson undertook only the "reasonable" steps needed to achieve that goal. Dickinson also argues that, "while the Court determined that Dickinson 'destroyed' the Freezer for purposes of ruling on the spoliation motion, this does not equate to destruction of the freezer for monetary or salvage value" because Dickinson's expert testified that FPS could have refurbished the freezer for resale and FPS's engineer stated that FPS intended to resell the freezer. *Id.* at 73–74 (citing ECF 138-9, ¶ 37, and ECF 81-21, at 38).

On reply, FPS argues that there can be no dispute that Dickinson destroyed the freezer by removing welding to separate it into two halves, disconnecting various parts, and then storing the freezer, its parts, and its control

panel outdoors in Dickinson's parking lot in crates and under tarps. ECF 155, at 23. "FPS *believes* that Dickinson actually used straight edges to cut the Freezer in half, cut the legs out, and severed all refrigeration, water, steam, air lines, and electrical wiring and conduits from the Freezer." *Id.* (emphasis added) (citing ECF 69, at 10–11).[15] FPS concludes that while there may be a factual dispute as to the extent of the damage, it is undisputed that Dickinson did destroy the freezer because the court so stated multiple times. *Id.* at 23–24 (citing ECF 69, at 24, 26; ECF 93, at 47).

Dickinson is correct that the court's spoliation ruling—and, for that matter, its ruling denying Dickinson's motion for reconsideration—addressed only the destruction of evidence and imposed a sanction on Dickinson based on the law of spoliation. The court did not address the issue of whether the freezer retained any salvage value or could be refurbished for resale. In the absence of

---

[15] The words "FPS believes" are crucial, as there is no evidence in the record confirming that belief. FPS's citation to ECF 69—the court's spoliation sanctions order—does not establish the sentence as a conclusive statement of fact because in the cited paragraph, the court used the words "FPS alleges," "FPS suggests," "FPS contends," and "Dickinson allegedly," all in the course of describing FPS's version of what Dickinson did in the course of removing the freezer. ECF 69, at 10–11. Those introductory words indicate that the court was simply summarizing the parties' arguments—a conclusion that is underscored by the fact that two paragraphs prior to the quoted material, the court noted that "[t]he parties offer widely varying accounts of Dickinson's disassembly and subsequent storage of the unit," *id.* at 10, and then began the paragraph after the quoted material by stating "[t]he parties also disagree over Dickinson's subsequent storage of the dismantled unit," *id.* at 11. Thus, it is clear from the context that pages 10–11 of the spoliation order cannot support summary judgment on the question of whether Dickinson rendered the freezer unfit for resale.

evidence establishing that there is no genuine issue of material fact that Dickinson's actions rendered the freezer unfit for refurbishing and resale, the court denies FPS's motion.[16]

### C.    Counterclaim Count Three (breach of covenant of good faith and fair dealing)

Count Three of FPS's counterclaim alleges that Dickinson violated the covenant of good faith and fair dealing by "repeatedly failing to remedy its refrigeration infrastructure and operational issues, which negatively impacted the performance of the Freezer, while continually seeking and taking advantage of valuable accommodations from FPS," ECF 13, ¶ 78, and that FPS suffered damages as a result, "including, but not limited to, unnecessary repair, engineering, and travel expenses, as well as product costs and lost opportunities," *id.* ¶ 79. Under Idaho law, the implied covenant of good faith and fair dealing "requires that the parties perform, in good faith, the obligations imposed by their agreement, and a violation of the covenant occurs only when either party violates, nullifies[,] or significantly impairs any benefit of the contract." *Idaho Power Co. v. Cogeneration, Inc.*, 134 Idaho 738, 750, 9 P.3d 1204, 1216 (2000) (cleaned up).

---

[16] As Dickinson has paid all but a small fraction of the freezer's purchase price, the court is at a loss to understand how FPS—absent its return of the money so paid by Dickinson—even has a cognizable claim for return of the freezer, but the court need not resolve that issue now.

In moving for summary judgment on liability, FPS argues that Dickinson "failed to exercise good faith or deal fairly with FPS" because Dickinson failed to fix problems with the refrigeration system and the company's internal operational issues, decided to replace the FPS freezer and to sue FPS, yet continued "to demand costly work from FPS." ECF 137-1, at 27–28. FPS also contends that after removing and "destroy[ing]" the freezer, *id*. at 28, Dickinson "downsized the suction risers" in the refrigeration system "to the proper diameter" for a replacement freezer from another manufacturer despite that action being "something FPS had been asking for all along." *Id.*

In response, Dickinson contends that FPS's summary judgment arguments "have *nothing to do* with the performance capabilities of the Refrigeration System, the purported contract term that FPS claims Dickinson breached," and further contends that "these allegations are hotly disputed." ECF 143, at 77 (emphasis in original). Dickinson also argues that FPS's summary judgment briefing represents a change of theory from Count Three as pled because the latter focused on failure to remedy the refrigeration system, negatively impacting the freezer's performance, yet the summary judgment brief focuses on how Dickinson "handled the removal and disassembly of the Freezer, which has absolutely nothing to do with any purported contract term or the performance capabilities of the Refrigeration System." *Id.* at 77–78.

The court agrees with Dickinson. As with Count One of the counterclaim, there is an impermissible disconnect between Count Three as pled and FPS's summary judgment briefing, the latter of which is far broader in scope than the former.

Putting that aside, and even assuming the truth of FPS's factual allegations (in its counterclaim) and assertions (in its motion), Count Three independently fails as a matter of law. Here, FPS received all it was promised under the contract except for the $33,000 balance due on the purchase price of $926,000—which FPS doesn't even mention either in Count Three or its motion as to that count.[17] It accordingly has no claim for breach of the covenant of good faith and faith dealing insofar as that claim is based on the factual allegations in Count Three or the factual assertions in its motion. *Cf. Cantwell v. City of Boise*, 146 Idaho 127, 136, 191 P.3d 205, 214 (2008) ("Since the City did not impair any rights or benefits provided to Cantwell under the contract, Cantwell has no claim for breach of the covenant of good faith and fair dealing. The covenant does not provide additional rights unavailable under the negotiated contract.").

---

[17] As noted above, FPS does mention the unpaid balance, but only in conjunction with its new "wrongful rejection" breach of contract theory that is not properly before the court.

The court therefore denies FPS's motion as to Count Three of its counterclaim, and for the same reasons grants Dickinson's cross-motion for summary judgment.

## Conclusion

For the reasons explained above, the court hereby:

1.    **GRANTS IN PART** and **DENIES IN PART** FPS's motion for summary judgment (ECF 137)—as to Dickinson's complaint, the motion is **GRANTED**; as to FPS's counterclaim, the motion is **DENIED**; and

2.    **GRANTS** Dickinson's motion for summary judgment (ECF 138) as to Counts One and Three of FPS's counterclaim.

DATED: August 12, 2022

/s/ *M. Miller Baker*
M. Miller Baker, Judge[18]

---

[18] Judge of the United States Court of International Trade, sitting by designation.